# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 1:07CR209 |
| | ) | |
| WILLIAM J. JEFFERSON, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR REVIEW OF GRAND JURY
## MATERIALS AND TO DISMISS AND MEMORANDUM IN SUPPORT

Defendant William J. Jefferson respectfully moves this Court to permit the defendant to review all grand jury transcripts, or in the alternative for *in camera* review of all grand jury transcripts, in order to determine whether information protected by the Speech or Debate Clause of the United States Constitution was impermissibly presented to the grand jury. He further moves to dismiss all counts of the indictment obtained through use of privileged materials. In support of this motion, Mr. Jefferson relies upon the points and authorities set forth in the memorandum of law below.

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
## FOR REVIEW OF GRAND JURY MATERIALS AND TO DISMISS

The Speech or Debate Clause preserves legislative independence and safeguards the separation of powers by protecting the legislative activities of members of Congress against intrusion by the executive. As courts have recognized, the Clause, among other things, prohibits the government from obtaining an indictment based on materials protected by the Speech or Debate privilege. To ensure that this prohibition is enforceable, defendants are entitled, in appropriate circumstances, to pre-trial review of the testimony and evidence presented to the grand jury in order to determine whether privileged legislative materials were considered. Any charges that were procured by the presentation of privileged materials must be dismissed.

The indictment in this case states that Mr. Jefferson was a member of Congressional committees and caucuses dealing with African trade. The bribery, conspiracy and other charges against him involve allegations that Mr. Jefferson improperly used his position as a Congressman serving on those committees and caucuses to assist private businesses seeking contracts in Africa. There is good reason to believe that the government introduced testimony or evidence relating to Mr. Jefferson's legislative activities in the course of presenting its case to the grand jury, in order to show the knowledge of African officials and trade policies that he obtained in carrying out his committee and caucus responsibilities. In addition to the conclusions that can be drawn from allegations in the indictment, the defense understands that a number of current and former members of Mr. Jefferson's congressional staff – including legislative aides who focused on issues relating to Africa – were called to testify. Further, the recordings made by the government's cooperating witness and provided to the defendant in discovery contain specific references to Mr. Jefferson's legislative activities, made by a former staffer who is now cooperating with the government and presumably testified before the grand jury.

As will be demonstrated below, there are more than sufficient grounds in this case to require a review of all testimony and evidence presented to the grand jury to determine whether Speech or Debate materials were included. Once that review is completed, all counts in the indictment that may have been affected by the use of privileged materials should be dismissed.

## **FACTUAL BACKGROUND**

As alleged in the indictment, Mr. Jefferson has been a member of the United States House of Representatives since 1991. The indictment specifically identifies the committees and caucuses on which Mr. Jefferson has served:

> At various times relevant to this Indictment, Defendant JEFFERSON was a Member of the Committee on Ways and Means, Subcomittee on Trade; Member of the Committee on the Budget; Co-Chair of the Africa Trade and Investment Caucus; and Co-Chair of the Congressional Caucus on Nigeria.

Indictment, ¶ 3.

The primary thrust of the allegations in the indictment is that Mr. Jefferson improperly agreed to accept compensation in return for performing official acts to assist entities seeking to do business in Nigeria and other African countries. The activities described in the indictment relate to precisely the issues and areas addressed by the committees and caucuses on which Mr. Jefferson served. The indictment directly ties these memberships to the planned performance of alleged official acts:

> As a Member of the United States House of Representatives and certain of its committees and caucuses, Defendant JEFFERSON discussed providing official assistance to constituent companies, including iGate and CW's companies, and businesspersons, including Vernon Jackson and CW, seeking to obtain and conduct business in west African nations, including Nigeria, Ghana, and Cameroon.

Indictment, ¶ 45; *see also* ¶ 145.

A number of individuals who at various times worked on Mr. Jefferson's Congressional staff testified before the grand jury, presumably including Brett Pfeffer, as well as Lionel Collins, Mel Spence, Stephanie Butler, Roberta Hopkins and Angele Kwemo. This list includes staff members responsible for African trade issues, and who would have been very knowledgeable about Mr. Jefferson's legislative activities in that area.

In addition, as will be discussed further below, recordings made by the government's cooperating witness and provided to the defense contain discussions of Mr. Jefferson's legislative activities by Brett Pfeffer, a former staff member. Pfeffer has been cooperating with the government pursuant to his plea agreement and presumably testified at least once before the grand jury.

