**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 1:07CR209** |
| | ) | |
| **WILLIAM J. JEFFERSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPLY IN SUPPORT OF MOTION
FOR REVIEW OF GRAND JURY MATERIALS AND TO DISMISS**

After defendant William J. Jefferson filed his motion for review of grand jury materials, the government permitted Mr. Jefferson's counsel to review (but not photocopy) transcripts of the grand jury testimony of six of Mr. Jefferson's staff members. The information obtained in this review establishes that material protected by the Speech or Debate Clause was presented to the grand jury in a manner that warrants dismissal of all of the counts in the indictment that are based on alleged bribery schemes. At a minimum,  the review of the transcripts made available to date underscores the fact that the defendant is entitled to complete review of all grand jury transcripts.[1]

### A.   Speech or Debate Material Was Presented to the Grand Jury and Tied Directly to the Alleged Bribery Schemes.

In its opposition, the government states that it "is unaware of any privileged material being presented to the grand jury." Gov't Opp. at 7. With regard to the staff members who testified, the government asserts that they did not testify about Speech or Debate matters, and

---

[1]      As the government acknowledges on page 5 of its opposition, failure to accomplish this review at this time could delay matters on the eve of trial if additional Speech or Debate material is discovered when the Jencks material is produced.

assures the Court that they were questioned only about "generic topics:" "Of course, staff members would have been questioned about introductory and preliminary matters such as job title, job description, areas of specialty, which may have included areas of legislation they were assigned to cover." Gov't Opp. at 4; *see also* Gov't Opp. at 7-8. But the transcripts made available to defense counsel for review tell a different story.

Lionel Collins, a former staff member, testified before the grand jury on May 8, 2006. He was asked by the prosecutor about what kind of relationships Mr. Jefferson had with government officials in Nigeria. Collins described how the Congressman had been on the forefront of bringing democracy to the country, and also explained:

> [T]hey were considering legislation dealing with the Africa Growth and Opportunity Act, a trade bill dealing with Africa. Congressman Jefferson was very instrumental in moving the legislation through the Congress, and it was voted on by both the House and Senate side. It was passed. Congressman Jefferson had a lot of African ambassadors involved in the legislation and so forth, and the legislation was very instrumental to the continent of Africa ….

Collins Tr. at 36 (quotations are based on notes of counsel).

The testimony then specifically tied Mr. Jefferson's influence abroad to these legislative activities:

- "*So as a result*, Congressman Jefferson knew the African leaders." [When African leaders came to the US, they would visit him. 30 leaders] "all of them were thankful because of his involvement with this legislation that passed, that opened up all kind of trading opportunities with the continent of Africa." Collins Tr. at 37 (emphasis added) (bracketed material is paraphrased).

- "*So as a result of that*, Congressman Jefferson became known as a Member who, basically, his specialty was international trade, and in particular, Africa. So a lot of times when businesses outside of Louisiana wanted to do things in Africa, they would come and see him because of his contacts…." Collins Tr. at 37 (emphasis added).

- Mr. Lytle then asked: "*so,*" [was Jefferson] "very influential" [in Nigeria]? Collins replied [not just Nigeria, but all of Africa – 20 countries.] Mr. Lytle:

2

"one of the most influential in Congress?" Collins: [yes, on the trade side.]
Collins Tr. at 37-8 (emphasis added).

Mr. Collins was asked whether Mr. Jefferson went on trips with companies interested in

doing business abroad that were not from Louisiana. He answered:

> He was on the Ways and Means -- House Ways and Means Committee, which
> has jurisdiction tax, trade, social security, welfare. So in the area of international
> trade, almost every company in the US is affected some way by international
> trade.

Collins Tr. at 17. Therefore, he explained, companies from outside the state might also sponsor

business delegations and invite Mr. Jefferson.

The testimony of Melvin Spence, a former staffer, addressed the same theme:

> Q:    Was Congressman Jefferson seen as a leader in a particular area of trade
>        by constituents, as far as you know?
>
> A:    Africa would be the closest thing. Like AGOA, the African Growth and
>        Opportunity Act, which is a preferential trade bill.

Spence Tr. at 13.

