IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|                                   |     |                            |
|-----------------------------------|-----|----------------------------|
| UNITED STATES OF AMERICA          | )   |                            |
|                                   | )   | Criminal No. 1:07CR209     |
| v.                                | )   |                            |
|                                   | )   | Hon. T.S. Ellis, III       |
| WILLIAM J. JEFFERSON,             | )   |                            |
|                                   | )   |                            |
| Defendant.                        | )   |                            |

**GOVERNMENT SUR-REPLY IN OPPOSITION TO DEFENDANT'S
MOTION FOR REVIEW OF GRAND JURY MATERIALS AND TO DISMISS**

The United States of America, by its attorneys, Chuck Rosenberg, United States Attorney

for the Eastern District of Virginia, and Mark D. Lytle and Rebeca H. Bellows, Assistant United

States Attorneys, and Charles E. Duross, Special Assistant United States Attorney, respectfully

submits this Sur-Reply in Opposition to Defendant's Motion for Review of Grand Jury Materials

and to Dismiss (hereinafter referred to as "Defendant's Motion" or "Motion"). Contrary to

Defendant Jefferson's reply memorandum, Speech or Debate material was not used to obtain the

Indictment and is not part of the government's theory of the case. This is underscored by the

sheer paucity of selected paragraphs cited in defendant's reply memorandum that purportedly

reflect Speech or Debate material -- after his counsel reviewed more than 600 pages of grand

jury transcripts of staff members voluntarily made available to defense counsel by the

government. In fact, the Indictment on its face is void of Speech or Debate material. As such,

Defendant Jefferson is not entitled to dismissal of the Indictment or to a review of all grand jury

transcripts. Accordingly, his motion should be denied.

## DISCUSSION

The Speech or Debate Clause, U.S. Const. art. I, § 6, provides that for any speech or debate in either house of the United States Congress, Senators and Representatives shall not be questioned in any other place.  The essence of the Clause is "[t]hat the motives or intentions of members of either House cannot be inquired into by criminal proceedings with respect to anything they may say or do in the House." *United States v. Johnson*, 383 U.S. 169, 183 (1966). "A Member of Congress may be prosecuted under a criminal statute provided that the government's case *does not rely on legislative acts* or the motivation for legislative acts." *United States v. Brewster*, 408 U.S. 501, 512 (1972) (emphasis added); *Gravel v. United States*, 408 U.S. 606, 616 (1972) (Speech or Debate Clause guarantees that Member "may not be made to answer questions" about his legislative acts); *United States v. Dowdy*, 479 F.2d 213, 222 (4th Cir. 1973) (Speech or Debate Clause "protects a Congressman from inquiry" about legislative acts); *United States* v. *McDade*, 28 F.3d 283, 300 (3d Cir. 1994) (Alito, J.) (even if two overt acts were alleged in violation of the Clause, "numerous other overt acts" supported the indictment), *cert. denied*, 514 U.S. 1003 (1995).

Here, no Speech or Debate material was presented to the grand jury and the Indictment neither refers to Speech or Debate material nor is predicated on its use.  Defendant Jefferson's claim that the grand jury testimony of three congressional staff members[1] revealed that Speech or Debate material was used in the grand jury is without merit.  While there may have been a brief and unsolicited reference by a staff member to Defendant Jefferson's position on a certain

---

[1]   On October 5, 2007, attorneys for Defendant Jefferson were given the opportunity to review over 620 pages of grand jury transcripts of seven former and current staff members' testimony.

congressional committee or to some law that pre-dates the charged conduct in this case, no

violation of the Clause occurred because the government's case against Defendant Jefferson does

not rely on his performance of legislative acts or his motivation for performing legislative acts.[2]

*United States v. Swindall*, 971 F.2d 1531, 1548 (11th Cir. 1992).

