**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| v. ) | **Criminal No. 1:07CR209 (TSE)** |
| ) | |
| **WILLIAM J. JEFFERSON,** ) | |
| ) | |
| **Defendant.** ) | |

**DEFENDANT'S RESPONSE TO SUR-REPLY IN OPPOSITION TO
MOTION FOR REVIEW OF GRAND JURY MATERIALS AND TO DISMISS**

Pursuant to the order of this Court issued at the hearing on October 12, 2007, defendant William J. Jefferson respectfully submits this response to the government's sur-reply regarding defendant's motion to dismiss the bribery-related counts due to improper use of Speech or Debate material in the grand jury or, in the alternative, for an order permitting review of all remaining grand jury materials.

**A.     The Transcripts Reviewed to Date Show That Speech or Debate Material Was Used in the Grand Jury.**

In response to Mr. Jefferson's initial motion, the government claimed that it was unaware of any privileged material being presented to the grand jury (Gov't Opp. at 7), but as a "precautionary" step permitted the defense to review a small subset of the grand jury transcripts in this case – those reflecting testimony by some current or former members of Mr. Jefferson's congressional staff. As was demonstrated in defendant's reply in support of his motion, these transcripts reveal that, contrary to the government's assertions, Speech or Debate material was presented to the grand jury and was used to build the government's bribery case. In its Sur-Reply, the government continues to insist that no Speech or Debate material was presented to the grand jury (Sur-Reply at 2), but its arguments cannot withstand scrutiny.

As the government acknowledges, former staff member Lionel Collins testified as follows:

> And then a second thing, as I mentioned, a trip in 1997, the purpose of the trip was they were considering legislation dealing with the African growth and opportunity, a trade bill dealing with Africa. Congressman Jefferson was very instrumental in moving the legislation through the Congress, and it was voted on by the House and Senate side. It was passed.
>
> Congressman Jefferson had a lot of the African ambassadors involved in the legislation and so forth . . . . So as a result, Congressman Jefferson knew the leaders, the African leaders. . . .

Collins Tr., quoted in Sur-Reply at 8.

This testimony directly addresses Mr. Jefferson's legislative activities and ties those activities to Mr. Jefferson's knowledge of African leaders. A congressman's actions with respect to legislation – unquestionably the subject matter of this testimony – fall squarely within the sphere of legislative activity protected by the Speech or Debate Clause. *See Doe v. McMillan*, 412 U.S. 306, 312-13 (1973); *Gravel v. United States*, 408 U.S. 606, 625 (1972).

The quoted exchanges from the testimony of Stephanie Butler and Melvin Spence also reference Speech or Debate material. Ms. Butler was asked a question prefaced by the prosecutor's statement that "The Congressman, *through his activities in Congress*, had a specific knowledge of West Africa . . . " (emphasis added), picking up on the subject matter of Mr. Collins' testimony. The claim that this question refers only to non-legislative activities such as "errands" for constituents (Sur-Reply at 4) is not consistent with its focus on Mr. Jefferson's activities *in* Congress. And the fact that the prosecution followed this statement with a question about work on behalf of companies trying to do business in Africa does not change the meaning of the statement. Indeed, it shows that the prosecution directly related Mr. Jefferson's knowledge gained through legislative activities to activities on behalf of companies in Africa – precisely the

2

subject of the bribery allegations in the indictment. The quoted testimony from Mr. Spence also demonstrates the tie between Mr. Jefferson's expertise in Africa and legislation.

Apparently recognizing that this testimony – particularly that of Mr. Collins – undermines its position, the government resorts to counting the number of pages and sentences cited, and to a number of other tactics designed to minimize the substance of the quoted testimony. The government accuses the defense of being misleading by failing to set out the question that elicited the quoted testimony from Mr. Collins. *See* Sur-Reply at 7 (this "question is conspicuously absent from Defendant Jefferson's reply"). But the government is wrong. The reply plainly and correctly identified the question to Mr. Collins: "He was asked by the prosecutor about what kind of relationships Mr. Jefferson had with government officials in Nigeria." Def. Reply at 2 (compare with question quoted in Sur-Reply at 7).

The government further accuses the defense of being inconsistent, contending that the argument here that legislative acts were used by the prosecution in obtaining the bribery-related counts is at odds with the argument in the substantive motion to dismiss the bribery counts that no official legislative acts are alleged in those counts. *See* Sur-Reply at 3, n.2. But these arguments are not inconsistent at all. As occurred here, Speech or Debate material can be used to build the government's case in the grand jury, or otherwise be improperly relied upon to convince the grand jury to indict, without being cited in the indictment as a basis for the charges brought. *See United States v. Rostenkowski*, 59 F.3d 1291, 1298 (D.C. Cir. 1995) (explaining why court must be able to look beyond the face of the indictment in considering a Speech or Debate challenge: "Otherwise, a prosecutor could with impunity procure an indictment by inflaming the grand jury against a Member upon the basis of his Speech or Debate, subject only

3

to the necessity of avoiding any reference to the privileged material on the face of the indictment.").

