**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:07cr209** |
| | ) | |
| **WILLIAM J. JEFFERSON** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

In this sixteen-count prosecution, the government charges defendant William J. Jefferson, a sitting member of the United States House of Representatives, with a variety of crimes including conspiracy, wire fraud, foreign corrupt practices, money laundering, obstructing justice, racketeering, and soliciting bribes. Among the numerous pretrial motions filed by defendant is the motion now before the Court to review grand jury materials and to dismiss the indictment on the ground that the indictment was returned on the basis of information privileged by the Speech or Debate Clause, U.S. Const. Art I, § 6, cl. 1. The matter was fully briefed and argued, and a bench ruling and Order issued denying defendant's motion. *United States v. Jefferson*, 1:07cr209 (E.D. Va. Feb. 6, 2008) (Order). This Memorandum Opinion incorporates and elucidates the reasons for the denial of defendant's motion.

**I.**

Defendant is the currently sitting Member of the United States House of Representatives representing Louisiana's 2nd Congressional District, an office he has held since 1991. The indictment alleges that beginning in or about January 2001, defendant used his office to advance the

business interests of various individuals and corporations in return for money and other things of value paid either directly to defendant or via 'nominee companies,' that is, companies ostensibly controlled by one of defendant's family members but in fact controlled by defendant himself. More specifically, the indictment alleges seven bribery schemes, each of which merits brief description here.

First, the indictment alleges that defendant solicited bribes from Vernon Jackson, president of iGate, Incorporated (iGate), a Louisville, Kentucky-based telecommunications firm, to promote iGate's telecommunications technology in certain African countries. In return for payments of money and iGate shares to the ANJ Group, L.L.C. (ANJ), a Louisiana limited liability company ostensibly controlled and managed by defendant's spouse, Andrea Jefferson, defendant allegedly sent letters on official letterhead, conducted official travel, and met with foreign government officials to promote the use of iGate's technology.

Second, the indictment alleges that defendant solicited bribes from Netlink Digital Television (Netlink), a Nigerian corporation that was pursuing a telecommunications venture in Nigeria and elsewhere in Africa. In return for a share of revenue, stocks, and fees from Netlink, defendant allegedly performed various official acts including meeting with Nigerian government officials to promote Netlink's business.

Third, the indictment alleges that defendant induced Lori Mody, an Alexandria, Virginia-based businesswoman, to finance a telecommunications project in Africa using iGate's technology. Defendant allegedly solicited bribes from Mody in the form of shares in W2-IBBS, a Nigerian company formed by Mody to pursue the Nigerian telecommunications project, as well as money to

be paid to defendant's family members. In return for these bribes, defendant allegedly used his office to promote W2-IBBS's interests in Nigeria and elsewhere in Africa. Defendant also allegedly solicited bribes in the form of shares in IBBS, a Ghanian company formed by Mody to pursue the telecommunications project in that country. In return, defendant allegedly sent letters on official letterhead, conducted official travel to Ghana, and met with Ghanian government officials to promote Mody's, IBBS's, and W2-IBBS's interests in Ghana and elsewhere in Africa. The indictment also alleges that to advance this bribery scheme, defendant introduced Mody to officials of the Export-Import Bank of the United States (Ex-Im Bank)[1] to assist Mody in securing financial assistance. Defendant and Mody also allegedly discussed bribing Nigerian government officials to facilitate the W2-IBBS telecommunications project. It is further alleged that defendant then met with and offered to bribe Atiku Abubakar, who was then the Vice President of Nigeria. And, according to the indictment, defendant received $100,000 in cash from Mody for the purpose of paying Abubakar a bribe.

Fourth, the indictment alleges that defendant solicited and received bribes from businessman George Knost and from Arkel International, Inc., Arkel Sugar, Inc., and Arkel Oil and Gas, Inc. In return for the bribes, defendant allegedly performed various official acts, including meeting with officials of the Ex-Im Bank to promote an Arkel Sugar project in Nigeria and meeting with Nigerian government officials to promote the interests of Arkel Oil and Gas.

Fifth, the indictment alleges that defendant solicited and received bribes from businessman

---

[1] The Ex-Im Bank is an agency established by Congress "to assist in financing the export of U.S. goods and services to international markets." *About Ex-Im*, http://www.exim.gov/about/mission.cfm (last visited Feb. 8, 2008).

