**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Case No. 1:07cr209** |
| | ) | |
| WILLIAM J. JEFFERSON | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The government, in a sixteen-count indictment (the "Indictment"), charges defendant William

J. Jefferson, a sitting member of the United States House of Representatives, with a variety of crimes

including conspiracy, wire fraud, violating the Foreign Corrupt Practices Act, money laundering,

obstructing justice, racketeering, and soliciting bribes.  Defendant has moved to dismiss the

Indictment's bribery counts, Counts 3 and 4, on the ground that these counts fail to allege facts

establishing a necessary element of bribery in violation of 18 U.S.C. § 201 (1994).  Specifically,

defendant argues that the Indictment does not identify any "official act" performed by defendant in

return for any thing of value.  Defendant also seeks dismissal, derivatively, of Counts 1 and 2

(conspiracy), 5-10 (wire fraud), 12-14 (money laundering), and 16 (racketeering), to the extent that

those counts are predicated on the bribery violations alleged in Counts 3 and 4.

For the reasons that follow, the Indictment's bribery allegations are sufficient and defendant's

motion must be denied.

## I.

Defendant is the currently sitting member of the United States House of Representatives

1

representing Louisiana's 2nd Congressional District, an office he has held since 1991. The Indictment alleges that beginning in or about January 2001, defendant used his office to advance the business interests of various individuals and corporations in return for money and other things of value paid either directly to defendant or via 'nominee companies,' i.e., companies ostensibly controlled by one of defendant's family members, but in fact controlled by defendant himself. The specific schemes alleged in the Indictment are described in greater detail in an earlier Memorandum Opinion. *United States v. Jefferson*, 534 F.Supp.2d 645 (E.D. Va. 2008). At issue here are the two bribery schemes alleged in Counts 3 and 4.

Count 3 alleges that defendant solicited bribes from Vernon Jackson, president of iGate, Incorporated (iGate), a Louisville, Kentucky-based telecommunications firm, to promote iGate's telecommunications technology in certain African countries. Specifically, the Indictment alleges that in or about January 2001, defendant informed Jackson that defendant would use his congressional office to promote iGate's business interests only if Jackson agreed to make payments to ANJ Group, L.L.C. (ANJ), a Louisiana company controlled and managed by defendant's spouse, Andrea Jefferson. Defendant allegedly prepared a "professional services agreement" that provided for payments from iGate to ANJ in the form of (i) monthly $7,500.00 payments, (ii) a percentage of iGate's income, and (iii) stock options. In return for these payments, defendant allegedly advanced iGate's business interests by, *inter alia*, corresponding and meeting with Nigerian, Ghanian and American government officials (including an unnamed Member of Congress who at the time sat on the House Subcommittee on Telecommunications, Trade, and Consumer Protection) all for the purpose of persuading these persons to take steps to support iGate's business ventures in Africa.

2

Count 4 alleges that defendant solicited bribes from Lori Mody, an Alexandria, Virginia-based businesswoman, to promote the business interests in Africa of Mody's African companies IBBS and W2-IBBS.  Specifically, the Indictment alleges that defendant introduced Mody to Jackson as a potential investor in iGate's telecommunications technology.  After Mody and Jackson entered into an investment agreement, defendant allegedly requested payments from Mody, in the form of (i) fees, (ii) shares in W2-IBBS, and (iii) monthly payments to defendant's family members.  In return for these payments, defendant allegedly advanced Mody's business interests by, *inter alia*, corresponding and meeting with Nigerian, Ghanian, and American government officials to persuade them to take steps in support of Mody's business ventures.

At issue here is the legal sufficiency of these bribery counts.  Defendant contends that the counts must be dismissed because they fail to allege any "official acts," an essential element of a bribery charge.  The government contends that the counts are sufficient.  The matter has been fully briefed and argued and is now ripe for disposition.

## II.

An indictment is legally sufficient if (i) it contains the elements of the offense charged and informs the defendant of the charges he must meet, and (ii) it identifies the offense conduct with sufficient specificity to allow the defendant to plead double jeopardy should there be a later prosecution based on the same facts.  *Russell v. United States*, 369 U.S. 749, 763-64 (1962).  The second prong of this sufficiency inquiry is not in issue here; there is no dispute that the Indictment is "a plain, concise, and definite written statement of the essential facts constituting the offense charged" as required by Rule 7(c)(1),  Fed. R. Crim. P.  Nor is there any dispute that the Indictment

3

identifies the offense conduct with ample specificity.  What is sharply disputed is the first prong of

the legal sufficiency inquiry, namely whether the facts alleged satisfy each of the requisite statutory

elements of a bribery offense.

