IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| WILLIAM J. JEFFERSON, | ) |
| Defendant. | ) |

CRIMINAL No. 1:07cr209

## MEMORANDUM OPINION

A sixteen-count indictment (the "Indictment") charges William J. Jefferson, a former

member of the United States House of Representatives, with a variety of crimes including

bribery, conspiracy, wire fraud, foreign corrupt practices, money laundering, obstruction of

justice, and racketeering.  Among defendant's many pretrial motions is a request, pursuant to

Rule 15(a), Fed. R. Crim. P., for an order permitting the depositions of Jennifer Douglas

Abubakar,[1] Atiku Abubakar, and Suleiman Yahyah—three individuals currently located in the

Federal Republic of Nigeria ("Nigeria") whose testimony he believes will be exculpatory on two

charged crimes: (i) the charge, contained in count 1 of the Indictment, that he conspired to violate

the Foreign Corrupt Practice Act ("FCPA") in violation of 18 U.S.C. § 371; and (ii) the charge,

contained in count 11 of the Indictment, that he violated the FCPA, specifically 15 U.S.C. §

---

[1] Because Jennifer Douglas Abubakar is an American citizen, she is subject to a witness
subpoena pursuant to 28 U.S.C. § 1783 even though she currently resides in a foreign country.
Accordingly, an Order has entered directing issuance of a subpoena requiring her appearance as a
witness at trial. *United States v. Jefferson*, No. 1:07cr209 (E.D. Va. July 17, 2008) (Order).
Although that Order also denied as moot defendant's motion to permit her deposition in Nigeria,
this Memorandum Opinion elucidates that disposition.  Defendant's December 30, 2008, motion
for alternative service of a trial subpoena on Jennifer Douglas Abubakar, and for reconsideration
of his request to take her deposition, was resolved at a hearing on January 15, 2009. *United
States v. Jefferson*, No. 1:07cr209 (E.D. Va. Jan. 15, 2009) (Order).

78dd-2(a). In addition, since Atiku Abubakar and Suleiman Yahyah will not consent to being deposed, either in the United States or in Nigeria, defendant seeks either (i) an order requiring the government to invoke the Mutual Legal Assistance ("MLA") Treaty between the United States and Nigeria to secure the depositions in Nigeria or (ii) the issuance of a letter rogatory to achieve the same result.

For the reasons that follow, defendant's motion may not be granted at this time but must, for a limited period of time, await receipt of responses to a preliminary letter rogatory that will issue to the appropriate judicial authority in Nigeria requesting that Atiku Abubakar and Suleiman Yahyah be examined by written interrogatories regarding, among other things, their willingness to waive their Fifth Amendment rights and be fully deposed.

## I.

Defendant was the sitting member of the United States House of Representatives representing Louisiana's 2nd Congressional District, an office he held from his election in 1991 until his defeat in a bid for reelection in 2008. The Indictment alleges that beginning in or about January 2001, defendant used his office to advance the business interests of various individuals and corporations in return for money and other things of value paid to defendant either directly or via 'nominee companies,' *i.e.*, companies ostensibly controlled by one of the defendant's family members, but in fact controlled by defendant. The specific schemes alleged in the Indictment are described in greater detail in an earlier Memorandum Opinion. *See United States v. Jefferson*, 534 F. Supp. 2d 645 (E.D. Va. 2008).

Of the Indictment's sixteen counts, counts 1 and 11 are particularly pertinent to the instant motion. Count 1 of the Indictment alleges, in material part, that from about April 2005 to

about August 2005 defendant conspired to violate the FCPA by paying bribes to Nigerian foreign officials, including Atiku Abubakar, the then Vice President of Nigeria.[2] More specifically, the Indictment alleges that defendant agreed with Suleiman Yahyah,[3] a Nigerian businessman, and others that bribes would be paid to various Nigerian government officials to ensure the success of a Nigerian joint venture in which defendant had a substantial interest. The Indictment further specifies that defendant was responsible for offering and paying bribes to Atiku Abubakar, while Suleiman Yahyah was responsible for paying bribes to lower ranking Nigerian government officials. The Indictment also alleges that defendant communicated to Jennifer Douglas Abubakar,[4] Atiku Abubakar's wife, his willingness to pay her husband in return for the Vice President's assistance to the Nigerian joint venture. The government has identified Jennifer Douglas Abubakar, Atiku Abubakar, and Suleiman Yahyah as unindicted coconspirators with regard to the conspiracy to violate the FCPA. Additionally, count 11 of the Indictment charges defendant with violating the FCPA based on his alleged bribery of Atiku Abubakar.

Atiku Abubakar has repeatedly denied any involvement in wrongdoing with defendant and has released several public statements to that effect.[5] Suleiman Yahyah has made similar

---

[2] Atiku Abubakar is referred to in the Indictment as "Nigerian Official A."

[3] Suleiman Yahyah is referred to in the Indictment as "Nigerian Businessperson B."

[4] Jennifer Douglas Abubakar is referred to in the Indictment as "Nigerian Official A's Spouse."

[5] *See, e.g.*, Josephine Lohor, *FBI Raid: I've Done No Wrong, Says VP*, THIS DAY (Nig.), Aug. 31, 2005, *available at* 2005 WLNR 13766307; Philip Shenon, *Nigerian Official Denies Congressman Bribed Him*, N.Y. TIMES, July 20, 2006, at A19, *available at* 2006 WLNR 12467933 ("In a statement made available by his Washington lawyers, Vice President Atiku Abubakar . . . insisted that Mr. Jefferson had never 'suggested—in any way—providing any personal economic benefits' to him."). In addition, when Mr. Abubakar was interviewed on NPR

denials.[6]  Referring to these general denials of wrongdoing, the government sent defense counsel

a letter on February 7, 2008, stating that "[t]he government is aware, as is the defense, that

Messrs. Abubakar and Yahyah have made statements either through their lawyers, to the media,

or to Nigerian authorities denying any role in paying or accepting bribes in relation to the charges

pending in the above-captioned case." The letter also related that Jennifer Douglas Abubakar

had testified before the grand jury and had "denied that [defendant] talked to her about his

interest in paying her husband money."[7]

---

on April 17, 2007, the interviewer asked him, "And do you deny asking for, being offered, or receiving any money of any kind from Congressman Jefferson or any source connected with him?" Mr. Abubakar responded, "Absolutely I deny that. Absolutely I know nothing like that. Absolutely not." Interview by Steve Inskeep with Atiku Abubakar on NPR, Morning Edition (Apr. 17, 2007).