## ARGUMENT

I. **THE SPEECH OR DEBATE CLAUSE PROTECTS A MEMBER OF CONGRESS FROM HAVING TO DEFEND AGAINST AN INDICTMENT OBTAINED THROUGH USE OF PRIVILEGED MATERIALS.**

    A. **The Speech or Debate Clause Provides Absolute Protection to Activities Within the Legislative Sphere.**

The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const., art. I, §6, cl. 1. The purpose of the Clause is "to preserve the independence and thereby the integrity of the legislative process." *United States v. Brewster*, 408 U.S. 501, 524 (1972). A*ccord*, *Eastland*

*v. United States Serviceman's Fund*, 421 U.S. 491, 502 (1975). The Clause "serves the additional function of reinforcing the separation of powers so deliberately established by the Founders," *Eastland,* 421 U.S. at 502, since it was designed "to preserve the Constitutional structure of separate, co-equal, and independent branches of government." *United States v. Helstoski,* 442 U.S. 477, 491 (1979).

The constitutional privilege accords legislators "wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch." *United States v. Gravel,* 408 U.S. 606, 616 (1972). The Clause was rooted in the struggle for parliamentary independence that marked the 16th and 17th centuries, during which "successive monarchs utilized the criminal and civil law to suppress and intimidate critical legislators." *United States v. Johnson*, 383 U.S. 169, 178 (1966). Thus, the founding fathers specifically envisioned that the privilege would be the "practical security" that would shield the legislature against "invasion" by one of the other branches, "protecting against possible prosecution by an unfriendly executive and conviction by a hostile judiciary." The Federalist No. 48 (James Madison); *see also Johnson*, 383 U.S. at 178-79, 181 (the legislative privilege was crafted "to prevent intimidation by the executive and accountability before a possibly hostile judiciary"); *United States v. Rayburn House Office Building,* ___ F.3d ___, 2007 WL 2275237, *5 (D.C. Cir. Aug. 3, 2007).

In order to accomplish these purposes, "the Speech or Debate Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *United States v. Brewster*, 408 U.S. 501, 525 (1972). The clause applies to all acts within the "legislative sphere." *Gravel*, 408 U.S. at 624-25. In addition to speech or debate in the House, it covers other matters "that are an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings

with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Id.* at 625.

Investigations and information gathering have been recognized as activities that fall squarely within the legislative sphere. "A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which legislation is intended to affect or change." *Eastland,* 421 U.S. at 504. Therefore, courts have held that the Clause covers the material a Member has gathered to aid in his consideration of legislation and in the performance of his investigative and oversight function. *See Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 420 (D.C. Cir. 1995). In addition, the privilege protects information obtained through both formal process and informal information gathering means. *McSurely v. McClellan*, 553 F.2d 1277, 1287 (D.C. Cir. 1976).

The Speech or Debate privilege extends to members of a Congressman's staff, who are treated as a congressman's "alter egos" for purposes of Speech or Debate analysis. *Gravel*, 408 U.S. at 616. A Member's staff person cannot be questioned about matters as to which the Member himself is immune from questioning. *Id.* at 628.

Where the Speech or Debate privilege applies, it is "absolute." *Eastland*, 421 U.S. at 509; *see also Brown Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416, 418 (D.C. Cir. 1995).

**B.    Speech or Debate Materials Cannot Be Used to Obtain an Indictment.**

The Speech or Debate Clause protects Members from both criminal prosecutions and civil suits based on legislative activity. *See Eastland*, 421 U.S. at 502. It also protects a Member against introduction of evidence referring to legislative acts in any prosecution or action against him. *See United States v. Helstoski*, 442 U.S. 477, 487 (1979) ("The Court's holdings in *United*

5

*States v. Johnson* . . . and *United States v. Brewster* . . . leave no doubt that evidence of a legislative act of a Member may not be introduced by the Government in a prosecution under § 201."). Convictions that are obtained with such evidence must be overturned. *See United States v. Dowdy*, 479 F.2d 213 (4th Cir. 1973).

Importantly for this motion, the Clause protects a Member "not only from the consequences of litigation's results but also from the burden of defending [himself]." *United States v. Rostenkowski*, 59 F.3d 1291, 1297 (D.C. Cir. 1995), quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967). *See also United States v. Helstoski ("Helstoski I")*, 442 U.S. 477, 488 (1979). As a consequence, a congressman cannot be required to defend against an indictment that relies on its face on Speech or Debate materials; nor can he be required to defend against an indictment that was procured by use of privileged materials before the grand jury. *See United States v. Swindall*, 971 F.2d 1531, 1547 (11th Cir. 1992) (violation of Speech or Debate privilege before grand jury requires dismissal of indictment); *United States v. Helstoski ("Helstoski II")*, 635 F.2d 200 (3d Cir. 1980) (affirming dismissal of indictment where Speech or Debate materials were presented to the grand jury); *United States v. Durenberger*, 1993 WL 738477, *4 (D. Minn. Dec. 3, 1993) (dismissing indictment where portion of Senate ethics committee report was submitted to grand jury).