Even though she was responsible for constituent services in New Orleans and not

legislative work, the prosecutor prefaced a question to staffer Stephanie Butler as follows: "The

Congressman, *through his activities in Congress*, has a specific knowledge of West Africa, you

know, countries in Subsaharan Africa, Gulf of Guinea area …" Butler Tr. at 16 (April 18, 2007 )

(emphasis added).

In short, it is plain that, contrary to the government's contentions, information protected

by the Speech or Debate privilege specifically relating to Mr. Jefferson's legislative activities –

and not simply preliminary matters -- was presented to the grand jury and tied to the bribery

schemes alleged in the indictment. The excerpts above demonstrate that the prosecution pursued

the theory that Mr. Jefferson developed special expertise and contacts *through his particular*

*legislative work,* which he then allegedly used to assist private businesses in return for things of value.[2]  As discussed further below, this use of privileged evidence warrants dismissal of all of the counts in the indictment based on these alleged bribery schemes – that is, Counts 1 and 2 (conspiracy), 3 and 4 (bribery), 5-10 (honest services), 12-14 (money laundering) and 16 (RICO).

### B.    Counts 1-10, 12-14 and 16 of the Indictment Should Be Dismissed.

As Mr. Jefferson demonstrated in his opening memorandum, a congressman cannot be required to defend against an indictment that was procured by use of privileged materials before the grand jury. *See United States v. Swindall*, 971 F.2d 1531, 1547 (11th Cir. 1992) (violation of Speech or Debate privilege before grand jury requires dismissal of indictment); *United States v. Helstoski ("Helstoski II")*, 635 F.2d 200 (3d Cir. 1980) (affirming dismissal of indictment where Speech or Debate materials were presented to the grand jury); *United States v. Durenberger*, 1993 WL 738477, *4 (D. Minn. Dec. 3, 1993) (dismissing indictment where portion of Senate ethics committee report was submitted to grand jury).

---

[2]    This takes this case well outside of the situation in *United States v. McDade*, 28 F.3d 283 (3d Cir. 1994), where the Third Circuit held that references to the defendant's committee status in the indictment were permissible because they were used "not to show that he actually performed any legislative acts, but to show that he was thought by those offering him bribes and illegal gratuities to have performed such acts and to have the capacity to perform other similar acts." 28 F.3d at 293. Here, the specific subject matter of the legislative activities, the nature and extent of those activities, the position Mr. Jefferson advanced within the House on those legislative matters, and the knowledge he obtained through those legislative acts -- and not just mere fact of his status -- was presented to the grand jury. Accordingly, this case falls within the rule established in *United States v. Swindall*, 971 F.2d 1531, 1547 (11th Cir. 1992), which is not even mentioned in the government's opposition.

In its opposition, the government asserts that even if "some" Speech or Debate evidence was presented to the grand jury, dismissal of the indictment would still be unwarranted.[3] The government relies primarily on *United States v. Johnson*, 419 F.2d 56 (4th Cir. 1969), as well as other cases holding that presentation of Speech or Debate evidence to a grand jury did not require dismissal of charges that were not based on that evidence, or where other non-privileged evidence could support the charge.[4] However, these cases are distinguishable. They involved charges that were allowed to stand because the privileged material was not integral to the charge. Here, privileged legislative material was directly used by the prosecution to establish its theory

---

[3] The government argues that even if some "incidental or unsolicited Speech or Debate evidence was inadvertently introduced in the grand jury," dismissal would be inappropriate. Gov't Opp. at 8 This attempt at minimization is apparently in recognition of the holding in *United States v. Helstoski*, 635 F.2d 200, 205 (3d Cir. 1980), that introduction of privileged matter that "permeated the whole proceeding" required dismissal of an indictment. Based on the review of the transcripts made available to date, it is clear that the use of Speech or Debate material in the grand jury goes well beyond the government's description. While it is unknown at this point how much additional Speech or Debate evidence was presented to the grand jury here, there are substantial grounds for believing that there was more. The defendant respectfully submits that before his motion to dismiss is denied, he is entitled to further review of the grand jury transcripts in order to determine how much additional Speech or Debate material was used and to have an opportunity to supplement his motion to dismiss based on that information.