I.      **The Minimal Testimony Referenced in Defendant Jefferson's Reply Memorandum Is Selectively Quoted And Does Not Implicate the Speech or Debate Clause**

As an initial matter, the weakness in Defendant Jefferson's claims is betrayed by the

dearth of supposed improper testimony and his selective quotations of that testimony.  A

*complete* review of the portions of the grand jury testimony of several staff members

conclusively demonstrates that there was absolutely no violation of the Speech or Debate

privilege during the grand jury process.

A.      **Testimony of Stephanie Butler**

Stephanie Butler is a current staff member of Defendant Jefferson's congressional staff,

and she is Defendant Jefferson's District Director in New Orleans, Louisiana.  *See* S. Butler, GJ

Tr. at 7 (Apr. 18, 2007) (hereinafter "Butler Tr.").  During the investigation, she testified before

the grand jury twice, in March 2006 and April 2007.  The transcripts from those sessions before

the grand jury comprise more than 200 pages.  Yet in his reply Defendant Jefferson refers to a

---

[2] In his motion to dismiss the bribery counts, Defendant Jefferson complains that the "[I]ndictment fails to allege that Mr. Jefferson performed or agreed to perform a single official act," which he defines narrowly to be limited to legislative acts.  Mot. to Dismiss Bribery Counts at 1.  Remarkably, in his Reply to the Government's Opposition to his Motion for Review of Grand Jury Materials and to Dismiss ("Reply"), Defendant Jefferson claims that legislative acts are "the foundation of the [bribery] charges."  Reply Mem. at 6.  This assertion is not only contradictory, it is utterly belied by the fact that out of the 620 pages of transcripts the defense was permitted to review, Defendant Jefferson relies entirely on portions of statements contained in only 6 of those 620 pages.

*single sentence* that was a preface to a question asked of Ms. Butler and claims that that single

prefatory sentence ran afoul of the Speech or Debate clause:

> The congressman, through his activities in Congress, has a special
> knowledge of West Africa, you know, countries in Subsaharan
> Africa, Gulf of Guinea area.

Butler, Tr. at 16; *see* Reply Mem. at 3.  That prefatory statement neither comments nor seeks

comment on legislative acts performed by Defendant Jefferson in Congress.  Certainly, not all

"activities in Congress" relate to legislative acts.  *See Brewster*, 408 U.S. at 512 ("It is well

known, of course, that Members of the Congress engage in many activities other than purely

legislative activities protected by the Speech or Debate Clause[,]" including "a wide range of

legitimate 'errands' performed for constituents").  Furthermore, when that question is placed in

context, it is abundantly clear that the prosecutor who questioned Ms. Butler was not making any

reference to legislative acts.  Indeed, when the entire exchange is considered, it demonstrates that

it does not involve Speech or Debate material:

> Q.      The congressman, through his activities in Congress, has a
>         special knowledge of West Africa, you know, countries in
>         Subsaharan Africa, Gulf of Guinea area.  *Are you familiar*
>         *with work he's done on behalf of companies trying to do*
>         *business in Africa ?*
>
> A.      Not too much, no.
>
> Q.      Has he ever asked your assistance for projects in relation to
>         companies attempting to do business in Africa?
>
> A.      No, not really.  I don't remember everything.

Butler Tr. at 16. (emphasis added).  Thus, a reading of the entire exchange demonstrates that the

congressional activities about which the government was inquiring were non-legislative

constituent services performed by Defendant Jefferson and that there was no comment or inquiry

into legislative activities.  *See, e.g., Jewish War Veterans of the United States v. Gates*, Misc.

No. 07-220, 2007 WL 2702012, at *21 (D.D.C. Sept. 17, 2007) (quoting *Brewster* for

proposition that Members of Congress "engage in many activities that do not lead directly to

legislation" and are "political in nature rather than legislative").