The government also suggests that Mr. Collins' testimony cannot have violated the Speech or Debate Clause because it was unsolicited. *See* Sur-Reply at 6, 8. But the government was presumably already aware of the nature of the testimony that Mr. Collins would give as the result of interviewing him prior to his appearance before the grand jury. Moreover, there is no indication that the government cautioned the witness not to reveal Speech or Debate material or stopped him once he began talking about Mr. Jefferson's legislative activities. And the next question from the prosecutor – "So it's an understatement to say he was very influential with high-ranking government officials in Nigeria?" (Sur-Reply at 9) – used and built upon Mr. Collins' testimony about the connection between Mr. Jefferson's legislative activities and his influence with African officials.

In addition, the government asserts that the legislative activity described in Mr. Collins' testimony pre-dated the charged conduct in this case (*see* Sur-Reply at 3, 9), but this fact plainly makes no difference. The contacts and influence that the prosecution alleges Mr. Jefferson used when engaged in the activities set forth in the indictment were developed, according to the quoted testimony, by virtue of the very legislative activities described by Mr. Collins. More importantly, the Speech or Debate privilege is "absolute," *Eastland v. United States Serviceman's Fund*, 421 U.S. 491, 509 (1975), and legislative acts cannot be used to build a case against a congressman regardless of whether they occurred before or after the conduct charged in the indictment.

Thus, as set out in the reply, the transcripts reviewed to date demonstrate that Speech or Debate material was introduced in the grand jury. While the quoted instances may be few in

4

number, the government used these references to Mr. Jefferson's legislative acts to build its case that Mr. Jefferson had special knowledge of Africa and influence with African officials that he allegedly used to assist businesses in Africa. Although the government claims that it relies only on Mr. Jefferson's status as a Member of Congress and of various committees and caucuses, the questioning and evidence heard by the grand jury during the testimony of Mr. Jefferson's current and former staff members went well beyond the mere identification of Mr. Jefferson's committee assignments to discuss the substance of his legislative activities there.

### B.     The Government's Use of Speech or Debate Material in the Grand Jury Warrants Dismissal of the Bribery-Related Counts in the Indictment.

In considering a Speech or Debate challenge to an indictment, the fundamental issue is whether the use of privileged material exposed the legislator to liability. *See United States v. Swindall*, 971 F.2d 1531, 1548 (11th Cir. 1992). The court in *Swindall* described the test as whether the legislative acts were *relevant* to the decision to indict: "If reference to a legislative act is irrelevant to the decision to indict, the improper reference has not subjected the member to criminal liability." *Id.* In *Swindall*, relevance was established by the government's admission that privileged evidence was an essential element of its proof on the challenged count. *Id.* at 1549. While there is no similar admission here, the transcripts reviewed to date make it clear that the government used evidence showing that Mr. Jefferson developed special expertise and contacts *through his particular legislative work,* which he then allegedly used to assist private businesses in return for things of value – the basis of the bribery charges.[1] The protected material was thus

---

[1]     For this reason, the government's reliance on the hypothetical provided in *Swindall* (*see* Sur-Reply at 13) is misplaced.

5

a relevant and integral part of the government's case and, therefore, dismissal of the affected counts is warranted.

Moreover, it is not necessary for legislative information to be an "essential element" of proof in order for use of legislative acts in the grand jury to be a violation of the clause. *See United States v. Durenberger*, 1993 WL 738477, *2 (D. Minn. Dec. 3, 1993) (Speech or Debate Clause was violated where excerpts from legislative reports were provided as exhibits to the grand jury and "no one . . . knows what weight, if any, the grand jury attached to the selected pages from the Reports;" it was conceivable that the grand jury never saw the selected pages, but also plausible that they relied on them to justify the indictment). Here, the protected material was incorporated into the government's presentation to the grand jury on the bribery charges in a manner that makes it more than plausible that the grand jury relied on that information in returning the indictment.

Even if the government does not intend to introduce evidence of legislative acts at trial, allowing this prosecution to go forward after legislative acts were used to build the government's case would directly violate a congressman's privilege not to have to defend himself against allegations obtained through use of Speech or Debate material. *See United States v. Rostenkowski*, 59 F.3d at 1297 (clause protects a Member from the burden of defending himself as well as from the consequences of prosecution). "When a violation of the privilege occurs in the grand jury phase, a member's rights under the privilege must be vindicated in the grand jury phase." *Swindall*, 971 F.2d at 1546-47.