John Melton and from TDC Energy Overseas, Inc. (TDC). In return for these bribes, defendant allegedly performed various official acts, including meeting with Nigerian government officials to promote TDC's interests in Nigeria and meeting with officials of the United States Trade Development Agency (USTDA)[2] to encourage the USTDA to grant TDC financial assistance for TDC's Nigerian oil field project.

Sixth, the indictment alleges that defendant, through an intermediary, lobbyist James Creaghan, solicited bribes from businesswoman Noreen Wilson in return for which defendant used his office to assist in resolving a dispute over oil exploration rights in the waters off Sao Tome and Principe. It is alleged that defendant received payments from Wilson, via Creaghan, either directly or through a nominee company.

Seventh, the indictment alleges that defendant solicited and received bribes from Life Energy Technology Holdings (LETH), a Delaware corporation engaged in the business of manufacturing and distributing energy-related technology. In return for these bribes, it is alleged that defendant traveled in his official capacity to Nigeria, Equatorial Guinea, Cameroon, and Sao Tome and Principe and met with government officials in those countries to promote LETH's technology to those government officials.

Based on these alleged facts, the indictment charges defendant with sixteen counts of wrongdoing: conspiracy to solicit bribes, deprive citizens of honest services by wire fraud, and violate the Foreign Corrupt Practices Act (Counts 1 & 2); solicitation of bribes by a public official

[2] The USTDA was established by Congress to promote private sector development projects in foreign nations. *See About USTDA*, http://www.ustda.gov/about (last visited Feb. 8, 2008).

(Counts 3 & 4); deprivation of honest services by wire fraud (Counts 5-10); violation of the Foreign Corrupt Practices Act (Count 11); money laundering (Counts 12-14); obstruction of justice (Count 15); and racketeering (Count 16).

Defendant has filed a number of pretrial motions challenging various aspects of the indictment and the prosecution.[3] Among these motions is defendant's motion for review of materials presented to the grand jury and to dismiss the indictment based on defendant's belief that the grand jury returned the indictment in reliance on materials privileged by the Speech or Debate Clause. Defendant believes that the grand jury testimony of his congressional aides would have impermissibly included Speech or Debate Clause materials. In response, the government filed a pleading representing that no Speech or Debate material had been presented to the grand jury. In support of this representation, the government specifically stated that Brett Pfeffer, a former member of defendant's congressional staff who entered into a plea agreement with the United States in return for his cooperation in this prosecution, did not testify before the grand jury. The government also specifically represented that recordings of conversations between Pfeffer and Mody were not presented to the grand jury. Additionally, the government allowed defense counsel to review, in the

---

[3] These motions include (i) a motion to dismiss conspiracy Counts 1 & 2, which was denied, *United States v. Jefferson*, 1:07cr209 (E.D. Va. Nov. 30, 2007) (Order); (ii) a motion to dismiss bribery Counts 3 & 4, which remains under advisement; (iii) a motion to dismiss wire fraud Counts 5-10, which remains under advisement; (iv) a motion to dismiss RICO Count 16, which remains under advisement; (v) a motion to dismiss Counts 2, 3, 10, and 12-14 for lack of venue, which was denied, *United States v. Jefferson*, 1:07cr209 (E.D. Va. Nov. 30, 2007) (Order); (vi) a motion to strike surplusage from the indictment, which was denied, *United States v. Jefferson*, 1:07cr209 (E.D. Va. Nov. 30, 2007) (Order); and (vii) motions to suppress evidence seized from defendant's New Orleans residence and Congressional office and to suppress statements made to FBI agents prior to the search of the residence, which remain under advisement.

offices of the United States Attorney, the grand jury testimony transcripts of seven former and current members of defendant's congressional staff. The government did so in an attempt to allay defendant's concerns that Speech or Debate Clause material was presented to the grand jury for purposes of obtaining an indictment.

Following review of these transcripts, defendant filed a reply memorandum identifying three specific excerpts of the grand jury transcripts made available by the government which, in defendant's view, contain Speech or Debate material. The government filed a sur-reply memorandum arguing that the passages in the grand jury testimony identified by defendant did not reflect an infringement of the Speech or Debate Clause. And finally, defendant had the last word in this regard by filing yet another memorandum disputing the government's position.