Analysis of this question properly begins with an examination of the statutory language that

defines the charged violation.  Counts 3 and 4 charge defendant with bribery, in violation of 18

U.S.C. § 201(b)(2)(A), which states, in pertinent part:

> "Whoever, being a public official or person selected to be a public official, directly
> or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or
> accept anything of value personally or for any other person or entity, in return for
> being influenced in the performance of any official act [shall be guilty of an
> offense]."

An indictment charging bribery must therefore allege each of the following elements: (i) that the

defendant is a public official, and (ii) that defendant corruptly demanded, sought, received, accepted,

or agreed to receive or accept (iii) anything of value (iv) in return for being influenced in the

performance of (v) an official act.

The parties do not dispute that the Indictment's allegations are legally sufficient as to the first

four offense elements.  Thus, the Indictment alleges that defendant (i) is a public official — a

Member of Congress — (ii) who corruptly demanded, sought, received, accepted, or agreed to

receive or accept (iii) things of value — money and company stock — (iv) in return for being

influenced in the performance of certain acts to promote or advance the business of iGate (Count 3)

and of IBBS and W2-IBBS (Count 4) in Nigeria and Ghana.  The focus of the parties' dispute over

the Indictment's legal sufficiency is whether the acts defendant allegedly performed in return for

things of value constitute "official acts" under the statute.  More precisely, the question presented is

4

whether (i) official travel to Nigeria and Ghana, (ii) correspondence and meetings with foreign government officials, (iii) correspondence and meetings with American government officials, and (iv) use of congressional staff, all to advance iGate's, IBBS's, and W2-IBBS's business ventures in Africa, are "official acts" under § 201.  In defendant's view, none of these acts is an "official act" within the meaning of the bribery statute.  Instead, defendant argues that they are merely routine, legal uses of defendant's influence to promote private business ventures.  At issue, therefore, is the scope of the statutory definition of "official act."  For the reasons that follow, the Indictment's allegations of the "official act" element of a bribery offense are adequate at this stage of the prosecution.

## III.

The bribery statute defines an "official act" as

> "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit."

18 U.S.C. § 201(a)(3).  Judicial elucidation of the bribery statute has established the following principles.  First, the Supreme Court has cautioned that "a statute in this field that can linguistically be interpreted to be either a meat axe or a scalpel should reasonably be taken to be the latter."[1]  The meaning of this caution is plain: Courts are not authorized to construe the bribery statute to sweep within its ambit all manner of seemingly venal or corrupt conduct by public officials.  Rather, courts must confine the scope or reach of the statute as required by the reasonable meaning of the statutory

---

[1] *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 412 (1999).

5

language.  In other words, where the statutory language is capable of either broad or narrow application, courts must apply that language with the precision of the scalpel, not the blunt force of the meat axe.

This cautionary rule is particularly important with regard to "official acts," for without it the definition of "official acts" might be extended to apply to any action taken by a public official acting in his official capacity.  To avoid such a broad interpretation, courts have held that an act must satisfy two criteria to qualify as an "official act" under § 201.  First, the act must be among the official duties or among the settled customary duties or practices of the official charged with bribery.[2]  And second, performance of the act must involve or affect a government decision or action.[3]  These two criteria merit further elaboration.

With regard to the first criterion, it is settled that the category of official acts is not limited to acts performed pursuant to responsibilities explicitly assigned by law.  Instead, the Supreme Court has made clear that "[i]n numerous instances, duties not completely defined by written rules are clearly established by settled practice, and action taken in the course of their performance must be regarded as within the provisions of the above-mentioned statutes against bribery."[4]  In other words, an official may violate § 201 even if the acts he performs in return for things of value are not among his statutorily prescribed duties, but are instead among those duties of the office established by

---

[2] *United States v. Birdsall*,  233 U.S. 223, 230 (1914) ("Every action that is within the range of official duty comes within the purview of these sections.").

[3] *Valdes v. United States*, 475 F.3d 1319, 1324 (D.C. Cir. 2007) (bribery statute applies to "questions or matters whose answer or disposition is determined by the government").

[4] *Birdsall*, 233 U.S. at 230-31.

settled practice.

The Second Circuit addressed this point in *United States v. Biaggi*, 853 F.2d 89 (2d Cir. 1988). There, Biaggi, a congressman from New York, was convicted of receiving gratuities[5] in return for various official acts — namely, lobbying municipal and federal officials, including a senator and the Secretary of the Navy, in person, over the phone, and by written correspondence on official letterhead. Biaggi argued that these acts were not "official acts" within the meaning of the statute. The Second Circuit rejected Biaggi's argument, concluding that § 201 "encompass[ed] all of the acts *normally thought to constitute a congressman's legitimate use of his office*." *Biaggi*, 853 F.2d at 97 (emphasis added).[6] It follows that an indictment under § 201 is sufficient if the acts alleged to have been undertaken in return for the bribe are among the defendant's official duties or among the settled customary duties or practices of his office.