[6] *See* Bruce Alpert & Bill Walsh, *On the Hill*, N.O. Times-Picayune, Oct. 8, 2006, at 8, *available at* 2006 WLNR 17423573 ("YahYah [sic] has denied paying or accepting bribes."); *The EFCC Report on Atiku*, THIS DAY (Nig.), Sept. 7, 2006, *available at* 2006 WLNR 15544774 (reprinting the report by Nigeria's Economic and Financial Crimes Commission ("EFCC") that was produced in response to the government's MLA Treaty request in this case, in which Mr. Yahyah is reported as stating that "he is not aware of any issue of payment of 25% of his expected profit to anybody and that there was even no reason for the payment.").

[7] Under Rule 804(b)(1), Fed. R. Evid., in the event a declarant is unavailable as a witness at trial, testimony previously given by the declarant may only be admitted "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Based on this limitation, an unavailable declarant's grand jury testimony generally may not be admitted at trial for the truth of the matter asserted pursuant to Rule 804(b)(1). The Fourth Circuit, however, has previously upheld the admission of an unavailable declarant's grand jury testimony for substantive consideration under Rule 804(b)(5), the predecessor to Rule 807. *See United States v. McHan*, 101 F.3d 1027 (4th Cir. 1996). Since then, the Fourth Circuit has indicated, in light of *Crawford v. Washington*, 541 U.S. 36 (2004), that a defendant's Confrontation Clause rights preclude the government from offering an unavailable declarant's grand jury testimony. *See United States v. McKoy*, 129 F. App'x 815, 817–18, 822 (4th Cir. 2005). But this limitation would not restrict the ability of a defendant to offer such evidence under Rule 807. Of course, a trial witness's grand jury testimony may also be offered under Rule 801(d)(1)(A) for both impeachment and substantive purposes if the witness's trial and grand jury testimony are inconsistent. *See United States v.*

Based on the government's characterization of these three individuals' previous statements, defendant now moves, pursuant to Rule 15(a), Fed. R. Crim. P., to depose Jennifer Douglas Abubakar, Atiku Abubakar, and Suleiman Yahyah on the ground that these witnesses are unavailable for trial and would provide material, exculpatory testimony. Additionally, because neither Atiku Abubakar nor Suleiman Yahyah will consent to being deposed, defendant moves for either (i) an order requiring the government to seek these depositions pursuant to the MLA Treaty or (ii) the issuance of a letter rogatory requesting the assistance of Nigerian judicial authorities in obtaining their testimony.

## II.

Analysis of a request for Rule 15 depositions properly begins with consideration of the Rule's requirements. Clearly, depositions in criminal cases are disfavored. *See United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993). As a result, depositions are permitted only "because of exceptional circumstances and in the interest of justice" in order to "preserve testimony for trial." Rule 15(a)(1), Fed. R. Crim. P. Prior to its amendment in 1975, Rule 15 stated that a court could authorize a deposition in a criminal case "'[i]f it appears [i] that a prospective witness may be unable to attend or prevented from attending a trial or hearing, [ii] that his testimony is material and [iii] that it is necessary to take his deposition in order to prevent a failure of justice.'" Charles Alan Wright, 2 FEDERAL PRACTICE AND PROCEDURE § 241, at 13 n.17 (3d ed. 2000) (quoting Fed. R. Crim. P. 15 (1944)). Although the 1975 amendment substituted the "exceptional circumstances" standard for these three conditions, case law reflects

*Stockton*, 788 F.2d 210, 219 n.14 (4th Cir. 1986). A trial witness's grand jury testimony can also be used to refresh the witness's memory under Rule 612.

that these requirements continue to inform the meaning of "exceptional circumstances."[8]  While

there is no controlling circuit authority elucidating Rule 15's "exceptional circumstances"

standard,[9] other circuits have consistently read "exceptional circumstances" to require a party

seeking a deposition to establish both that the witness will likely be unavailable to testify at trial

and that the witness's testimony is material.[10]  The Second and Tenth Circuits also consider

---

[8] The original Rule's three criteria inform the meaning of the current Rule's "exceptional circumstances" standard in part because "[t]he original rule was understood to allow ordering of a deposition only in 'exceptional situations.'" Wright, *supra*, § 241, at 9; *see id.* at 13 n.19.  As originally adopted, Rule 15 did not allow the government to move for depositions.  In 1970, Congress enacted a statute that allowed either party to take the deposition of a prospective witness in a prosecution connected to organized criminal activity.  Organized Crime Control Act of 1970, Pub. L. No. 91-452, § 601, 84 Stat. 922, 934.  This statute, which used the "exceptional circumstances" standard, served as the model for the 1975 revision of Rule 15.  Wright, *supra*, § 241, at 8, 10.

[9] The few Fourth Circuit cases relying on Rule 15 are consistent with reading "exceptional circumstances" as requiring the moving party to establish at least that the witness will likely be unavailable to testify at trial and that the witness's testimony is material. *See United States v. McHan*, 101 F.3d 1027, 1037 (4th Cir. 1996) (noting that "[w]hen the government knows that a witness will be unavailable, it has the choice of seeking to preserve the witness's testimony under Federal Rule of Criminal Procedure 15, or relying at its own risk on its ability to introduce hearsay (such as the witness's grand jury testimony), or losing the benefit of the witness's testimony altogether"); *United States v. Rivera*, 859 F.2d 1204, 1207 (4th Cir. 1988) (upholding district court order allowing illegal alien material witnesses to be deposed and released from custody).  Further, while the district court in *United States v. Moussaoui*, 382 F.3d 453 (4th Cir. 2004), had ordered the government to produce three enemy combatant witnesses for Rule 15 depositions, the Fourth Circuit analyzed and upheld that aspect of the district court's action under the lens of the Sixth Amendment because the witnesses were in the government's custody.