Courts have recognized that in order to vindicate this right, it can be necessary to go beyond the face of the indictment and review the evidence that has been presented to the grand jury. As the D.C. Circuit explained,

>In order to fully secure th[e] purposes [of the Speech or Debate Clause], it seems that a court may find it necessary, at least under some circumstances, to look beyond the face of an indictment and to examine the evidence presented to the grand jury. . . . Otherwise, a prosecutor could with impunity procure an indictment by inflaming the grand jury against a Member upon the basis of his Speech or Debate, subject only to the necessity of avoiding any reference to the privileged material on the face of the indictment.

*Rostenkowski*, 59 F.3d at 1298. *See also Swindall*, 971 F.2d at 1547 ("A court will consider the evidence received by the grand jury . . . when what transpired before the grand jury itself violates a constitutional privilege."); *Durenberger*, 1993 WL 738477, *1, 4-5 (dismissing indictment after *in camera* review of grand jury testimony and exhibits revealed that legislative committee reports had been presented; court noted the importance of such review: "had I not ordered a full *in camera* inspection of the grand jury proceedings, the selected pages from the Reports would not have been discovered and the defendant's constitutional right to prepare an adequate defense would have been impaired" ).

The court in *Rostenkowski* set out the following standard for determining when a request for *in camera* review of grand jury materials should be granted: the defendant "must be able to provide, either from the allegations of the indictment or from some other source, ***at least some reason*** to believe that protected information was used to procure his indictment." 59 F.3d at 1313 (emphasis added). Rostenkowski's request was denied because there was no reason on face of indictment to suggest that privileged material was presented to the grand jury, and he provided no specific information to support his claim; instead, he relied only on the argument that the court should not simply accept the prosecutor's assurances that no constitutional violations had occurred. *Id.* Here, by contrast, there is more than sufficient reason to believe that Speech or Debate material was presented to the grand jury that indicted Mr. Jefferson.

7

### C. The Court Should Order Review of the Grand Jury Materials Here.

In *United States v. Swindall*, the Eleventh Circuit held that the Speech or Debate privilege protects legislative status as well as legislative acts, and that inquiry into a legislator's status as a member of a committee violates the privilege. 971 F.2d at 1543-45. Accordingly, the defendant submits that the fact that the indictment includes references to Mr. Jefferson's committee status is enough to suggest that legislative activity was considered by the grand jury and to warrant review of the grand jury materials here.

Defendant also recognizes that other courts have disagreed with or limited *Swindall's* conclusion that the Speech or Debate privilege attaches to legislative status alone. *See, e.g., Rostenkowski*, 59 F.3d at 1303. But even those courts do not disagree with *Swindall's* alternative holding that the government cannot inquire into a legislator's committee *activities* for the purpose of demonstrating knowledge he gained through those activities.[1] *See Rostenkowski*, 59 F.3d at 1303; *United States v. McDade*, 28 F.3d 283, 293-94 (3d Cir. 1994).

---

[1] *Swindall* involved an indictment charging that the defendant, a former congressman, had committed perjury "to conceal the extent of his involvement in discussions about illegal money-laundering transactions." 971 F.2d at 1538. The government questioned Swindall in the grand jury about his activities on the House Banking and Judiciary Committees, to show that he knew about money-laundering statutes. The government then used that evidence to show that Swindall lied in earlier testimony when he said he was not convinced the proposed transactions were illegal, and to show that he had a motive to lie when he stated that he could not recall whether conduct violating the statutes had been discussed. *Id.* at 1539. The court in *Swindall* stated that "It seems obvious that levying criminal or civil liability on members of Congress for their knowledge of the contents of the bills considered by their committees threatens or impairs the legislative process." *Id.* at 1545.