[4] *See United States v. Johnson*, 419 F.2d 56 (4th Cir. 1969) (where conspiracy count that included Speech or Debate evidence was dismissed, other counts in which legislative material played no part could be retried; alleged "bias" that occurred because grand jury heard testimony about legislative material was not sufficient to bar retrial); *United States v. Dowdy*, 479 F.2d 213 (4th Cir. 1973) (where conspiracy counts identified numerous overt acts, counts need not be dismissed when only some overt acts needed to be stricken under Speech or Debate Clause); *United States v. Johnson*, 383 U.S. 169 (1966) (conspiracy count could be retried when references to legislative speech removed); *United States v. McDade*, 28 F.3d 283 (3d Cir. 1994) (even if some alleged overt acts were invalid under Speech or Debate Clause, charges would not need to be dismissed); *United States v. Myers*, 635 F.2d 932, 941 (2d Cir. 1980) (dismissal not required where grand jury heard "some evidence" of legislative acts"). Although the government also cites *United States v. Rostenkowski*, 59 F.3d 1291, 1300 (D.C. Cir. 1995), for its discussion of pre-trial review of evidence, the court there states that it is "[a]ssuming that the indictment is untainted by the submission of the Speech or Debate material to the grand jury" in this discussion.

with respect to the bribery-related counts. Using privileged information for this purpose implicates the Clause's concern about forcing a member to defend himself against charges based on legislative activities. For that reason, the court in *Swindall* analyzed whether the use of privileged material exposed the legislator to liability. It dismissed charges where "evidence of Swindall's legislative acts was an essential element of proof with respect to the affected counts." *United States v. Swindall*, 971 F.2d at 1549.

The approach in *Swindall* is not inconsistent with the cases cited by the government, and is necessary to carry out the purposes of the Speech or Debate Clause. Here, Mr. Jefferson has shown that information protected by the Speech or Debate privilege relating to Mr. Jefferson's legislative activities was presented to the grand jury and used to build the government's bribery case. The prosecution pursued the theory that Mr. Jefferson developed special expertise and contacts "*through his activities in Congress*" (the prosecutor's own words), which he then allegedly used to assist private businesses in return for things of value. Because Mr. Jefferson's legislative activities were used to obtain the bribery counts and related counts in the indictment – indeed, they are the foundation of those charges -- the Speech or Debate Clause requires dismissal of those counts.

## C.  Defendant's Alternative Request for Additional Review of the Transcripts More than Satisfies the Applicable Standard.

Even if the Court were to determine not to dismiss the bribery-related counts at this time, Mr. Jefferson is entitled to further review of all grand jury transcripts. Contrary to the government's claims, the available record – the allegations in the indictment, the recorded conversations of Brett Pfeffer and the transcripts of staff member testimony – is more than sufficient to support Mr. Jefferson's right to this relief.

In its opposition, the government asserts that because the defendant did not challenge any of the allegations in the indictment as being based on Speech or Debate material, the indictment itself offers no support for his claim that protected materials may have been presented to the grand jury. But this ignores the position actually stated by defendant in his motion: that because the indictment identifies the committees and caucuses relating to African trade on which Mr. Jefferson served, and directly ties those memberships to alleged official acts undertaken in promoting businesses in Africa, *see* Ind., ¶¶ 45, 145, there was strong reason to believe that information about Mr. Jefferson's legislative activities was presented to the grand jury in order to establish his knowledge and competence in African trade issues. As we now know, this prediction was accurate, and such information was presented to the grand jury.

The government also asserts that because former staff member Brett Pfeffer did not testify before the grand jury, and recordings of his conversations were not played to the grand jury, no Speech or Debate information could have been transmitted to the grand jury through evidence from him. The government further argues that the excerpt of the recorded conversation involving Pfeffer set forth in defendant's motion does not contain Speech or Debate material in any event.

Contrary to the second claim, Pfeffer's recorded statements refer directly to legislative issues handled by Mr. Jefferson:

> He's a United States Congressman and he gets, he handles, he's handled a lot of issues for them, for Nigeria, while he's been on the Ways and Means International Trade subcommittee: import/export ….

Excerpt from recording of March 31, 2005 (1D-3), at time 18:20:32. Moreover, the subject matter of the entire conversation is Mr. Jefferson's legislative activities, which suggests that Mr. Pfeffer discussed these matters further during the course of his cooperation with the government.