### B.      Testimony of Melvin Spence

Similarly, of the more than one hundred pages of the transcript of Melvin Spence's grand

jury testimony, Defendant Jefferson cites *only three sentences*.  Reply Mem. at 3.  *See generally*

M. Spence, GJ Tr. (Feb. 15, 2006) (hereinafter "Spence Tr.").  Mr. Spence is a former member

of Defendant Jefferson's congressional staff who was a senior policy advisor on a number of

issues, including trade, and traveled with Defendant Jefferson to Africa with Vernon Jackson and

Lobbyist A, among others, in February 2004.  *Id*. at 8-9, 14-16.  These are the three sentences

cited by Defendant Jefferson in his reply that he claims contained Speech or Debate material:

> Q.      Was Congressman Jefferson seen as a leader in a particular
>         area of trade by constituents, as far as you know?
>
> A.      Africa would be the closest thing.  Like AGOA, the Africa
>         Growth and Opportunity Act, which is a preferential trade
>         bill.

*Id*. at 13.

The question contains absolutely no inquiry into legislative acts or the motivations

underlying such acts.  If anything, the question inquires into Mr. Spence's view of the

motivations of Defendant Jefferson's *constituents*, not Defendant Jefferson.  As then-Judge Alito

(writing for the Third Circuit) emphasized in *McDade*, this is a critical distinction:

> [T]he indictment relies on the defendant's committee status, not to
> show that he actually performed any legislative acts, *but to show
> that he was thought by those offering him illegal bribes and illegal*

> *gratuities* to have performed such acts and to have the capacity to
> perform other similar acts.

28 F.3d at 293 (emphasis added).  The latter inquiry, *McDade* rightly holds, is entirely

permissible.

Moreover, Mr. Spence's answer does not describe legislative acts or Defendant

Jefferson's motivations for such acts.  AGOA is a statute that set up a funding apparatus for the

U.S. government to provide assistance to U.S. companies seeking to do business in foreign

countries.  *See* 19 U.S.C. § 3701 *et seq*.  References to AGOA are often simply used as short-

hand for the apparatus set up to fund U.S. exports to foreign countries.  *See* Ex. 1 (Mar. 24, 2004

Member/Officer Travel Disclosure Form ("Purpose of Trip: In his capacity as co-chair of

congressional Nigeria Caucus + Africa Trade + Investment Caucus, Rep. Jefferson led a business

delegation to West Africa to explore general investment opportunities + AGOA (Africa Growth

+ Opportunity Act) opportunities."));[3] Ex. 2 U.S. (Export-Import Bank of the United States

brochure (citing AGOA opportunities in sub-Saharan Africa on page three of the brochure)).  As

such, Defendant Jefferson's reliance on these three sentences in support of his request to dismiss

the Indictment is entirely unwarranted.

### C.    Testimony of Lionel Collins

In his reply, Defendant Jefferson also claims that the testimony of Lionel Collins

implicated the Speech or Debate Clause, relying exclusively on unsolicited statements made by

Mr. Collins.  Reply Mem. at 2-3.  For example, Mr. Collins mentioned that Defendant Jefferson

---

[3]   As to the Travel Form attached as Exhibit 1, two companies listed as sponsors on the
Travel Form were companies that had been solicited by and agreed to pay bribes to Defendant
Jefferson.

was on the House Ways and Means Committee, but did so as part of his response to the question:

"Would it always have to be a constituent in that particular congressman's district?"

Nevertheless, the testimony concerning Defendant Jefferson's committee membership in no way

implicated the Speech or Debate Clause.  "The Speech or Debate Clause permits proof of a

defendant's status as a member of a congressional committee or as a holder of a committee

leadership position."  *United States v. McDade*, 28 F.3d 283, 290-91 (3d Cir. 1994).   Moreover,

the question posed by the prosecutor and Mr. Collins' answer did not involve a discussion of

legislative acts or the motivations behind such acts.  Accordingly, those statements did not

violate the Speech or Debate Clause.  *See, e.g., Brewster*, 408 U.S. at 512*; Johnson*, 383 U.S. at

183.

Out of the nearly 100 pages of Mr. Collins' grand jury testimony transcript, Defendant

Jefferson places the most emphasis on three pages -- Pages 36 through 38 -- that reflect a

narrative by Mr. Collins regarding the political history of Nigeria and a trip taken by Defendant

Jefferson in 1997, wherein legislation was being considered for a trade bill dealing with Africa.