The government asserts that even if Speech or Debate material was presented to the grand jury, the indictment should not be dismissed because it is facially valid. As it did in its opposition, the government relies primarily on *United States v. Johnson*, 419 F.2d 56 (4th Cir.

6

1969). But the issue in *United States v. Johnson* was whether the retrial of counts that had nothing to do with legislative acts was barred due to alleged "bias" resulting from the grand jury's hearing testimony about legislative material. Here, the counts at issue all relate to the Speech or Debate material that was introduced in the grand jury.

The government also relies on *Costello v. United States*, 350 U.S. 359, 363 (1956), cited in *United States v. Johnson*, for the principle that facially valid indictments are not subject to challenge on the ground that the evidence before the grand jury was inadequate or incompetent. But *Costello* did not involve the Speech or Debate Clause or, indeed, any privilege that entitles a defendant to avoid even having to defend himself against improperly-obtained charges. As noted by the court in *United States v. Helstoski*, 635 F.2d 200, 204 (3d Cir. 1980), the very act of introducing Speech or Debate material in the grand jury is a constitutional violation in itself. Therefore, *Costello* does not apply here. *See also United States v. Rostenkowski*, 59 F.3d at 1299 (recognizing general propositions regarding facially valid indictments, but stating "we do not think they are applicable where they would undermine the important purposes served by the Speech or Debate Clause").

The constitutional violation here is clear. The government's bribery charges against Mr. Jefferson are premised on the theory that he had special influence with African officials that he used to assist businesses seeking projects in Africa. In the grand jury, the government presented evidence showing that this influence was developed as the direct result of Mr. Jefferson's legislative activities. As the result, Mr. Jefferson is in the position of having to defend against charges that were obtained in reliance on his conduct as a legislator – precisely the situation that the Speech or Debate Clause forbids. Accordingly, the bribery-related counts in the indictment must be dismissed.

### C. The Defendant is At Least Entitled to Review of the Remaining Grand Jury Transcripts.

Even if the Court were to consider it premature to rule on the motion to dismiss on the state of the record so far, the Court should not deny the motion to dismiss without giving Mr. Jefferson the opportunity to review the remaining grand jury transcripts to determine whether additional Speech or Debate material was used in the grand jury. Contrary to the government's claims, the defendant has clearly provided enough information to create "at least some reason to believe that protected information was used to procure his indictment." *United States v. Rostenkowski,* 59 F.3d at 1313.

After essentially ignoring the *Rostenkowski* test in its opposition and asserting instead that Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure applied, the government in its sur-reply now appears to be conflating the two tests and suggesting that they impose the same standards. But as set forth in defendant's initial memorandum and reply, the Speech or Debate Clause implicates unique constitutional considerations, which involve protections not comparable to those under the Fourth or Fifth Amendments, including the right of a legislator to be entirely free from the burdens even of defending against claims based on or obtained by use of Speech or Debate materials. *See Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (the Clause protects a Member "not only from the consequences of litigation's results but also from the burden of defending [himself]"). Accordingly, the proper standard for determining whether a defendant is entitled to a review of grand jury materials in the Speech or Debate context is the less restrictive test in *Rostenkowski*.

The government argues the defendant's request fails under both standards because, given the government's theory of the case, he cannot show that there is reason to believe that protected information was used to procure the indictment. *See* Sur-Reply at 14. As detailed above,

8

however, regardless of the government's current statement of the theory that it will pursue at trial, the defendant has indeed demonstrated from the transcripts reviewed to date that information about legislative acts *was* used in the grand jury to obtain the bribery-related counts in the indictment. Moreover, the government's claim that the defendant's review of the staffers' grand jury testimony "has come up completely empty of Speech or Debate material" (Sur-Reply at 14) is simply unfounded, and the defendant's rights under the Speech or Debate Clause cannot be vindicated merely by relying on the government's assertion that no use of additional Speech or Debate material will be found in the remaining transcripts.

In this regard, it is important to note that to date the government has permitted the defendant to review only the transcripts of the small number of witnesses who were current or former staff members.[2] The grand jury obviously heard from numerous additional witnesses, including FBI agents and the cooperating witness CW, was presented with numerous exhibits, and heard instruction from the prosecution. Given the available facts, there is strong reason to believe that additional legislative material will be discovered in the remaining transcripts.

To take one critical example, the recorded conversations of former Jefferson staff member Brett Pfeffer, who is now cooperating with the government, reveal that he talked repeatedly about Mr. Jefferson's legislative activities. The government has advised that Pfeffer did not testify before the grand jury and that the recordings of his conversations were not played to the grand jury. Information obtained from Pfeffer must have been presented to the grand jury by an FBI agent as a summary witness to support the allegations in the indictment, and given the

---

[2] The government's complaint that the number of references to Speech or Debate material offered by the defendant is too small to warrant dismissal thus results from a situation of the government's own making. In any event, the defendant does not rely on the quantity of the references but, instead, on their direct relevance to the bribery charges.