Oral argument on this matter was heard on November 30, 2007. To begin with, defendant's request for disclosure of the grand jury record to defense counsel was denied by a bench ruling. Although courts are authorized to disclose grand jury matters to a "defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury,"[4] no such ground was shown here. The indictment's allegations neither reflect nor implicate Speech or Debate matters; to the contrary, the indictment alleges and describes criminal conduct that falls well outside the Speech or Debate Clause protection.

Defendant's request for an *in camera* review warranted denial for the same reasons. Courts have sensibly concluded that *in camera* inspection of grand jury matters is required only on a showing that there is a reason to believe Speech or Debate materials were presented to the grand

[4] Rule 6(e)(3)(E)(ii), Fed. R. Crim. P.

jury.[5] There has been no such showing here. Yet because the Speech or Debate Clause protection afforded legislators is so important, and out of an abundance of caution, the government was directed to submit the grand jury record for *in camera* review.

The materials the government submitted for *in camera* review consist of a substantial number of witness testimony transcripts and document exhibits.[6] The government has confirmed that the materials submitted constitute the entire grand jury record that led to the issuance of the indictment in this matter.[7] Following completion of the *in camera* review, a bench ruling and Order issued denying defendant's motion to dismiss.[8] This Memorandum Opinion records the reasons for the ruling, first elucidating the nature and scope of the Speech or Debate Clause immunity, as this served as the lens through which the *in camera* inspection proceeded, and then stating the conclusions of the *in camera* review and addressing defendant's specific arguments.

**II.**

The Constitution's Speech or Debate Clause has a distinguished pedigree, and the principle

---

[5] *United States v. Rostenkowski*, 59 F.3d 1291, 1313 (D.C. Cir. 1995) (*In camera* review of grand jury materials required only on Member of Congress's showing that there is reason to believe Speech or Debate materials were presented to grand jury); *United States v. Kolter*, 71 F.3d 425, 429-30 (D.C. Cir. 1995) (same).

[6] Rule 6, Fed. R. Crim. P. precludes a more detailed description of the record, including the number of witness transcripts and the number and nature of the exhibits.

[7] The only exception, as the government has acknowledged, is the Assistant United States Attorney's instructions and arguments to the grand jury, which were not transcribed and are not available.

[8] *United States v. Jefferson*, 1:07cr209 (E.D. Va. Feb. 6, 2008) (Order).

it embodies has roots that long predate the Constitution.[9] It states, with elegant simplicity, that:

> "[F]or any Speech or Debate in either House, [Members of Congress] shall not be questioned in any other Place."[10]

By its plain terms, the Clause confers absolute immunity on Members of Congress for their legislative activities. The importance of this immunity is manifest. As Justice Joseph Story recognized in his famous *Commentaries on the Constitution*, this is a "great and vital privilege . . . without which all other [congressional] privileges would be comparatively unimportant, or ineffectual."[11] Similarly, the Supreme Court later noted that the purpose of the Speech or Debate Clause, and of similar clauses that then appeared in every state's constitution, is "to support the rights of the people, by enabling their representatives to execute the functions of their office without fear of prosecutions, civil or criminal."[12] In this respect, the Speech or Debate Clause immunity for

---

[9] For instance, the English Bill of Rights, a product of the sixteenth and seventeenth century struggles between crown and parliament, explicitly provided "[t]hat the freedom of speech, and debates or proceedings in parliament, ought not to be impeached or questioned in any court or place out of parliament." 1 W. & M., 2d Sess., c. 2, 16 Dec. 1689. A century later the same guarantee was incorporated in the Articles of Confederation, which guaranteed that "[f]reedom of speech and debate in Congress shall not be impeached or questioned in any Court, or place out of Congress." Articles of Confederation, Art. 5.

For other pre-constitutional applications of the Speech or Debate privilege, see *Holiday v. Pitt*, 93 Eng. Rep. 984 (K.B. 1734) (legislative privilege required release of Member of Parliament arrested two days after dissolution of Parliament); 1 William Blackstone, *Commentaries* 159-61.

[10] U.S. Const. Art. I, § 6, cl. 1.

[11] Joseph Story, 2 *Commentaries on the Constitution* § 863 (1833).