The second criterion — that the alleged official act must involve or affect a government decision or action — further limits the applicability of § 201. Instructive in this regard is the D.C. Circuit's decision in *Valdes v. United States*, 475 F.3d 1319 (D.C. Cir. 2007). There, the court reversed the conviction of a police officer charged with taking bribes in return for providing information that he retrieved from several police databases.[7] Noting that § 201 defines "official acts"

[5] The bribery statute, 18 U.S.C. § 201(b), and the gratuity statute, 18 U.S.C. § 201(c), both incorporate the definition of "official acts" contained in § 201(a)(3).

[6] *Cf. United States v. Brewster*, 408 U.S. 501, 524 (1972) (rejecting a Speech or Debate Clause challenge to the prosecution of a congressman for bribery and noting that "[w]e would be closing our eyes to the realities of the American political system if we failed to acknowledge that many non-legislative activities are an established and accepted part of the role of a Member, and are indeed 'related' to the legislative process").

[7] *Valdes*, 475 F.3d at 1320-22.

as acts involving "question[s], matter[s], cause[s], suit[s], proceeding[s] or controvers[ies], which may at any time be pending, or which may by law be brought before any public official," the D.C. Circuit explained that this "six-term series refers to a class of questions or matters whose answer or disposition is determined by the government."[8]  The court concluded that Valdes's searches of police databases would only constitute official acts if they were related to or resulted in a formal police investigation.[9]  The *Valdes* court also explicitly recognized that its holding was consistent with the *Biaggi* decision, which — unlike *Valdes* — involved "inappropriate influence [by the defendant] on decisions that the government actually makes."[10]

Together, *Biaggi* and *Valdes* elucidate the second criterion of a § 201 "official act": it must involve or affect a government decision or action.  Importantly, § 201 does not require proof that such a government decision or action was actually taken, for "[t]he illegal conduct is taking or agreeing to take money for a promise to act in a certain way[;] acceptance of the bribe is the violation of the statute, not performance of the illegal promise."[11]  In other words, an official violates § 201 when he receives things of value in return for being influenced in the performance of duties involving government decisions, *whether or not* his performance of those duties actually achieves the desired effect on those government decisions.

In summary, an "official act" under § 201 is an act performed by an official in his or her

---

[8] *Id.* at 1324.

[9] *Id.* at 1326.

[10] *Id.* at 1325.

[11] *Brewster*, 408 U.S. at 526.

8

official capacity that (i) involves the performance of an official duty or settled customary duty or practice and (ii) involves or affects a government decision or action.  These principles, applied here, compel the conclusion that the Indictment has sufficiently alleged the elements of a § 201 offense. Counts 3 and 4 allege four specific types of activity conducted by defendant that, the government alleges, constitute official acts under § 201: (i) official travel to Nigeria, Ghana, and elsewhere; (ii) official correspondence and meetings with Nigerian and Ghanian government officials; (iii) official correspondence and meetings with United States government officials; and (iv) use of Congressional staff to facilitate the other alleged activities.  The government will bear the burden of proving at trial that each of these acts (i) involves the performance of a Member of Congress's official duty or settled customary duty or practice and (ii) involves or affects a government decision or action.

Whether or not the government is able to prove each of these elements with regard to each of the alleged acts in Counts 3 and 4 is a question properly addressed at trial, not on a motion to dismiss the Indictment.[12]  But if the government is able to prove, for instance, that (i) lobbying government agencies such as the Export-Import Bank of the United States (Ex-Im Bank)[13] on behalf of constituents is among the settled customary duties or practices of a Member of Congress, and that

---

[12] *See Costello v. United States*, 350 U.S. 359, 363-64 (1956) (defendant may not challenge indictment on the ground that it is not supported by sufficient evidence); *United States v. DeLaurentis*, 230 F.3d 659, 660-61 (3d Cir. 2000) (dismissal of indictment "may not be predicated upon the insufficiency of the evidence to prove the indictment's charges"); *United States v. Alfonso*, 143 F.3d 772, 776-77 (2d Cir. 1998) ("Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial to satisfy the jurisdictional element of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment.").

[13] The Export-Import Bank of the United States is an agency established by Congress "to assist in financing the export of U.S. goods and services to international markets."  *About Ex-Im*, http://www.exim.gov/about/mission.cfm (Last visited January 23, 2008).

(ii) the Ex-Im Bank's decision to award financial support to American companies is a government

decision, then the government will have proved the necessary elements of an official act under § 201.

## IV.

Defendant raises a number of arguments in support of his motion to dismiss the Indictment.