[10] *See, e.g., United States v. Liner*, 435 F.3d 920, 924 (8th Cir. 2006) ("To establish exceptional circumstances, the moving party must show the witness's unavailability and the materiality of the witness's testimony."); *United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001); *United States v. Thomas*, 62 F.3d 1332, 1340–41 (11th Cir. 1995); *United States v. Kelley*, 36 F.3d 1118, 1125 (D.C. Cir. 1994) ("Critical factors . . . include (1) the materiality of the testimony; and (2) the unavailability of the witness to testify at trial."); *United States v. Ismaili*, 828 F.2d 153, 159 (3d Cir. 1987) ("Notwithstanding the 1975 amendment to Rule 15(a), it nevertheless has been established that when the district court exercises its discretion in ruling on

whether the moving party has shown that denying the requested deposition will result in a failure

of justice. *See United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001); *United States v. Fuentes-*

*Galindo*, 929 F.2d 1507, 1509 (10th Cir. 1991). The Eleventh Circuit weighs whether

"countervailing factors render taking the deposition unjust to the nonmoving party," including

the likelihood that the procured testimony will be admissible at trial and whether the request was

timely. *United States v. Ramos*, 45 F.3d 1519, 1523 (11th Cir. 1995); *see Drogoul*, 1 F.3d at

1555 ("The court need not, at the cost of time and money, engage in an act of futility by

authorizing depositions that clearly will be inadmissible at trial.").

Although the original Rule's three requirements remain central to the Rule 15 analysis, it

does not follow that these requirements exhaust the meaning of "exceptional circumstances."[11]

Rather, the "change was effectuated to ensure that the trial court exercised its discretion in

determining whether a deposition should be taken under the particular circumstances presented."

*Fuentes-Galindo*, 929 F.2d at 1509; *see also United States v. Ismaili*, 828 F.2d 153, 159 (3d Cir.

1987) ("The 1975 amendment emphasizes the use of discretion by the district court . . . .").

Hence, while consideration of (i) whether the witness will be unavailable to testify at trial, (ii)

whether the witness's testimony will be material, and (iii) whether the witness's testimony is

---

a Rule 15(a) motion, considerations of materiality (of the testimony) and unavailability (of the
witnesses) remain critical. . . . [I]t is difficult to conceive of a district court abusing its discretion
by denying a Rule 15(a) motion where the movant has not established both the materiality of the
testimony and the unavailability of the witness.").

[11] In the words of the leading commentator, "In most instances it is probably true that
facts that would have satisfied the three conditions of the old rule would qualify as 'extraordinary
circumstances.' But a change in language in a rule ordinarily suggests that courts are to take a
fresh look, and the precedents under the earlier language must be used with care." Wright, *supra*,
§ 241, at 13–14 (footnote call numbers omitted).

necessary to prevent a failure of justice all remain essential to the Rule 15 calculus, this does not

necessarily end the analysis. A district court must further carefully consider all the circumstances

and exercise its discretion to ensure that Rule 15(a) depositions are permitted only in the rare

instances or exceptional circumstances contemplated by the Rule.

## A.

The first critical consideration is the witness's unavailability to testify as a witness at trial.

As the Eleventh Circuit has observed, a "potential witness is unavailable for purposes of Rule

15(a) . . . whenever a substantial likelihood exists that the proposed deponent will not testify at

trial." *Drogoul*, 1 F.3d at 1553.[12] In particular, courts have recognized that the witness's

unavailability may be based on a showing that "the proposed deponent is beyond the subpoena

powers of the United States and has declared his unwillingness to testify at trial." *Ramos*, 45

F.3d at 1523. Although an affidavit from the proposed deponent represents the most reliable way

to establish that individual's probable unavailability, affidavits are not the only means available

to show that a substantial likelihood exists that the proposed deponent will not testify at trial.

*See United States v. Des Marteau*, 162 F.R.D. 364, 369 (M.D. Fla. 1995) ("[Rule] 15 does not

explicitly require supporting affidavits, and representations made by counsel in open court have

been held sufficient to establish probable unavailability."). Indeed, a person who is not subject to

a subpoena and who is not willing to testify at trial is also unlikely to be willing to provide an

affidavit to this effect. Accordingly, courts must assess the unavailability of a potential witness

---

[12] Of course, in addition to establishing the Rule 15 requirements for the taking of a deposition, a party seeking to use the deposition as evidence will be required to show at trial that the individual is unavailable as a witness within the meaning of Rule 804(a), Fed. R. Evid. *See* Rule 15(f), Fed. R. Crim. P. ("A party may use all or part of a deposition as provided by the Federal Rules of Evidence.").

by carefully examining all the reasonably reliable available information and then make a reasoned judgment as to a person's unavailability. The availability of each of the prospective witnesses must be assessed in light of these principles.

First, defendant did not establish that Jennifer Douglas Abubakar is substantially unlikely to testify at the trial in this matter. Pursuant to 28 U.S.C. § 1783, an Order entered directing issuance of a subpoena requiring her appearance as a witness at trial. *United States v. Jefferson*, No. 1:07cr209 (E.D. Va. July 17, 2008) (Order). Defendant nonetheless maintains that even though Mrs. Abubakar is subject to a witness subpoena, she should be considered "unavailable" for purposes of Rule 15(a). This argument lacks merit, however, as defendant did not show that Mrs. Abubakar cannot be served or will refuse to comply with the subpoena once served. And given that it does not seem substantially likely that she will refuse to appear as a witness at trial, defendant did not establish extraordinary circumstances justifying her deposition. His motion for her deposition was therefore appropriately denied as moot. *See id.*[13]

By contrast, the government concedes that defendant has sufficiently established the unavailability of Mr. Yahyah. As a Nigerian citizen, Mr. Yahyah is beyond the subpoena power of American courts. *See* 28 U.S.C. § 1783; *see also Drogoul*, 1 F.3d at 1553. In addition, defendant has submitted a letter from Mr. Yahyah's counsel stating that Mr. Yahyah is not even available to speak with defense counsel, a statement that certainly indicates his unwillingness to travel voluntarily to the United States to appear as a witness at trial. Mr. Yahyah can therefore be

---

[13] Additionally, defendant's December 30, 2008, motion for alternative service of a trial subpoena on Jennifer Douglas Abubakar, and for reconsideration of his request to take her deposition, was granted in part and denied in part at the January 15, 2009, hearing in this matter. *United States v. Jefferson*, No. 1:07cr209 (E.D. Va. Jan. 15, 2009) (Order).

considered unavailable for purposes of Rule 15.