In this case, there is strong reason beyond the mere reference to his status to believe that evidence of Mr. Jefferson's committee and caucus activities was presented to the grand jury for this purpose, among others. The offenses charged in the indictment turn largely on the allegation that Mr. Jefferson was improperly compensated for performing official acts to assist private businesses seeking to obtain contracts in Africa. The official acts he allegedly performed include "conducting official travel to foreign countries and meeting with foreign government officials for the purpose of influencing those officials," and "sending official correspondence on congressional letterhead to foreign government officials." Indictment, ¶ 49. Mr. Jefferson is alleged to have attended the meetings with foreign officials "in his capacity as a Member of the United States House of Representatives." Indictment, ¶¶ 74, 78, 118, 204. The indictment directly ties Mr. Jefferson's committee and caucus memberships to the alleged official acts. *See* Indictment, ¶¶ 45, 145. It would have assisted the government's efforts to prove that Mr. Jefferson would agree to carry out these acts for the government to make the grand jury aware of the types of legislation he considered, and the investigations in which he participated, as a member of committees and caucuses dealing with Africa and African trade, and to show the knowledge and experience he had developed about African officials and trade practices from those activities.

Beyond the matters in the indictment, the available evidence further suggests that Speech or Debate materials were presented to the grand jury. As noted above, the government obtained testimony from a number of staff members, including those whose job responsibilities focused on African trade issues. In addition, we have reviewed certain recorded conversations of Brett Pfeffer, a former Jefferson staff member. This review has revealed that Mr. Pfeffer is something of a self-promoter, who sought to emphasize the importance of his relationship with Mr.

9

Jefferson by elaborating on Mr. Jefferson's activities and contacts. Without conceding the truth of his statements, the recordings show that Pfeffer directly tied the potential assistance Mr. Jefferson could offer to private businesses to legislative activities. For example, the following exchange occurred during a March 31, 2005 meeting with the cooperating witness:

> CW: If he helps us, you know, what do you think he can do for us? How will having him on our side be helpful to us? That, that's something I don't understand. The Congressman.
>
> BP: Because he sits on the Ways and Means Committee – he sits on the Subcommittee for International trade. Those guys – they – he's doing other things to help NITEL and those kinda guys out, and the President of Nigeria , so he will hold …
>
> * * *
>
> BP: He just – he's been goin' over there. He's got those relationships over there.
>
> CW: I know he's got the relationships, but what I don't understand is specifically how that helps.
>
> BP: He's a United States Congressman.
>
> CW: That doesn't make me sleep at night, you know what I mean? (laugh).
>
> BP: He's a United States Congressman and he gets, he handles, he's handled a lot of issues for them, for Nigeria, while he's been on the Ways and Means International Trade subcommittee: import/export …
>
> * * *
>
> CW: That's why I'm asking – you, know how does it actually help us? I mean, relationships great, but specifically – . . . I understand how he can help, but I don't specifically see, assuming we get him on our, you know –
>
> BP: I mean, Jefferson carries the water for those guys when it comes to international trade laws and stuff like that. You know, I'm sure there's tariffs issues, and stuff like that, that Jefferson handles, in order to give them, you know, a little bit more benefits.
>
> CW: Alright.
>
> BP: I mean, his position that he sits on Ways and Means to other countries is extremely beneficial to them. I mean he sits on the Ways and Means full

10

> committee and he sits on the Subcommittee for International Trade. I mean, that's, that's huge. …

Recording of March 31, 2005 (1D-3), at time 18:20:32. This excerpt demonstrates that Pfeffer went beyond references to the Congressman's status and discussed legislative activities.

Similarly, when asked in a later meeting by the cooperating witness what Mr. Jefferson would do for the business, Pfeffer replied:

> My guess, and my guess cause I haven't had that specific conversation with him, my guess is he's gonna be makin sure that the President of Nigeria, and all these guys do what they say they're going to do because of his position on Ways and Means, International trade.

Recording of May 24, 2005 (1D-27), at time 13:10:00.

It is very likely that Pfeffer, who was extensively involved in the activities underlying the indictment and presumably testified before the grand jury, referred to Mr. Jefferson's legislative activities in similar ways throughout his testimony. The grand jury may also have been permitted to listen to some or all of the recorded conversations in which these matters were discussed.

In sum, the evidence here more than demonstrates that there is "at least some reason" to believe that privileged material was used to procure Mr. Jefferson's indictment. Accordingly, he is entitled to review of the grand jury transcripts to examine whether this occurred.[2]

In *Rostenkowski* and *Durenberger*, review of the grand jury materials was carried out by the court *in camera.* Defendant Jefferson respectfully submits that it would be more efficacious

---

[2] In *United States v. McDade*, the Third Circuit rejected the defendant's argument that his indictment should be dismissed because it referred to his committee status. The court stated that, "in this case the indictment relies on the defendant's committee status, not to show that he actually performed any legislative acts, but to show that he was thought by those offering him bribes and illegal gratuities to have performed such acts and to have the capacity to perform other similar acts." 28 F.3d at 293. Here, however, as discussed above, the evidence suggesting that legislative material was presented to the grand jury goes well beyond mere references to status in the indictment. Moreover, the issue before the court at this point is review of the grand jury materials, not the remedy for any violations of the privilege that are revealed by that review.