The fact that Pfeffer himself did not testify and that his recorded conversations were not played to the grand jury does not end the issue. Since Pfeffer has been cooperating with the government, information obtained from him must have been presented to the grand jury by an FBI agent as a summary witness to support the allegations in the indictment. For example, ¶ 87 relates to an unrecorded conversation involving only Mr. Jefferson and Pfeffer. Presumably, CW testified about her unrecorded conversations with Pfeffer as well. Given Pfeffer's tendency to talk expansively about Mr. Jefferson's legislative activities, there is good reason to believe that such information was presented to the grand jury.

These facts, plus the indisputable evidence discovered in the grand jury transcripts, provide strong reason to believe that review of the remaining transcripts will reveal that additional Speech or Debate material was presented to the grand jury and relied on by the prosecution, both in testimony and in the prosecutors' instructions to the grand jury. Under the applicable test, this entitles Mr. Jefferson to a review of the remaining transcripts.

The government attempts to forestall this review by asserting that Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure governs the defendant's request here, and that the defendant has failed to meet his burden under that rule. But as Mr. Jefferson set forth in his initial memorandum, the Speech or Debate Clause implicates unique constitutional considerations, which involve protections not comparable to those under the Fourth or Fifth Amendments, including the right of a legislator to be entirely free from the burdens even of defending against claims based on or obtained by use of Speech or Debate materials. *See Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (the Clause protects a Member "not only from the consequences of litigation's results but also from the burden of defending [himself]"). Accordingly, the proper standard for determining whether a defendant is entitled to a review of

grand jury materials in the Speech or Debate context is not Rule 6(e)(3)(E)(ii), but the test set forth by the D.C. Circuit in *United States v. Rostenkowski*, 59 F.3d 1291, 1297 (D.C. Cir. 1995): the defendant "must be able to provide, either from the allegations of the indictment or from some other source, ***at least some reason*** to believe that protected information was used to procure his indictment." 59 F.3d at 1313 (emphasis added). Mr. Jefferson met that test in his initial papers and, with the addition of the information from the transcripts already reviewed, even more plainly meets it now.

Even if Rule 6(e)(3)(E)(ii) were to apply, which defendant disputes, Mr. Jefferson has met the burden he would have under the rule of establishing that "particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment." *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004), quoting *United States v. Abcasis*, 785 F. Supp. 1113, 1119 (E.D.N.Y. 1992). This motion is not a fishing expedition, nor is it based on "conclusory or "speculative" allegations. 314 F. Supp. 2d at 616. The defendant has presented evidence that Speech or Debate material was presented to the grand jury in a manner that was not incidental, but instead directly related to the theories underlying this prosecution. Accordingly, if his motion to dismiss is not granted at this time, he is entitled to review of all of the grand jury transcripts, including but not limited to transcripts of the testimony of all FBI agents and summary witnesses and all instructions to the grand jury, or at least to *in camera* review of all transcripts, in order to permit a determination of the extent to which additional legislative material was used to obtain the charges against him, or otherwise impermissibly tainted the grand jury process.

**CONCLUSION**

For the reasons set forth above, Mr. Jefferson respectfully submits that Counts 1-10, 12-14 and 16 of the indictment should be dismissed. In the alternative, he is entitled to review of all remaining grand jury transcripts and to the opportunity to file a further motion to dismiss after that review is complete.

Respectfully submitted,

WILLIAM J. JEFFERSON

By Counsel

/s/ Robert P. Trout
_____
Robert P. Trout
(Va. Bar No. 13642)
rtrout@troutcacheris.com
Amy Berman Jackson
(Va. Bar No. 25919)
ajackson@troutcacheris.com
Gloria B. Solomon
(Admitted *pro hac vice*)
gsolomon@troutcacheris.com
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax:  (202) 464-3319

**Certificate of Service**

I hereby certify that on this 9th day of October, 2007, I electronically filed the foregoing reply with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Mark Lytle
mark.lytle@usdoj.gov
Rebeca H. Bellows
becky.bellows@usdoj.gov
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314

Charles E. Duross
charles.duross@usdoj.gov
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005

/s/ Robert P. Trout
_____
Robert P. Trout
(Va. Bar No. 13642)
rtrout@troutcacheris.com
Attorney for William J. Jefferson
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax:  (202) 464-3319