L. Collins, GJ Tr. at 36-38 (May 8, 2006) (hereinafter "Collins Tr.").  Defendant Jefferson's

rendition of Mr. Collins' testimony in his reply is not only incomplete, it is misleading.  The

question posed to Mr. Collins by the prosecutor -- which question is conspicuously absent from

Defendant Jefferson's reply -- was as follows:

> Q.      And so what kind of relationships did he [Defendant
>         Jefferson] have with government officials in Nigeria?  That
>         was my question.

Collins Tr. at 36.  Clearly, that question was not an inquiry into legislative acts or Defendant

Jefferson's motives for such acts.  In fact, there was no reason to inquire into Defendant

Jefferson's legislative acts or motives for any such acts because they would not have been

pertinent to the government's theory of its case.

Although the question did not call for an explanation as to *how* Defendant Jefferson had

developed relationships with Nigerian government officials, Mr. Collins responded by first

commenting that African leaders were "thankful to Jefferson for basically being in the forefront

of bringing about democracy in Nigeria." *Id*.  Without any further questioning or prodding by

the prosecutor, Mr. Collins added:

> A.  And then a second thing, as I mentioned, a trip in 1997, the
> purpose of the trip was they were considering legislation
> dealing with the African growth and opportunity, a trade
> bill dealing with Africa.  Congressman Jefferson was very
> instrumental in moving the legislation through the
> Congress, and it was voted on by the House and Senate
> side.  It was passed.
>
> Congressman Jefferson had a lot of the African
> ambassadors involved in the legislation and so forth, and
> the legislation was very instrumental to the continent of
> Africa because now we could – the United States could
> have trading agreements with Africa, and I think the first
> year of the Act, I think the trading in Africa increased
> something like $10 billion.  So as a result, Congressman
> Jefferson knew the leaders, the African leaders.  When they
> would come to the United States, they would visit with the
> President and always come to Capitol Hill, visit with
> members of Congress, and Jefferson personally knew
> probably about 30 leaders, heads of state, and all of them
> were thankful because of his involvement with this
> legislation that passed, that opened up all kind of trading
> opportunities with the continent of Africa.
>
> So as a result of that, Congressman Jefferson became
> known as a member who, basically, his specialty was
> international trade and, in particular, Africa.  So a lot of
> times when businesses outside Louisiana wanted to do
> things in Africa, they would come see the congressman
> because of his contacts with African leaders, African

> ambassadors, and so forth.  And that's why he went to
> Africa many times and that's why businesses would come
> and see him.

Collins Tr. at 36-38.  In response to this narrative, the prosecutor immediately re-directed Mr.

Collins back to the crux of the original question:

> Q.      So it's an understatement to say he was very influential
>         with high-ranking government officials in Nigeria?
>
> A.      Nigeria, but Africa -- I can list about 20 countries that he
>         knew the leaders and influential -- and when the leaders
>         would come to the United States, they would visit him.
>
> Q.      And would you say Congressman Jefferson was one of the
>         most influential members of Congress with respect to
>         African nations?
>
> A.      Probably so, yes, on the trade side, international trade.

*Id*. at 37-38.[4]

Although the aforementioned unsolicited narrative by Mr. Collins makes reference to

Defendant Jefferson's participation in legislation in 1997, the testimony related to activities well

before the conduct charged in the Indictment that are not even relevant to the charges pending

against Defendant Jefferson.  Furthermore, the testimony was not a result of "questioning" or

"inquiry" into Defendant Jefferson's performance of legislative acts or his motivation for

legislative acts:  Mr. Collins' narrative thus was neither sought by the government nor relevant

to the government's theory of its case.  Accordingly, no violations of the Speech or Debate

Clause occurred as a result of the narrow and misleading references to specific grand jury

testimony claimed by Defendant Jefferson.