9

evidence of Pfeffer's conversations, it is likely that this information included privileged legislative material.[3] Other FBI agents who investigated Mr. Jefferson's activities presumably also provided testimony. CW, who had numerous conversations with Pfeffer, was also likely to have discussed his descriptions of the Congressman's legislative activities in her grand jury testimony. Further, the fact that the indictment identifies the committees and caucuses relating to African trade on which Mr. Jefferson served, and directly ties those memberships to alleged official acts undertaken in promoting businesses in Africa, *see* Ind., ¶¶ 45, 145, supports the conclusion that legislative activities were addressed in the government's proof.

In order to obtain review of the remaining transcripts, the defendant does not have to prove that they contain Speech or Debate material relevant to the challenged counts; instead, he needs only to show that there is some reason to believe that they do. The facts set forth above, combined with the information in the staff member transcripts already examined, are more than enough to suggest that the prosecution used references to Speech or Debate material to bolster the theme that Mr. Jefferson developed knowledge and influence "through his activities in Congress," and that he used that knowledge and influence to assist private businesses in return for things of value. These facts are also more than enough to suggest that such references may be found elsewhere in the government's presentation to the grand jury, in its instructions as well as in the testimony of other witnesses. Accordingly, under *Rostenkowski* the defendant is entitled to review of the remaining grand jury materials to determine whether additional Speech or Debate material is present. Even if Rule 6(e)(3)(E)(ii) were to apply, which defendant disputes, for all of the reasons above Mr. Jefferson has met the burden he would have under the rule of establishing that "particularized and factually based grounds exist to support the proposition that

---

[3] The government's Sur-Reply does not even address this point.

irregularities in the grand jury proceedings may create a basis for dismissal of the indictment." *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004), quoting *United States v. Abcasis*, 785 F. Supp. 1113, 1119 (E.D.N.Y. 1992).

*United States v. Johnson*, cited by the government in its sur-reply, does not negate Mr. Jefferson's right to review the grand jury transcripts. The court's decision affirming the trial court's denial of Johnson's request for grand jury testimony was based on the dismissal of the conspiracy count involving his legislative acts. 419 F.2d at 59. Here, however, the bribery-related counts that were obtained with the use of privileged legislative material are still in the case. If Mr. Jefferson's motion to dismiss the bribery-related counts is granted, his request for review of the remaining grand jury transcripts will be moot. If not, Mr. Jefferson is entitled to review the remaining grand jury materials – including but not limited to transcripts of the testimony of all FBI agents and summary witnesses and all instructions to the grand jury – or at least to *in camera* review of all transcripts, for the purpose of determining whether additional Speech or Debate material was used in the grand jury in a manner that warrants dismissal of the challenged counts in the indictment.

## CONCLUSION

For the reasons set forth above and in his other papers in support of this motion, Mr. Jefferson respectfully submits that all of the bribery-related counts in the indictment – that is, Counts 1-10, 12-14 and 16 – should be dismissed. In the alternative, he submits that the Court should not deny the motion to dismiss without permitting a review of all remaining grand jury transcripts and to the opportunity to file a further motion to dismiss after that review is complete.

11

Respectfully submitted,

/s/ Robert P. Trout
_____
Robert P. Trout
(Va. Bar No. 13642)
rtrout@troutcacheris.com
Attorney for William J. Jefferson
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax:  (202) 464-3319

/s/ Amy Berman Jackson
_____
Amy Berman Jackson
(Va. Bar No. 25919)
ajackson@troutcacheris.com
Attorney for William J. Jefferson
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax:  (202) 464-3319

/s/ Gloria B. Solomon
_____
Gloria B. Solomon
(Admitted *pro hac vice*)
gsolomon@troutcacheris.com
Attorney for William J. Jefferson
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax:  (202) 464-3319

**Certificate of Service**

      I hereby certify that on this 26th day of October, 2007, I electronically filed the foregoing response with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

      Mark Lytle
      mark.lytle@usdoj.gov
      Rebeca H. Bellows
      becky.bellows@usdoj.gov
      United States Attorney's Office
      2100 Jamieson Avenue
      Alexandria, Virginia 22314

      Charles E. Duross
      charles.duross@usdoj.gov
      U.S. Department of Justice
      1400 New York Avenue, N.W.
      Washington, D.C. 20005

      /s/ Robert P. Trout
      _____
      Robert P. Trout
      (Va. Bar No. 13642)
      rtrout@troutcacheris.com
      Attorney for William J. Jefferson
      TROUT CACHERIS, PLLC
      1350 Connecticut Ave, N.W., Suite 300
      Washington, D.C. 20036
      Phone: (202) 464-3300
      Fax:  (202) 464-3319