[12] *Kilbourn v. Thompson*, 103 U.S. 168, 203 (1880) (quoting *Coffin v. Coffin*, 4 Mass. 1 (1808)). The Supreme Court would later make the same point in slightly different terms, saying that the purpose of the Speech or Debate Clause is "to insure that the legislative function the Constitution allocates to Congress may be performed independently" by "insuring the independence of individual legislators." *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502 (1975) (citations

Members of Congress is akin to the judicial independence conferred by the Constitution on the federal judiciary by way of life tenure.[13] It is also worth nothing that the Speech or Debate Clause protects Members of Congress "not only from the consequences of litigation's results but also from the burden of defending themselves" regarding their legislative activities.[14] And because the Clause creates an absolute immunity from suit, the denial of a motion to dismiss an indictment on Speech or Debate Clause grounds may be appealed immediately lest the Member of Congress be forced to defend himself or herself against unconstitutional charges.[15]

For the task at hand, it is, of course, necessary to define the scope of the immunity conferred on Members of Congress by the Speech or Debate Clause. In this regard the Supreme Court, acknowledging the importance of the immunity conferred on Members, has stated that the Clause must be interpreted "broadly to effectuate its purpose."[16] In other words, the boundaries of the

---

omitted).

[13] Similarly, and more directly analogous to Speech or Debate immunity, the Supreme Court has long recognized judges' official immunity from suit for judicial acts. *See Bradley v. Fisher*, 80 U.S. 335, 351-52 (1871); *see also Pierson v. Ray*, 386 U.S. 547, 553-54 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine [in *Bradley*].").

[14] *Dombrowski v. Eastland*, 387 U.S. 82, 84-85 (1967) (affirming dismissal of civil complaint against senator based on his activities as chairman of a Senate subcommittee); *see also United States v. Dowdy*, 479 F.2d 213, 221 (4th Cir. 1973) (reversing in part former congressman's conviction based on his activities as chairman of House subcommittee).

[15] *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979) (challenge to validity of indictment on Speech or Debate Clause grounds properly brought by direct interlocutory appeal rather than writ of mandamus following conviction).

[16] *United States v. Johnson*, 383 U.S. 169, 180 (1966) (affirming reversal of former congressman's conviction based on substance of, and motivation for, speech in the House of

immunity conferred by the Clause are defined and limited by the purpose of the Clause. The grant of immunity extends only so far as may be necessary to effectuate the purpose the Clause is intended to serve. This purpose is well-defined: it is to ensure that Members of Congress are able to perform their legislative functions unburdened by fear of civil suit or criminal arrest and prosecution.[17] Accordingly, the privilege applies only to those activities integral to a Member's legislative function,[18] *i.e.* activities that are integral to the Member's participation in the drafting, consideration, debate, and passage or defeat of legislation.[19] And because the scope of the Speech or Debate Clause is limited to legislative activities, it follows that the privilege does not extend to a Member's non-legislative actions. The Supreme Court has explicitly recognized this point, noting:

> [T]he Clause has not been extended beyond the legislative sphere. That [Members of Congress] generally perform certain acts in their official capacity as [Members of Congress] does not necessarily make all such acts legislative in nature. Members of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies . . . but such conduct, though generally done, is not protected legislative activity.[20]

Because the Clause's protection does not extend beyond the legislative sphere, it follows that the

---

Representatives).

[17] *See Kilbourn,* 103 U.S. at 204; *Eastland*, 421 U.S. at 502.

[18] *See Kilbourn*, 103 U.S. 204 (Speech or Debate Clause applies "to things generally done in a session of the House by one of its members in relation to the business before it."); *see also United States v. Brewster*, 408 U.S. 501, 513-514 (1972) (holding that Speech or Debate Clause protects "acts generally done in the course of the process of enacting legislation" and reversing dismissal of bribery indictment where conviction would not require inquiry into legislative acts).

[19] *United States v. Gravel*, 408 U.S. 606, 625 (1972) (vacating protective order limiting questioning of senator's aide regarding publication of classified information).

[20] *Id.* at 624-25.