He first argues that none of the acts alleged in Counts 3 and 4 are "official acts" because none

involved a decision that defendant himself was empowered to make.  But § 201 applies when an

official may influence *any* government decision through the performance of his duties; the official

charged under §201 need not be the official empowered to make the decision at issue.[14]  As long as

the government is able to prove that the acts alleged in Counts 3 and 4 involved the performance of

defendant's official duties or his settled customary duties or practices and involved or affected a

government decision, those acts will satisfy the statutory definition of "official act" under § 201 even

though defendant may not have had authority to make the ultimate decision himself.[15]

---

[14] *See* 18 U.S.C. § 201(a)(3) (defining "official act" as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before *any* public official, in such official's official capacity, or in such official's place of trust or profit") (emphasis added); *see also Valdes*, 475 F.3d at 1325 (concluding that § 201 applies to "those questions, matters, causes, suits, proceedings, and controversies that are decided by *the government*") (emphasis added).  The *Valdes* court specifically noted that its conclusion was consistent with the Second Circuit's decision in *Biaggi*, which applied § 201 to a congressman's use of his office "to secure Navy contracts for a ship repair firm" — a decision squarely within the decision-making authority of the Navy, not the congressman.  *Id.*; *see also Biaggi*, 853 F.2d at 92-94.

[15] The issue is well illustrated by the following hypothetical: a Member of Congress accepts money to contact the Department of Homeland Security on behalf of a constituent and attempts to influence the Department to expedite the immigration application of the constituent's family-member.  Under defendant's theory, this would not violate § 201 because the Member of Congress lacks actual authority to grant or deny the immigration application.  This is incorrect, for "[i]t is the corruption of official decisions through the misuse of influence in governmental decision-making which the bribery statute makes criminal."  *United States v. Muntain*, 610 F.2d 964, 968 (D.C. Cir.

Defendant next argues that the conclusion reached here is foreclosed by the Supreme Court's decision in *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 412 (1999). That case stands primarily for the proposition that the bribery statute is not implicated by all actions taken in an official capacity, but instead requires a *quid pro quo* — "a specific intent to give or receive something of value *in exchange* for an official act."[16]  The conclusion reached here is consistent with *Sun-Diamond*: § 201 does not apply to all actions taken in an official capacity, but rather only those actions whereby an official performs an official duty or a settled customary duty or practice in a manner involving or affecting a government decision or action. Under *Sun-Diamond*, the bribe is the *quid*, and the performance of the duty or practice in a manner involving or affecting a government decision or action is the *quo*.

Next, defendant argues that the actions alleged in Counts 3 and 4 are similar to those acts identified in *Sun-Diamond* that "while [] assuredly 'official acts' in some sense [] are not 'official acts' within the meaning of the statute."[17]  For example, the *Sun-Diamond* Court cited the presidential tradition of welcoming champion sports teams to the White House — an event that invariably involves the presentation of a sports jersey to the president. Defendant suggests that the use of influence gained by virtue of his office is essentially similar in that it relates to his office, but is not an official act under § 201. This argument fails for three reasons. First, the acts identified in the *Sun-Diamond* dicta lack the necessary *quid pro quo*; the president does not welcome a sports

---

1979) (reversing Department of Housing and Urban Development official's § 201 conviction insofar as it was based on the appearance of impropriety created by the official's purely private actions).

[16] *Sun-Diamond*, 526 U.S. at 404-06 (emphasis in original).

[17] *Id.* at 407.

11

team to the White House *in return for* a sports jersey.  By contrast, the indictment alleges that defendant performed various acts in return for significant bribes.  Second, the allegations in the Indictment go far beyond the *de minimis* actions discussed in *Sun-Diamond*.  Defendant is alleged to have received millions of dollars in cash and corporate shares, not baseball caps and sports jerseys, in return for various acts.  And third, the acts recited in Counts 3 and 4 are alleged to involve the performance of official duties or settled customary duties or practices, not the performance of acts merely incidentally related to defendant's office.  Whether or not the alleged acts in fact involved the performance of official duties or settled customary duties or practices is a question to be resolved at trial on the basis of the evidence presented.

In sum, the Indictment alleges that in return for bribes defendant (i) traveled to foreign countries, (ii) corresponded with and met with foreign government officials to promote the interests of iGate, IBBS, and W2-IBBS; (iii) corresponded with and met with United States government officials to promote the interests of iGate, IBBS, and W2-IBBS; and (iv) used his congressional staff to advance the interests of iGate, IBBS, and W2-IBBS.  The government will bear the burden of proving at trial that these acts are "official acts" under § 201, i.e., that they are among defendant's official or settled customary duties or practices and that they involve or affect a government decision. Dismissal of the Indictment is premature, as the Indictment satisfies the requirements of Rule 7, Fed. R. Crim. P., and accordingly defendant's motion to dismiss must be denied.

An appropriate order will issue.

_____/s/_____

Alexandria, Virginia                                     T.S. Ellis, III
May 23, 2008                                             United States District Judge