Whether defendant has shown that Mr. Abubakar is unavailable to testify at trial is a closer question. Like Mr. Yahyah, Mr. Abubakar is not subject to subpoena by American courts. Additionally, defense counsel has represented that he has been advised by Mr. Abubakar's American counsel that Mr. Abubakar is unwilling to appear voluntarily in the United States for trial. Yet, the government notes that a Nigerian newspaper has reported an aide of Mr. Abubakar as stating that "both Atiku and his wife had offered to testify at the court but were told they were not needed." Laolu Akande, *U.S. Govt Names Atiku, Wife in Jefferson's Trial*, NIGERIA DAILY NEWS, May 27, 2008.[14] Given this, the government argues that defense counsel's representations are not sufficient to establish that Mr. Abubakar is unwilling to appear and that defendant must produce an affidavit from Mr. Abubakar regarding his availability. Although there may be situations in which the availability of a proposed deponent is so in doubt that the moving party must provide an affidavit in order to meet his burden, this is not such a case. Here, the representation of Mr. Abubakar's American counsel that Mr. Abubakar will not come to trial, while not in affidavit form, as would be preferable, is nonetheless sufficiently reliable to trump an unnamed aide's purported statement to the contrary reported in a foreign newspaper.[15] As a result, defendant has shown a "substantial likelihood that [Mr. Abubakar] will not testify at trial." *Drougoul*, 1 F.3d at 1553. Accordingly, Mr. Abubakar is unavailable for purposes of Rule 15.

---

[14] The article does not disclose who told the Abubakars they were not needed at trial.

[15] Additionally, at the January 15, 2009, hearing in this matter, defense counsel represented that he would supplement the record in this regard by providing an affidavit or some form of reliable representation from Mr. Abubakar's American counsel stating that Mr. Abubakar will not speak with defense counsel or testify at trial, despite defendant's offer to pay his travel expenses.

**B.**

Next, it is necessary to consider whether defendant has established that Mr. Yahyah and Mr. Abubakar will provide material testimony, the second and perhaps most important requirement in the Rule 15 analysis.  In the Rule 15 context, "materiality has the same meaning the Supreme Court gave the term in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, namely, that the evidence or testimony must be exculpatory, and not corroborative or cumulative of other evidence."  *United States v. Rosen*, 240 F.R.D. 204, 209 (E.D. Va. 2007) (citation, internal quotation marks, and footnote call number omitted).[16]  The materiality analysis therefore requires examining the forecasted testimony of the proposed deponent "to ascertain (i) whether it is exculpatory, *i.e.*, tends to negate an element of the crime or to establish a defense, and (ii) whether it is cumulative of other evidence."  *Id.*  Determining whether forecasted testimony is exculpatory involves three steps: first, identifying the elements of the crime; second, outlining the forecasted testimony; and third, comparing "the elements and the forecasted testimony to ascertain whether the forecasted testimony negates any element of the charged crime or establishes a defense."  *Id.*  Then, if a prospective deponent's forecasted testimony would be exculpatory, it is necessary to consider "whether it is cumulative of other existing and available evidence."  *Id.* at 210.

Here, defendant asserts that Mr. Yahyah's and Mr. Abubakar's deposition testimony would be material to the charges that defendant conspired to violate the FCPA in violation of 18

---

[16] *See also United States v. Hajbeh*, 284 F. Supp. 2d 380, 385 (E.D. Va. 2003) ("Th[e] two-pronged *Brady* materiality standard should also apply under Rule 15(a) given that both *Brady* and Rule 15(a) are aimed at ensuing that an accused receives, not a perfect trial, but a fundamentally fair one.").

U.S.C. § 371 and violated the FCPA, specifically 15 U.S.C. § 78dd-2(a). To prove a conspiracy

in violation of § 371, "the government must prove an agreement between two or more persons to

act together in committing an offense and an overt act in furtherance of the conspiracy." *United*

*States v. Chorman*, 910 F.2d 102, 109 (4th Cir. 1990). To prove a violation of § 78dd-2(a), the

government must prove that defendant is

> 1. a domestic concern
> 2. that made use of a means or instrumentality of interstate commerce
> 3. corruptly
> 4. in furtherance of an offer or payment of anything of value to any person
> 5. while knowing that the money would be offered or given directly or indirectly to any foreign official
> 6. for purposes of influencing any act or decision of such foreign official in his official capacity.

*Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders in Het Kapitaal Van*

*Saybolt Int'l B.V. v. Schreiber*, 327 F.3d 173, 179–180 (2d Cir. 2003).

The analysis next proceeds to the nature of the forecasted testimony. According to

defendant, the witnesses would testify (i) that no bribes were ever paid or received; (ii) that they

never entered into agreements with defendant to pay or receive bribes; and (iii) that the specific

discussions regarding bribes that are alleged in the Indictment did not occur.[17] In the event the

prospective deponents were to testify along those lines, such testimony would plainly be

exculpatory for defendant as it would tend to negate the agreement element of the conspiracy

charge. Additionally, such testimony would tend to negate the element of the FCPA charge that

requires the government to prove that defendant was acting in furtherance of an offer or payment

---

[17] Specifically, defendant predicts that Mr. Abubakar would testify that defendant did not offer to pay him a bribe during their July 18, 2005, meeting and that Mr. Yahyah would testify that he did not agree with defendant that bribes would be paid to various Nigerian government officials.

of anything of value to a foreign official.  Indeed, the government conceded at oral argument that in the event the witnesses testified that the conversations alleged in the Indictment did not occur and that they never agreed with defendant to violate the FCPA, such testimony would be exculpatory for defendant.

This does not end the analysis; the forecasted testimony must not only be exculpatory but must also be noncumulative of other available evidence.  Although the government argues that the witnesses' testimony would be cumulative of testimony defendant himself could offer, it is "appropriately assumed that defendant[] will exercise [his] right to remain silent." *Rosen*, 240 F.R.D. at 210.  Indeed, to assume otherwise would arguably inappropriately infringe defendant's Fifth Amendment privilege against self-incrimination.[18]  Accordingly, in the event the prospective deponents testify as forecasted, their testimony would clearly be material—*i.e.*, both exculpatory and, at this time, noncumulative.