11

to permit the defendant to undertake this review.[3] He is in the best position to know which testimony and documents relate to his legislative activities. At a minimum, however, the record in this case certainly warrants *in camera* review of all grand jury transcripts, specifically including but not limited to those of the testimony of Brett Pfeffer, all FBI agents, and all current or former staffers, including Lionel Collins, Mel Spence, Stephanie Butler, Roberta Hopkins and Angele Kwemo.

## II.     ANY COUNTS OF THE INDICTMENT THAT MAY HAVE BEEN OBTAINED THROUGH USE OF SPEECH OR DEBATE MATERIALS MUST BE DISMISSED.

After the grand jury transcripts and evidence are reviewed, the court will need to assess the extent to which use of Speech or Debate materials affected the indictment. Defendant Jefferson submits that if such evidence was used as suggested above, it will undoubtedly have impacted the grand jury's consideration of all of the counts that depend on the assertion that Mr. Jefferson agreed to carry out official acts in return for compensation – that is, all of the counts except those alleging violation of the Foreign Corrupt Practices Act and obstruction of justice.

In this regard, defendant acknowledges that "[n]ot every improper reference to Speech or Debate materal before the grand jury is a violation of the privilege." *Swindall*, 971 F.2d at 1547. A key issue is whether or not consideration of privileged material exposes the member to liability: "If reference to a legislative act is irrelevant to the decision to indict, the improper reference has not subjected the member to criminal liability." 971 F.2d at 1548. In *Swindall*, the court found that "because evidence of Swindall's legislative acts was an essential element of

---

[3]     Rule 6(e), although not directly controlling in Speech or Debate cases, authorizes the court to release grand jury materials "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed.R.Crim.Pro. 6(e)(3)(E)(ii). The defense will agree to an appropriate protective order.

12

proof with respect to the affected counts," the improper Speech or Debate evidence was fatal to the indictment. *Id.* at 1549.

Another issue to be considered is the extent to which use of the improper evidence has the potential to impair legislative functions. In *Durenberger*, the court found that sections of a Senate ethics committee report had been improperly submitted to the grand jury. The court held that where no one knew what weight the grand jury attached to the privileged documents, and where use of such material in a criminal prosecution would intimidate and chill legislative activities, the indictment would be dismissed. 1993 WL 738477, * 2-4.

As noted above, the question of the proper remedy here will have to be considered after the grand jury transcripts have been reviewed.

## **CONCLUSION**

For the reasons set forth above, defendant William J. Jefferson respectfully submits that the Court should order review of all testimony and materials presented to the grand jury in this case, and should subsequently dismiss all counts of the indictment found to have been obtained by use of privileged Speech or Debate material.

Respectfully submitted,

WILLIAM J. JEFFERSON

By Counsel

/s/ Robert P. Trout

_____
Robert P. Trout
(Va. Bar No. 13642)
rtrout@troutcacheris.com
Amy Berman Jackson
(Va. Bar No. 25919)
ajackson@troutcacheris.com
Gloria B. Solomon
(Admitted *pro hac vice*)
gsolomon@troutcacheris.com
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax: (202) 464-3319

## Certificate of Service

      I hereby certify that on this 7th day of September, 2007, I electronically filed the foregoing motion and the accompanying memorandum with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

      Mark Lytle
      mark.lytle@usdoj.gov
      Rebeca H. Bellows
      becky.bellows@usdoj.gov
      United States Attorney's Office
      2100 Jamieson Avenue
      Alexandria, Virginia 22314

      Charles E. Duross
      charles.duross@usdoj.gov
      U.S. Department of Justice
      1400 New York Avenue, N.W.
      Washington, D.C. 20005

                          /s/ Robert P. Trout
                          _____

                          Robert P. Trout
                          (Va. Bar No. 13642)
                          rtrout@troutcacheris.com
                          Attorney for William J. Jefferson
                          TROUT CACHERIS, PLLC
                          1350 Connecticut Ave, N.W., Suite 300
                          Washington, D.C. 20036
                          Phone: (202) 464-3300
                          Fax:  (202) 464-3319