---

[4]  The prosecutor then directed Mr. Collins to an exhibit concerning a February 2004 trip
to West Africa involving iGate and Company C.  Collins Tr. at 38.

In this regard, Defendant Jefferson's reliance on *United States v. Swindall*, 971 F.2d 1531 (11th Cir. 1992), is misplaced.  In *Swindall*, a former congressman was convicted of perjury in a matter where the government relied on evidence that the defendant served on the Banking and Judiciary Committees to show that he had knowledge of the money laundering statutes, which statutes were considered by those committees.  *Id*.  In that case,  the government acknowledged that such evidence was "critical to the prosecution of the case," and the court called the evidence that the defendant sat on those committees, considered such money laundering legislation, and accordingly had personal knowledge of the contents of those statutes, "an essential element of proof with respect to the affected counts."  *Id*. at 1549.   As the *Swindall* court reasoned, "levying criminal or civil liability on Members of Congress for their knowledge of the contents of bills considered by their committees threatens or impairs the legislative process . . . ."  *Id.* at 1545.

Unlike *Swindall*, this case has nothing to do with legislation or the legislation that was considered by the committees of which Defendant Jefferson was a member.  In attempting to force the instant case into the confines of *Swindall,* Defendant Jefferson resorts to simply distorting the government's case, stating that "Mr. Jefferson developed special expertise and contacts through his particular legislative work, which he then used to assist private business in return for things of value."  Reply Mem. at 3-4.  To the contrary, the government's theory is that Defendant Jefferson had influence with both U.S. and foreign government officials because of his status as a Member of Congress and its various committees and caucuses.  It is simply not relevant to the government's case whether Defendant Jefferson passed laws or sought legislation in the past that endeared him to certain leaders in Africa.

* * * * *

At bottom, although Defendant Jefferson has reviewed over 600 pages of the grand jury testimony of seven of his own staff members, he has not been able to demonstrate that *any* piece of that testimony entrenched upon his Speech or Debate Clause privilege.  As shown above, despite Defendant Jefferson's strained efforts to bootstrap certain minuscule portions of this testimony into a violation of the Speech or Debate Clause, that testimony shows the opposite. Indeed, the testimony of Defendant Jefferson's staff members shows the scrupulous care taken by the prosecution as it proceeded through its investigation of Defendant Jefferson's multi-faceted bribery schemes.  At any rate, as shown below, even if this Court were to conclude that some privileged material found its way into the grand jury room, which the government firmly contests, that would still not mandate dismissal of any of the counts in the Indictment.

**II.      Dismissal of the Indictment is Not Warranted Even if the Referenced Testimony Implicated the Speech or Debate Clause.**

Even if this Court were to determine that some Speech or Debate material had been inadvertently introduced to the grand jury, which the government does not believe occurred, such statements were so incidental and irrelevant to the allegations contained in the Indictment that they could not be said to subject Defendant Jefferson to any criminal liability.  Where, as here, an indictment is facially valid, dismissal of the indictment is not warranted even if privileged Speech or Debate materials were presented to the grand jury.  *See United States v. Johnson*, 419 F.2d 56, 58 (4th Cir. 1969), *cert. denied*, 397 U.S. 1010 (1970).  *See also United States v. Myers*, 635 F.2d 932, 941 (2d Cir.1980) (holding that presentation of some evidence protected by Speech or Debate Clause did not require dismissal of indictment).

The *Johnson* series of decisions involved a congressman from Maryland who had

conspired to influence the Department of Justice to drop charges against savings and loan

association officials in return for payments he received from those officials. *United States v.*

*Johnson*, 383 U.S. 169, 171-72 (1966). At trial, a speech he gave before the House of

Representatives was admitted into evidence and questioning occurred regarding the motives

behind the speech. *Id*. at 173-74. On appeal, the Fourth Circuit struck down Johnson's

conviction on counts related to the speech at issue, ordered that references to the speech be

expunged from the indictment and remanded for a new trial. *United States v. Johnson*, 337 F.2d

180, 204 (4th Cir. 1964). That opinion was affirmed by the Supreme Court. *Johnson*, 383 U.S.

at 185  (permitting new trial "purged of elements offensive to the Speech or Debate Clause").