Clause does not confer immunity on a Member for the Member's criminal conduct, including conspiracy, solicitation of bribes, wire fraud, violations of the Foreign Corrupt Practices Act, money laundering, obstruction of justice, or racketeering. Of course it is well settled that the government may not introduce evidence of a Member's legislative acts to prove an element of a criminal charge.[21] But the government may rely on acts "casually or incidentally related to legislative affairs but not part of the legislative process itself."[22] Put simply, the Speech or Debate Clause is not a license to commit crime.

The *in camera* review of the grand jury material submitted by the government was conducted with these principles in mind, that is, with an eye toward detecting whether activities integral to defendant's participation in the consideration and passage of legislation played a role in obtaining the indictment.

**III.**

The grand jury record leading to defendant's indictment, reviewed through the lens of the principles stated in Part II, discloses no infringement of the Speech or Debate Clause in the issuance of the indictment. This conclusion is reflected in the indictment itself, as the schemes and facts alleged therein — meeting with American and foreign government officials to promote private business ventures in return for bribes, performing official travel to promote private business ventures in return for bribes, and making use of his congressional staff to promote private business ventures

---

[21] *Johnson*, 383 U.S. at184-85 ("[A] prosecution under a general criminal statute dependant on such inquiries [into legislative acts and their motivation] necessarily contravenes the Speech or Debate Clause"); *Dowdy*, 479 F.2d at 221 (same).

[22] *Brewster*, 408 U.S. at 528.

in return for bribes — do not concern defendant's involvement in the consideration and passage or rejection of legislation.[23] Not surprisingly, the grand jury record reviewed focuses sharply on these allegedly criminal non-legislative activities.

To be sure, the grand jury materials submitted for review do contain references to defendant's status as a congressman and as a member of various congressional committees.[24] Yet mere reference in the indictment to defendant's status as a Member of Congress does not offend the Speech or Debate Clause provided, of course, that neither the indictment nor the prosecution entails inquiry into defendant's participation in the consideration and passage of legislation. Settled authority confirms this point. The Third Circuit addressed this precise point in *United States v. McDade*.[25] Writing for that court, Justice Alito — then Judge Alito — wrote that "the Speech or Debate Clause not require dismissal of any count of the indictment simply because it refers to the defendant's status as a member or ranking member of [a] congressional committee[]."[26] Although *McDade* addresses a reference to a Member of Congress's status in an indictment, it follows for the same reasons that mere reference to status in grand jury proceedings also does not offend the Clause.

Defendant has identified three excerpts of grand jury testimony, contained in the transcripts

---

[23] In fact, the Supreme Court has specifically identified contact with executive branch officials as activity within the official capacity of a Member of Congress that does not qualify for Speech or Debate protection. *Gravel*, 408 U.S. at 624-625.

[24] For instance, among the exhibits made available to the grand jury was a biography of defendant printed from his congressional website.

[25] *United States v. McDade*, 28 F.3d 283 (3d Cir. 1994) (affirming denial of congressman's motion to dismiss indictment which referred to congressman's status as a member of congressional committees).

[26] *McDade*, 28 F.3d at 291.

made available by the government for defense counsel's review, that defendant argues contain Speech or Debate material. First, defendant cites the following exchange between the Assistant United States Attorney and Stephanie Butler, a member of defendant's staff:

> Q. The congressman, through his activities in Congress, has a special knowledge of West Africa, you know, countries in Subsaharan Africa, Gulf of Guinea area. Are you familiar with work he's done on behalf of companies trying to do business in Africa?
>
> A. Not too much, no.

Once again, settled authority makes clear that the Assistant United States Attorney's reference to defendant's "activities in Congress" does not violate the Speech or Debate Clause where, as here, it is simply part of a more general inquiry into matters that are incidentally related to a congressman's legislative activities. The *Brewster* Court stated in unequivocal terms that "[t]he only reasonable reading of the [Speech or Debate] Clause . . . is that it does not prohibit inquiry into activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself."[27] Nothing in the question or the witness's answer required the grand jury to inquire into defendant's involvement in the consideration and passage or rejection of any legislation. To the contrary, the Assistant United States Attorney's inquiry simply relates to defendant's influence and status, matters only incidentally related to defendant's past legislative activities that may be relevant to the motivation some persons might have to bribe defendant, as alleged in the indictment. In summary, the Assistant United States Attorney's reference to defendant's activities in Congress does not violate the Speech or Debate Clause here because defendant is not being questioned in this

[27] *Brewster*, 408 U.S. at 528.

proceeding about his legislative activities in Congress.