Yet, framing the materiality analysis in this way raises an important question—how confident must a court be before authorizing a deposition that the prospective deponent will actually testify along the lines forecasted by the party seeking the deposition?  In this respect, courts have sensibly indicated that affidavits or declarations from the prospective witnesses

---

[18] It is worth noting, however, that a strong argument can be advanced that denying a defendant's Rule 15(a) motion on the ground that the proposed deponent's testimony would be cumulative of testimony that the defendant himself could offer might provide the defendant with a strong incentive to testify, but yet fall short of compulsion implicating the Fifth Amendment.  The case law is inconclusive on this issue, but the better and more persuasive view is to construe Rule 15 so as not to infringe a defendant's Fifth Amendment right in any way.  The view to the contrary in *Hajbeh*, 284 F. Supp. 2d at 385–86, is no longer persuasive.

outlining the testimony that they are prepared to provide are preferred.[19]  Yet, courts have also

held that an affidavit from the prospective witness is not necessarily required.  *See United States*

*v. Farfan-Carreon*, 935 F.2d 678, 679–80 (5th Cir. 1991) (finding that the district court had

abused its discretion in denying a motion for a Rule 15 deposition on the ground that the

defendant had failed to submit a sworn affidavit).  In the end, it seems clear that there must be at

least some credible, reliable basis to believe that the witness would testify as forecasted before a

Rule 15 deposition can be authorized.  *Cf. United States v. Liner*, 435 F.3d 920, 924 (8th Cir.

2006) (affirming district court's denial of defendant's motion for a Rule 15 deposition because

defendant had "offered no evidence to support his claim" that the witness might provide

exculpatory testimony).  Hence, the party seeking to depose a witness must make a plausible,

credible showing both (i) that the witness will waive any right to remain silent and provide

testimony in a deposition and (ii) that such testimony would be along the lines forecasted by the

party seeking the deposition.  Here, defendant satisfies the second requirement, but falls short on

the first.

First, defendant has adequately, if barely, established that the prospective witnesses

would likely testify as forecasted if they were to provide testimony.  In suggesting that the

---

[19] *See Hajbeh*, 284 F. Supp. 2d at 385 n.25 (noting that "the absence of any affidavit or
witness declaration makes it difficult to assess the materiality of [the prospective deponent's]
testimony"); *United States v. Chusid*, No. 00cr263, 2000 U.S. Dist. LEXIS 14007, at *4
(S.D.N.Y. Sept. 27, 2000) (denying defendant's motion for depositions in part because defendant
had not submitted affidavits from prospective witnesses but had instead provided only
"expectations as to what these witnesses would say if examined"); *United States v. Figueroa*, No.
CR 95-0823, 1996 U.S. Dist. LEXIS 22577, at *2 (E.D.N.Y. Feb. 1, 1996) (finding defendant
had not established "exceptional circumstances" justifying a Rule 15 deposition in part because
"[t]here is no affidavit from the witness in question as to precisely what his testimony would
be").

-14-

prospective witnesses would testify along the lines forecasted, defendant relies on the following

sources: (i) reports by the media of the witnesses' denials of wrongdoing; (ii) the government's

February 7, 2008, letter; and (iii) defendant's own knowledge of the events.[20]  Whether these

sources sufficiently establish that the witnesses' testimony would be along the lines of

defendant's forecast is a very close question.  Although defense counsel sought but failed to

obtain an affidavit or declaration from either of the prospective deponents outlining the material

testimony he would provide in a deposition,[21] defense counsel's inability to produce an affidavit

or declaration is not necessarily dispositive, as such materials—although preferred—are not

required by Rule 15(a).  Further, while defense counsel was unable to obtain sworn statements

from the witnesses, defendant can point to a relatively large number of newspaper stories and

other media sources that have reported on Mr. Abubakar's public denials of having been offered

or having received bribes from defendant.[22]  Other newspapers have reported that Mr. Yahyah

has denied paying bribes or agreeing with defendant to pay a portion of his profits as bribes.[23]  To

be sure, these various media reports of the witnesses' previous unsworn statements hardly

---

[20] At the June 13, 2008, hearing on the motion, defense counsel also represented that Mr. Abubakar's counsel had stated to him that Mr. Abubakar denies that he had any corrupt conversation with defendant along the lines alleged in the Indictment.  Yet, because there is no mention of this conversation in any of defendant's four briefs on this issue, including the supplemental memorandum defendant filed after the hearing that specifically enumerates the sources for the forecasted testimony, this representation is not given weight.

[21] Defense counsel attempted to procure an affidavit or declaration from the witnesses after an Order issued directing defense counsel to submit those materials.  *United States v. Jefferson*, No. 1:07cr209 (E.D. Va. Oct. 10, 2008) (Order).

[22]*See supra* note 5.

[23] *See supra* note 6.

establish conclusively what the witnesses would say under oath in a deposition; they provide, at

best, a marginally reliable indicator of how the witnesses would likely testify. Yet, it is well to

remember that greater certainty and precision as to the contents of a proposed deponent's

testimony is difficult to obtain where, as here, the putative deponent has indicated an

unwillingness to speak to defense counsel and an unwillingness to appear at trial. In the instant

circumstances, defendant presented a sufficiently plausible showing that if the witnesses gave

testimony in a deposition, their testimony would be along the lines forecasted by defendant and

would therefore be material.

Nonetheless, there remains substantial uncertainty as to whether the prospective

deponents would provide any testimony at all in a deposition, even were they to be compelled to

attend by Nigerian judicial authorities responding to a letter rogatory request. This is so because

there is no doubt that the witnesses have a privilege against self-incrimination under the Fifth

Amendment and absolutely no indication that they would waive this right.[24] The Self-

Incrimination Clause of the Fifth Amendment provides that "no person . . . shall be compelled in

any criminal case to be a witness against himself." U.S. Const. amend. V. These witnesses,

whom the government has identified as unindicted coconspirators, would therefore be entitled to

invoke the privilege in a deposition authorized pursuant to Rule 15(a) to the extent they

"reasonably believe[] that the information sought, or discoverable as a result of [their] testimony,

could be used in a subsequent state or federal criminal proceeding." *United States v. Balsys*, 524

---

[24] In addition, the witnesses may also have a privilege against self-incrimination under the
Nigerian Constitution. *See* Constitution, Art. 35(2) (1999) (Nigeria). Yet, because the witnesses
clearly have a privilege against self-incrimination under the Fifth Amendment, it is not necessary
or appropriate to reach the question of whether the witnesses would be able to invoke this
Nigerian constitutional right in a deposition for this matter conducted in Nigeria.