Following remand from the Supreme Court, Johnson was convicted on re-trial with an

indictment expunged of Speech or Debate material. 419 F.2d at 58. On his next appeal to the

Fourth Circuit, Johnson contended that the counts of the indictment on which he was convicted

were invalid because the grand jury had improperly considered Speech or Debate material. *Id*.

In rejecting Johnson's claim, the Court relied on several cases, including *United States v.*

*Costello*, 350 U.S. 359, 363 (1956), and quoted the following excerpt from Justice Black's

opinion in *Costello*:

> If indictments were to be held open to challenge on the ground that
> there was inadequate or incompetent evidence before the grand
> jury, the resulting delay would be great indeed. The result of such
> a rule would be that before trial on the merits a defendant could
> always insist on a kind of preliminary trial to determine the
> competency and adequacy of the evidence before the grand jury.
> This is not required by the Fifth Amendment. *An indictment*
> *returned by a legally constituted and unbiased grand jury, like an*
> *information drawn by the prosecutor, if valid on its face, is enough*

> *to call for the charge on the merits.* The Fifth Amendment requires nothing more.

419 F.2d at 58 (emphasis added). Here, Defendant Jefferson has been unable to show that there

is any Speech or Debate material contained on the face of the Indictment. Accordingly,

dismissal is not appropriate even if this Court were to determine that the grand jury heard

testimony that implicated the Speech or Debate Clause.

As discussed above and as is clear from the face of the Indictment, the government's case

does not involve legislation or legislative activity. No material covered by the Speech or Debate

clause was inquired into by the grand jury or is contained on the face of the Indictment. Indeed,

even if Speech or Debate Clause material was presented to the grand jury, it was so insignificant

and incidental to the overall theory of the case against Defendant Jefferson that it did not subject

him to liability. "If reference to a legislative act is irrelevant to the decision to indict, the

improper reference has not subjected the Member to criminal liability." *Swindall*, 971 F.2d at

1548. The *Swindall* court provided an instructive hypothetical:

> For example, suppose a grand jury indicted a legislator for bank robbery after a prosecutor presented it with evidence of (1) a gun with the member's fingerprints, (2) a photograph of her robbing the bank and (3) a copy of a speech she made on the floor of the house in favor of saving the Northern Spotted Owl. *There would be no violation because the [Speech or Debate] material would not have exposed the legislator to liability.*

*Swindall* at 1548, n.21 (emphasis added). Thus, because the staff members' testimony about

legislation in no way exposes Defendant Jefferson to criminal liability, there is no violation of

the Speech or Debate Clause. Accordingly, Defendant Jefferson's motion to dismiss the

Indictment should be denied.

**III.     Defendant Jefferson Is Not Entitled to Review Additional Grand Jury Transcripts**

In spite of pointing to only a few pages of three staff members' testimony that, in

Defendant Jefferson's view, implicates the Speech or Debate Clause (out of more than 600 pages

of testimony for seven staff members), Defendant Jefferson, nevertheless, now seeks wholesale

review of *all other transcripts* of non-staffer testimony before the grand jury.  But Defendant

Jefferson cannot make the required showing under Fed. R. Crim. P. 6(e)(3)(E)(ii) that any other

grand jury testimony would be likely to contain references to Speech or Debate material.