Second, defendant cites an exchange between the Assistant United States Attorney and Melvin Spence, a former member of defendant's congressional staff:

Q. Was Congressman Jefferson seen as a leader in a particular area of trade by constituents, as far as you know?

A. Africa would be the closest thing. Like AGOA, the Africa Growth and Opportunity Act, which is a preferential trade bill.

Defendant argues that Spence's reference to the AGOA, upon which defendant deliberated and voted as a Member of Congress, violates the Speech or Debate Clause. This argument fails for essentially the same reasons as did the previous argument. Significantly, Spence's reference to the AGOA was not a reference to defendant's involvement in the consideration and passage of the Act. Instead, the reference was to another aspect of defendant's status and experience that might induce persons to offer him bribes in return for official acts. Put simply, defendant is not being made to answer for his involvement in the consideration and passage or rejection of any piece of legislation.

Defendant argues that because his expertise related to the AGOA was derived from his legislative acts, reference to the expertise violates the Speech or Debate Clause. This argument eviscerates the carefully drawn distinction between legislative acts and matters only incidentally related to legislative affairs.[28] All of a Member's expertise, influence, and even status derive, ultimately, from his or her legislative acts, and of course a Member's status and influence as a Member of Congress are precisely the incentive and reason a person may seek to offer him bribes. As the government has correctly pointed out, defendant's argument, if accepted, would effectively

[28] *Id.*

immunize a Member of Congress from all scrutiny regarding any activity conducted during his or her term of office. Speech or Debate immunity does not apply so broadly.[29]

Third, defendant cites the testimony of Lionel Collins regarding a 1997 trip by defendant to Nigeria. In response to a question regarding defendant's relationships with Nigerian government officials, Collins gave a long discursive answer, apparently attempting to trace the roots of whatever relationships he believed defendant did have. In the course of his answer Collins made reference to defendant's participation in "moving the legislation [namely AGOA] through the Congress" which resulted in relationships with "African leaders." Defendant argues that this reference to his role in passing the AGOA violates the Speech or Debate Clause. While a Member's role in passing legislation is the sort of legislative activity protected by the Clause, the reference cited here is no infringement of the Clause. Collins's reference to defendant's role in securing passage of the AGOA is neither material nor relevant to the criminal conduct alleged in the indictment. Put differently, defendant is not being questioned in this proceeding about his vote or role in the AGOA legislation. Moreover, settled precedent holds that a reference to privileged activity does not render an indictment — or grand jury proceeding — constitutionally infirm, provided there are independent, non-privileged grounds sustaining the charges in the indictment.[30] Moreover, Collins's statement was unprompted; it did not result from an inquiry into defendant's legislative activities, and it did

---

[29] *See Gravel*, 408 U.S. at 624-625 (Speech or Debate Clause does not apply to Congressman's non-legislative official acts); *Brewster*, 408 U.S. at 528 (Speech or Debate Clause does not prohibit inquiry into matters "not a part of the legislative process itself.").

[30] *See McDade*, 28 F.3d at 300 ("Even if we were to hold, however, that both of the overt acts in question are invalid [under the Speech or Debate Clause], no charge in the indictment would have to be dismissed. Both counts . . . allege numerous other overt acts, and an indictment under [the operative statute] need only allege one overt act.").

not result in any further inquiry into legislative activities by the Assistant United States Attorney or the grand jury.[31]

In summary, the *in camera* review revealed no material integral to defendant's consideration or vote upon any piece of legislation. Neither the references to defendant's status in the grand jury materials nor the passages cited by defendant from the transcripts made available to defense counsel constitute an infringement of the Speech or Debate Clause that would require dismissal of the indictment. Accordingly, defendant's motion for review of grand jury material and to dismiss the indictment insofar as it is based on Speech or Debate material must be denied.

An appropriate order has issued.

/s/
T.S. Ellis, III
United States District Judge

Alexandria, Virginia
February 13, 2008

[31] *See Brewster*, 408 U.S. at 526. ("The question is whether it is necessary to inquire into how [Member] spoke, how he debated, how he voted, or anything he did in the chamber or in committee in order to make out a violation of this statute.").