U.S. 666, 672 (1998). This conclusion holds regardless of whether the depositions take place in the United States or in Nigeria.[25]

Moreover, defendant has provided no assurance that either witness will waive his privilege against self-incrimination. Although the Fourth Circuit has indicated that "a court should not assume that a potential witness will invoke the Fifth Amendment," it has further instructed that "circumstances indicating that a potential witness will refuse to testify may support a decision not to compel disclosures sought by the defense." *United States v. Moussaoui*, 382 F.3d 453, 472 (4th Cir. 2004). Here, the relevant circumstances indicate that there is some likelihood the prospective deponents will invoke the Fifth Amendment. The witnesses are, after all, unindicted coconspirators subject to prosecution in the United States. Additionally, the witnesses have refused to be deposed voluntarily either in the United States or in Nigeria, and their unwillingness to give deposition testimony voluntarily suggests they may employ every available legal right to avoid giving testimony, including invoking the Fifth Amendment. Further, because of the concern that the prospective witnesses might invoke the Fifth Amendment, thereby rendering the effort to procure their deposition testimony an exercise in futility, an Order issued directing defense counsel to submit an affidavit or declaration from each prospective witness addressing whether he would waive his right to remain silent. *United States v. Jefferson*, No. 1:07cr209 (E.D. Va. Oct. 10, 2008) (Order). Defense counsel sought, but was unable to obtain, such affidavits or declarations. Thus, defendant has provided no assurance that

---

[25] *See United States v. Odeh*, 548 F.3d 237, 260 (2d Cir. 2008) ("[R]egardless of the origin—*i.e.*, domestic or foreign—of a statement, it cannot be admitted at trial in the United States if the statement was 'compelled.' U.S. Const. amed. V. Similarly, it does not matter whether the defendant is a U.S. citizen or a foreign national: 'no person' tried in the civilian courts of the United States can be compelled 'to be a witness against himself.'").

-17-

in the event depositions are authorized and an international request for judicial assistance is issued, there will be any material testimony secured from either of the witnesses.

Defendant's Rule 15 motion could founder on this ground alone, as it is not appropriate to initiate what will undoubtedly be an expensive and time-consuming process of attempting to depose the witnesses in Nigeria without some reasonable assurance that the prospective deponents do not intend to invoke the Fifth Amendment. Yet, because defendant has sufficiently established that these witnesses are unavailable to testify at trial and likely to provide material testimony in a deposition in the event they waive the Fifth Amendment, defendant's Rule 15(a) motion should not be denied at this time. Rather, defendant's motion to depose Mr. Abubakar and Mr. Yahyah is appropriately construed as containing a lesser-included request for judicial assistance in determining, by examination on the basis of written interrogatories, whether the witnesses will waive the Fifth Amendment and testify fully in a deposition, given that the defendant has already failed in his efforts to receive such assurances. This lesser-included request, which does not require the parties' counsel to travel to Africa and the expense attendant to such travel, is appropriately granted as a reasonable means of ascertaining whether these persons are willing to waive their Fifth Amendment rights and testify and, further, whether they would be willing to travel to the United States at defendant's expense to provide live testimony at trial. Only an affirmative answer to the first inquiry and a negative answer to the second would warrant granting defendant's Rule 15 motion to take the depositions of these persons in Nigeria.

## C.

Before describing in greater detail the nature of the judicial assistance to be provided, it is necessary to consider the final Rule 15 criteria, namely whether a witness's testimony is

necessary to prevent a failure of justice. *See Cohen*, 260 F.3d at 78.  Although identified as a separate factor, this consideration is inherently tied to whether the witness's testimony would be material; that is, "[t]he principal consideration guiding whether the absence of a particular witness's testimony would produce injustice is the materiality of that testimony to the case." *Drogoul*, 1 F.3d at 1552; *see also Rosen*, 240 F.R.D. at 213 (noting that because the witnesses' testimony would not be material, the requested depositions were not necessary to prevent a failure of justice).  Yet, although a deposition should generally be permitted in the interest of justice if the party seeking a deposition shows that the prospective witness is both unlikely to appear at trial and likely to provide material testimony, there may be "significant countervailing factors which would render the taking of the deposition unjust." *Drogoul*, 1 F.3d at 1552.  Here, the government asserts that several countervailing factors point against authorizing the depositions.  In the end, none convinces.  First, the government stresses the status of the prospective deponents as unindicted coconspirators, arguing that such witnesses may be more likely to commit perjury.  The status of the witnesses as unindicted coconspirators does not, however, represent a sound basis for denying defendant's request.  While there are legitimate concerns that the prospective deponents might commit perjury with impunity when giving testimony by deposition abroad, the jury is fully competent to take such concerns into account when weighing the credibility of their testimony. *See, e.g., United States v. Mills*, 760 F.2d 1116, 1121 (11th Cir. 1985) ("[F]ugitive depositions are not only available but are sometimes wisely authorized despite their suspect veracity and the lack of a perjury sanction."); *United States v. Gonzalez*, 488 F.2d 833, 839 (2d Cir. 1973) ("The jury is well able to weigh [a fugitive's] testimony . . . .").

-19-

Second, the government argues that securing the witnesses' testimony by deposition is not necessary to prevent an injustice because the witnesses are unwilling to testify voluntarily. In advancing this argument, the government principally relies on a line of Ninth Circuit cases that indicates that a district court deciding a Rule 15(a) motion "must consider, among other factors, whether the deponent would be available at the proposed location for deposition and would be willing to testify." *United States v. Olafson*, 213 F.3d 435, 442 (9th Cir. 2000); *see also United States v. Omene*, 143 F.3d 1167, 1169–70 (9th Cir. 1998); *United States v. Zuno-Arce*, 44 F.3d 1420, 1425 (9th Cir. 1995). This is a sensible consideration, for Rule 15 depositions should not be authorized where the effort is likely to be futile. Yet, the witnesses' refusal to be deposed voluntarily does not represent a sufficient ground to deny defendant's motion because a mechanism exists to compel their depositions in Nigeria—*i.e.*, as discussed below, the letters rogatory procedure. Further, the concern that the witnesses might not ultimately give testimony despite the issuance of letters rogatory is adequately addressed by the issuance of a preliminary letter rogatory requesting that the witnesses be examined by written interrogatories to determine whether they would waive their Fifth Amendment rights and answer deposition questions fully if compelled to appear. Therefore, the witnesses' unwillingness to testify voluntarily does not provide a basis to deny defendant's request.