Defendant Jefferson "must be able to provide, either from the allegations in the indictment or

from some other source, at least some reason to believe that protected information *was used to*

*procure his indictment*." *United States v. Rostenkowski*, 59 F.3d 1291, 1313 (D.C. Cir. 1995)

(emphasis added).  Defendant Jefferson cannot make this required showing because evidence

protected by the Speech or Debate Clause is not part of the theory of the government's case,

which alleges that Defendant Jefferson sought bribes in return for the performance of non-

legislative official acts.  It is also clear from the 94-page Indictment that the charges are not

predicated on any Speech or Debate material and do not involve any inquiry into Defendant

Jefferson's legislative conduct or motivations for such legislation.  Moreover, the fact that

Defendant Jefferson has come up completely empty of Speech or Debate material after such an

extensive review of his own staff members' testimony amply demonstrates why further review of

grand jury materials is not warranted.

The Fourth Circuit considered and rejected a similar request for pretrial review of grand

jury material in *Johnson.  See* 419 F.2d at 58.  In addition to challenging his conviction on the

grounds that the grand jury heard evidence privileged by the Speech or Debate clause, Johnson

sought review of all grand jury testimony prior to trial.  *Id*. at 59.  The Fourth Circuit affirmed

the lower court's denial of Johnson's request for pretrial review of all grand jury transcripts, finding that access to such transcripts at trial was sufficient. *Id.*

As discussed above, there are no "irregularities in the grand jury proceedings [that would] create a basis for dismissal" of the Indictment. *United States v. Nguyen*, 314 F. Supp. 2d. 612, 616 (E.D. Va. 2004). First, the Indictment is facially void of any reference to Speech or Debate Clause protected materials. Second, Defendant Jefferson cannot provide, either from the allegations of the Indictment or from some other source, at least some reason to believe that Speech or Debate material was used to procure the Indictment. *See Rostenkowski*, 59 F.3d at 1313. In essence, what Defendant Jefferson is asking for is a review of the "grand jury materials solely because he is a Member of Congress." *Id.* Granting such a review on the facts of this case would "completely disregard the 'long-established policy' in favor of grand jury secrecy . . . and would fail to strike an appropriate (indeed any) balance between the grand jury's 'functional independence from the Judicial Branch,' . . . and a Congressman's right to be free from prosecution for his legislative acts." *Id.* (citations omitted). Accordingly, Defendant Jefferson's motion to dismiss the Indictment and to review all grand jury transcripts should be denied.

## CONCLUSION

Defendant Jefferson has made no showing that the Indictment contains any references to Speech or Debate materials on its face. Moreover, even if this Court were to conclude that some of the evidence presented to the grand jury violated the Speech or Debate Clause, dismissal of the Indictment would not be appropriate. Lastly, because Defendant Jefferson has been unable to demonstrate with particularized facts that grounds may exist for dismissing the Indictment

because of grand jury irregularities, his request for review of all grand jury transcripts by him, or

*in camera* by the Court, should be rejected.

 

 

 

Respectfully submitted,

 

 

Chuck Rosenberg
United States Attorney

 

 

By:             /s/
                Mark D. Lytle
                Assistant United States Attorney
                Attorney for the United States
                United States Attorney's Office
                2100 Jamieson Avenue
                Alexandria, VA 22314
                Phone:   703-299-3700
                Fax:      703-299-3981
                Mark.Lytle@usdoj.gov

 

 

 

                /s/
                Rebeca H. Bellows
                Assistant United States Attorney
                Attorney for the United States
                United States Attorney's Office
                2100 Jamieson Avenue
                Alexandria, VA 22314
                Phone:   703-299-3700
                Fax:      703-299-3981
                Becky.Bellows@usdoj.gov

       /s/

Charles E. Duross
Special Assistant U.S. Attorney
Attorney for the United States
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone:   703-299-3700
Fax:      703-299-3981
Charles.Duross@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of October, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> Robert P. Trout
> Trout Cacheris, PLLC
> 1350 Connecticut Avenue, N.W.
> Suite 300
> Washington, D.C.  20036
> rtrout@troutcacheris.com

>                    /s/
> Mark D. Lytle
> Assistant United States Attorney
> United States Attorney's Office
> 2100 Jamieson Avenue
> Alexandria, VA 22314
> Phone:   703-299-3768
> Fax:       703-299-3981
> Mark.Lytle@usdoj.gov