Third, the government argues that concern for the safety of the lawyers in this case, particularly the prosecutors who have made allegations against Nigeria's former vice president, should outweigh the defendant's interest in preserving the witnesses' testimony. This point has some force to it; courts should not order Rule 15 depositions that place prosecutors, counsel, or others in jeopardy of being killed, injured, or kidnaped. In this regard, the Ninth Circuit sensibly

-20-

ruled that before authorizing a deposition to be taken abroad, the district court should "consider whether the safety of United States officials would be compromised by going to the foreign location." *Olafson*, 213 F.3d at 442. Although also recognizing the importance of ensuring counsel's safety, the Eleventh Circuit took a different approach in *Ramos*, ruling that concern for prosecutors' safety did not necessarily warrant denying a defendant's motion to take a deposition of a suspected drug dealer in Columbia. 45 F.3d at 1523–24. Rather, the court noted that the government has other officials in Columbia who could attend the deposition if the trip would be too dangerous for an Assistant United States Attorney and also stated that the deposition could be accomplished through written interrogatories. *Id.* at 1524. Here, there has been no persuasive showing that a trip to Nigeria to take depositions would place prosecutors or counsel in jeopardy. Moreover, if more compelling evidence of a risk to prosecutors and counsel is provided, consideration will be given to completing the depositions through written interrogatories.

Finally, the government argues that defendant's motion should be denied because he waited for nearly a year after the Indictment before seeking these depositions and because granting the motion and issuing letters rogatory could significantly delay the trial. Although Rule 15 "is silent on when a motion for a deposition is to be made," courts have rejected as untimely motions that will delay the trial. Wright, *supra*, § 242, at 20; *see also United States v. Aggarwal*, 17 F.3d 737, 742 (5th Cir. 1994) ("Denial of a Rule 15(a) motion for untimeliness is not an abuse of discretion."). Yet, the cases that have denied a Rule 15 motion as untimely stress that the party seeking the deposition made the request too close to the start of trial, rather than emphasizing that too much time has elapsed since the return of the indictment. *See, e.g., United States v. Dearden*, 546 F.2d 622, 625 (5th Cir. 1977) (holding that trial court did not abuse its

-21-

discretion when it denied a defendant's Rule 15 motion that was filed three weeks into trial); *United States v. Broker*, 246 F.2d 328, 329 (2d Cir. 1957) (affirming district court's denial of a Rule 15 motion filed on the eve of trial when circumstances strongly suggested that "motion was only a dilatory tactic"). Here, the request for permission to depose the witnesses was not made so close to trial as to render the motion untimely. Further, although the government's concern that authorizing the depositions and issuing letters rogatory may delay the trial is a legitimate consideration, there is reason to conclude that this will not occur here.

In sum, then, the countervailing factors advanced by the government are not sufficient to render the taking of the requested depositions unjust. Because defendant has shown that Mr. Abubakar and Mr. Yahyah are unavailable to appear at trial and likely to provide material testimony in a deposition in the event they waive their Fifth Amendment rights, the "interests of justice" suggest that their depositions should be allowed, provided that each witness states in response to written interrogatories that he does not intend to invoke his privilege against self-incrimination in such a deposition and declines to come to the United States at defendant's expense to provide live trial testimony.

### III.

Defendant also argues that because Mr. Abubakar and Mr. Yahyah will not agree to appear voluntarily at a deposition, their testimony should be compelled either by the issuance of letters rogatory or by invoking the MLA Treaty. Indeed, defendant argues that the Sixth Amendment requires the government to use the MLA Treaty on his behalf to obtain the depositions. Although it will be necessary to use compulsory process to obtain these depositions in the event they are authorized, it is clear that defendant is not entitled to make use of the MLA

-22-

Treaty and that this result does not violate defendant's constitutional right to compulsory process.

The MLA Treaty is a bilateral treaty between the United States and Nigeria that "provides for a broad range of cooperation in criminal matters." Treaty on Mutual Legal Assistance in Criminal Matters, U.S.–Nig., Sept. 13, 1989, S. Treaty Doc. No. 102-26, 1989 U.S.T. LEXIS 237; Letter of Transmittal from President George W. Bush to the U.S. Senate, Apr. 1, 1992. In particular, the treaty provides that the government of one nation (the "Requesting State") may request the assistance of the other (the "Requested State") on a broad range of matters related to the "investigation, prosecution, and prevention of crimes, and in proceedings related to criminal matters." MLA Treaty art. I, para. 1. Such assistance may include "taking the testimony or statements of persons." *Id.* at art. I, para. 2. This includes the authority, if necessary, to compel "[a] person in the Requested State from whom evidence is requested . . . to appear and testify." *Id.* at art. IX, para. 1.

By its plain terms, the U.S.–Nigeria MLA Treaty limits assistance to the "Contracting Parties," which it defines as the "Government of the United States of America and the Government of the Federal Republic of Nigeria." *Id.* at preface. The treaty additionally expressly provides that only the two governments, and not private parties, can make use of its provisions: "This Treaty is intended solely for mutual legal assistance between the Parties. The provisions of this Treaty shall not give rise to a right on the part of any private party to obtain, suppress, or exclude any evidence, or to impede the execution of a request." *Id.* at art. I, para. 4. As a result, courts have consistently held that MLA Treaties with such clauses "create[] no rights in individual defendants to force the government to request evidence under the MLA treaty

-23-

procedures." *Rosen*, 240 F.R.D. at 214.[26]  It is thus clear that defendant, as a private party, is not

entitled to use the MLA Treaty process himself or force the government to use the treaty on his

behalf.

It is further evident that, despite defendant's arguments to the contrary, enforcing the

MLA Treaty as written does not threaten to deny defendant his Sixth Amendment right to

compulsory process.[27]  The Fourth Circuit has stated that "[t]he compulsory process right is

circumscribed . . . by the ability of the district court to obtain the presence of a witness through

service of process" and has further noted "the well established and undisputed principle that the

process power of the district court does not extend to foreign nationals abroad." *Moussaoui*, 382

F.3d at 463–64. It is thus "quite clear that the right to compulsory process extends only to forms

of process a court can issue of its own power, not to forms of process that require the cooperation

of the Executive Branch or foreign courts." *Rosen*, 240 F.R.D. at 214. Accordingly, a

defendant's constitutional right to compulsory process is not implicated by a court's refusal to

order the Executive Branch to invoke the MLA Treaty in favor of a defendant.[28]  Defendant's

---

[26] *See, e.g., United Kingdom v. United States*, 238 F.3d 1312, 1317 (11th Cir. 2001)
(noting that the MLA Treaty between the United States and the United Kingdom does not
provide "for private parties, such as individual criminal defendants . . . to request the production
of information").

[27] *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the
right . . . to have compulsory process for obtaining witnesses in his favor . . . .").

[28] Defendant further briefly asserts that his Fifth Amendment right to due process will be
violated if the government does not invoke the MLA Treaty to obtain the depositions of these
two witnesses. Defendant points to no authority, however, in support of his argument, and it
clearly lacks merit. Distilled to its essence, defendant's due process claim appears to be that the
government will have treated him unfairly by failing to invoke the MLA Treaty to obtain
deposition testimony on his behalf. Yet, whatever rights defendant has to obtain testimony in his
favor derives from the Sixth Amendment's Compulsory Process Clause and must therefore be

-24-

request for an order requiring the government to invoke the MLA Treaty is therefore
appropriately denied.

## IV.

Defendant alternatively requests the issuance of letters rogatory to facilitate the taking of

the prospective witnesses' depositions. Letters rogatory represent "the means by which a court in

one country requests the court of another country to assist in the administration of justice by

taking depositions." *Rosen*, 240 F.R.D. at 215. District courts have inherent authority to issue

letters rogatory in both civil and criminal cases. *See U.S. v. Staples*, 256 F.2d 290, 292 (9th Cir.

1958) (noting that all federal courts have "inherent power to issue Letters Rogatory"); *cf.* 28

U.S.C. § 1781(a)(2) (authorizing the Department of State to transmit letters rogatory issued by a

United States tribunal).[29]  And, it is well-settled that the decision to issue letters rogatory lies

within a district court's sound discretion. *See United States v. Mason*, No. 89-5675, 1990 App.

LEXIS 20736, at *6 (4th Cir. Nov. 29, 1990) (unpublished per curiam decision) (citing *Leasco*

*Data Processing Equip. Corp. v. Maxwell*, 63 F.R.D. 94 (S.D.N.Y. 1973)).  In general, when

---

measured by that Amendment's standards. *See County of Sacramento v. Lewis*, 523 U.S. 833,
842 (1998) (noting that when "a particular Amendment provides an explicit textual source of
constitutional protection against a particular sort of government behavior, that Amendment, not
the more generalized notion of substantive due process, must be the guide for analyzing these
claims" (citation and internal quotation marks omitted)).  Accordingly, "[t]here is no need to
undertake a separate inquiry addressing substantive due process when the right is protected, to
whatever extent it is protected, by another constitutional text." *United States v. Rosen*, 487 F.
Supp. 2d 721, 737 (E.D. Va. 2007).

[29] The authority of district courts to issue letters rogatory in criminal cases is confirmed
by the Federal Rules of Criminal and Civil Procedure, as Rule 15(e), Fed. R. Crim. P., provides
that criminal depositions generally "must be taken and filed in the same manner as a deposition
in a civil action" and Rule 28(b)(1)(B), Fed. R. Civ. P., states that "[a] deposition may be taken
in a foreign country under a letter of request, whether or not captioned a 'letter rogatory.'"

requested to help secure deposition testimony, a court should grant an application for letters rogatory when (i) the party seeking a deposition has established exceptional circumstances justifying the taking of the deposition under Rule 15; and (ii) the prospective witness will not appear at a deposition voluntarily. *See Rosen*, 240 F.R.D. at 215.

At this point, defendant has not adequately established that exceptional circumstances exist to warrant deposing Mr. Abubakar and Mr. Yahyah, and so letters rogatory should not issue requesting Nigerian judicial officials' assistance in obtaining their depositions. Although defendant has adequately established that these witnesses would be unavailable to testify at trial and are likely to provide material testimony in a deposition in the event they waive the Fifth Amendment, defendant was unable to provide any assurance that the witnesses would not invoke the Fifth Amendment and therefore has not shown that they will provide material testimony. Yet, rather than denying defendant's motion for authorization to take the depositions of Mr. Abubakar and Mr. Yahyah and his request for letters rogatory to secure the depositions, the motion is construed as including a request for judicial assistance in determining whether these witnesses would invoke the Fifth Amendment, and that lesser included motion is granted. Accordingly, a letter rogatory will issue requesting the appropriate Nigerian judicial authority to examine Mr. Abubakar and Mr. Yahyah by written interrogatories regarding their willingness to waive their Fifth Amendment rights and answer questions fully in a later deposition.[30] Given that the prospective witnesses need to be examined regarding this critical issue, it is also appropriate

---

[30] The State Department has issued regulations regarding the recommended procedures for taking depositions in foreign countries, and these procedures envision a witness being examined either orally by counsel for the parties or on the basis of written interrogatories. *See* 22 C.F.R. §§ 92.57–92.58. If a witness is examined on the basis of written interrogatories, counsel for the parties need not be present. *Id.*

to have the witnesses answer whether, at defendant's expense, they would be willing to come to the United States and testify at defendant's trial.  The letter rogatory will be sent directly to the Supreme Court of Nigeria and the Federal High Court of Nigeria and will also be sent to the United States Department of State for transmittal to the appropriate Nigerian judicial authority. Sixty days will be allotted to complete this process, after which defendant's request for depositions will be examined in light of the responses received, if any.  If no responses are received, the available information does not warrant authorizing Rule 15 depositions.

An appropriate Order will issue.


Alexandria, Virginia
January 23, 2009

_____
/s/
T. S. Ellis, III
United States District Judge

-27-