IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:07cr209 |
| | ) | |
| WILLIAM J. JEFFERSON | ) | |

FILED MAY 22 2009 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

In this multi-count prosecution of William J. Jefferson, a former congressman,[1] defendant's threshold attempt to dismiss various bribery-related counts on the ground that the acts alleged fell outside the scope of the federal bribery statute was denied by Memorandum Opinion issued on May 23, 2008.[2] Specifically, the May 2008 Opinion rejected defendant's argument that the bribery allegations were legally insufficient with respect to the "official act" element of 18 U.S.C. § 201(b)(2)(A), which prohibits public officials from soliciting things of value in exchange for being influenced in the performance of "official acts." Ten months later, both parties filed motions—the government, a motion for clarification, and defendant, a motion for reconsideration and, in the alternative, to exclude evidence—focusing sharply on the "official act" element of the bribery statute. In essence, the parties argue that the May 2008 Opinion's discussion of that element is open to misinterpretation and must be clarified prior to trial. Defendant additionally argues that evidence of certain acts should be excluded at trial because those acts do not fall within the scope of the

---

[1] Defendant represented Louisiana's 2nd Congressional District from 1991 until he left office following his defeat in a 2008 bid for reelection.

[2] *See United States v. Jefferson*, 562 F. Supp. 2d 687 (E.D. Va. 2008) (hereinafter the "May 2008 Opinion").

-1-

"official act" element.

The parties' motions were fully briefed and argued, and in the end, for the reasons stated from the Bench, an Order issued granting the government's motion in part and denying defendant's motion. *See United States v. Jefferson*, No. 1:07cr209 (E.D. Va. May 8, 2009) (Order) (Docket No. 388). This Memorandum Opinion further explains the reasons stated from the Bench. More specifically, although the result reached in the May 2008 Opinion—namely, that the bribery-related counts' allegations fall within the ambit of the bribery statute—is reaffirmed here, the May 2008 Opinion's discussion of the "official act" element is vacated and superseded to the extent it conflicts with this Memorandum Opinion.

I.

A. **The Indictment and Alleged "Official Acts"**

On June 4, 2007, a federal grand jury sitting in the Eastern District of Virginia returned a sixteen-count indictment (the "Indictment") charging defendant, then a sitting congressman, with a variety of crimes including conspiracy, bribery, wire fraud, foreign corrupt practices, money laundering, obstruction of justice, and racketeering. The Indictment is lengthy and detailed; it spans some ninety-four pages. Pertinent here are the bribery allegations, namely that beginning in or about January 2001, defendant used his office and status as a Member of the U.S. House of Representatives to advance the business interests of various individuals and corporations in return for money and other things of value. More specifically, the Indictment sets forth eleven bribery-related counts that allege defendant conspired to solicit or solicited money and other things of value in exchange for

being influenced in the performance of various "official acts," all in violation of § 201(b)(2)(A).[3] This Memorandum Opinion focuses solely on § 201(b)(2)(A)'s "official act" element, and hence the factual recitations set forth here are limited to the Indictment's "official act" allegations.[4]

The Indictment's bribery-related counts set forth several broad descriptions of acts defendant allegedly undertook, or agreed to undertake, in exchange for things of value from individuals seeking to advance various business ventures in Africa and elsewhere. Those acts generally involved defendant's efforts to obtain financial and other business development assistance for those business ventures by exerting his influence as a Member of Congress on various U.S. and African government officials and agencies, including, *inter alia*, the Nigerian government, the Export-Import Bank of the United States, and the United States Trade Development Agency. More specifically, defendant, acting either directly or through his congressional staff, allegedly exerted his influence by engaging in a pattern of meetings and correspondence that included, *inter alia*, (i) "official travel" overseas

---

[3] Those eleven bribery-related counts can be summarized as follows:

(i) Counts 1 and 2 (the "Conspiracy Counts") allege conspiracies between defendant and others to violate, *inter alia*, § 201(b)(2)(A);

(ii) Counts 3 and 4 (the "Bribery Counts") allege independent violations of § 201(b)(2)(A);

(iii) Counts 5 through 10 (the "Wire Fraud Counts") allege wire fraud predicated on, *inter alia*, § 201(b)(2)(A) violations; and

(iv) Count 16 (the "Racketeering Count"), which charges defendant with racketeering in violation of 18 U.S.C. § 1962(c), alleges approximately twelve racketeering acts predicated in part on § 201(b)(2)(A) violations.

[4] The Indictment's bribery-related allegations are set forth in greater detail in *Jefferson*, 562 F. Supp. 2d at 689–90, and *United States v. Jefferson*, 534 F. Supp. 2d 645, 646–48 (E.D. Va.), *aff'd*, 546 F.3d 300 (4th Cir. 2008), *cert. denied*, No. 08-1059, 2009 WL 434823 (U.S. May 18, 2009).

to meet with foreign government officials; (ii) meetings with U.S. and foreign government officials in the United States; and (iii) correspondence, in some instances on congressional letterhead, with U.S. and foreign government officials and agencies. In connection with the overseas travel, defendant, again acting either directly or through his congressional staff, also allegedly lobbied various U.S. and foreign embassies to expedite visa requests and otherwise assist with travel arrangements.

The Indictment alleges that during the course of the alleged bribery schemes, defendant's conduct suggested that he considered himself to be acting—and indeed, hoped those he dealt with would consider him to be acting—in his official capacity as a congressman. For example, the Indictment alleges that when defendant solicited the alleged bribes from the individuals seeking his assistance, he did so as both a congressman and as a member of certain congressional committees and caucuses relating to international—and more specifically, African—trade matters. Defendant's positions in that regard allegedly included (i) membership on the Subcommittee on Trade of the House Committee on Ways and Means, (ii) membership on the House Committee on the Budget, (iii) co-chairmanship of the Africa Trade and Investment Caucus, and (iv) co-chairmanship of the Congressional Caucus on Nigeria. Further, defendant allegedly used official congressional letterhead and represented himself as a congressman when he wrote to U.S. and foreign government officials seeking to gain financial and other business development assistance on behalf of those who had made or promised payments to him. Moreover, defendant allegedly filed several travel forms with the Clerk of the U.S. House of Representatives on which he stated that his travel to Africa was "in

connection with [his] duties as a Member or Officer of the U.S. House of Representatives."[5]

## B. The Prior Opinion and the Parties' Motions

In the May 2008 Opinion, the sufficiency of the Indictment's "official act" allegations was squarely addressed. *See United States v. Jefferson*, 562 F. Supp. 2d 687 (E.D. Va. 2008). Specifically, defendant's motion to dismiss the Bribery Counts—and derivatively, the Conspiracy, Wire Fraud, and Racketeering Counts—for failure to allege facts establishing the "official act" element of a § 201(b)(2)(A) violation was denied. *Id.*[6] In denying defendant's motion, the May 2008 Opinion essentially relied upon a two-pronged analysis of the statutory definition of "official act":

> First, the act must be among the official duties or among the settled customary duties or practices of the official charged with bribery. And second, performance of the act must involve or affect a government decision or action.

*Id.* at 691 (citing *United States v. Birdsall*, 233 U.S. 223, 230 (1914); *Valdes v. United States*, 475 F.3d 1319, 1324 (D.C. Cir. 2007)). Applying that two-pronged test, the May 2008 Opinion held that the Indictment's "official act" allegations were legally sufficient. Yet, the May 2008 Opinion also cautioned that "[w]hether . . . the government is able to prove each of the[] [required] elements with regard to each of the alleged acts . . . is a question properly addressed at trial, not on a motion to dismiss the Indictment." *Id.* at 693.

Nearly ten months later, on March 20, 2009, both parties filed motions addressing the import

---

[5] *See, e.g.*, Indictment ¶ 75 (allegation with respect to travel form filed regarding a February 2004 trip to Nigeria).

[6] In addition, defendant's subsequent, similar arguments with respect to the Wire Fraud and Racketeering Counts, insofar as those counts are predicated in part on § 201(b)(2)(A) violations, were also rejected for the reasons stated in the May 2008 Opinion. *See United States v. Jefferson*, 562 F. Supp. 2d 719, 722–23 (E.D. Va. 2008) (denying motion to dismiss Wire Fraud Counts); *United States v. Jefferson*, No. 1:07cr209 (E.D. Va. Aug. 13, 2008) (Order) (denying motion to dismiss Racketeering Count).

of the May 2008 Opinion's two-pronged test. Specifically, the government filed a motion to clarify the May 2008 Opinion and to permit use of a proposed jury instruction on the "official act" element, while defendant filed a motion for reconsideration of the denial of his motion to dismiss or, in the alternative, to exclude evidence of conduct that defendant argues does not fall within the statutory definition of "official act." The parties' positions with respect to those motions merit brief discussion here.

First, the government argues that although the result reached in the May 2008 Opinion was correct, clarification is nonetheless necessary because the "official act" discussion therein "could be mis-construed [sic] to require that a government decision, separate and apart from the decision or action of the charged public official, is necessary for the 'official act' element . . . to be satisfied." Gov't Mot. Clarify (Docket No. 340), at 1. With respect to defendant's motion to exclude evidence, the government contends that proof of all alleged "official acts" should be admitted at trial because all such alleged actions constitute "actions on matters that were pending before [defendant] in his official capacity[.]" Gov't Mem. in Opp'n (Docket No. 359), at 5.[7] Moreover, the government argues that the jury instructions, in addition to containing the statutory definition of "official act," should include, *inter alia*, the following elaboration:

> The term "official act" includes the decisions or actions generally expected of the public official. These decisions or actions do not need to be specifically prescribed by any law, rule, or job description to be considered an "official act." Thus, "official acts" include those duties and activities customarily associated with a particular position.

---

[7] *See, e.g.*, Gov't Mem. in Opp'n, at 6 n. 2 ("[I]n performing constituent services, the actual *matter* pending before a congressman is the request by his constituent for his intervention. And where, as here, a congressman takes action on such a request in exchange for things of value, he has performed a corrupt 'official act' in violation of the bribery statute." (emphasis in original)).

Gov't Mot. Clarify, at 14 (citations omitted).

By contrast, defendant contends that the bribery-related counts must be dismissed because, he argues, the May 2008 Opinion's "official act" discussion "improperly expands the definition of official act beyond the plain language of the statute." Def. Mot. Reconsideration (Docket No. 342), at 1. Thus, defendant objects to "to any [jury] instruction that amends or elaborates upon the definition [of 'official act'] set forth in . . . § 201(a)(3)." Def. Mem. in Opp'n (Docket No. 358), at 2. In this respect, defendant argues (i) that "[u]nder the government's theory, anything that is not an official act could become one because the public official 'decides' to do it"; and (ii) that "the government's interpretation completely ignores the phrase 'on any question, matter, cause suit, proceeding or controversy.' " *Id.* at 3 (quoting § 201(a)(3)). Moreover, defendant argues that the "government decision or action" involved or affected under the May 2008 Opinion's second prong must be a *U.S.* government decision or action;[8] thus, defendant argues that evidence of acts directed to foreign government officials and entities must be excluded.

## II.

As the parties' motions reflect, clarification of the May 2008 Opinion is warranted. More specifically, the May 2008 Opinion's discussion of the bribery statute's "official act" element was inadequately anchored in the statutory text defining that element and failed to capture accurately the universe of conduct proscribed by § 201(b)(2)(A). Thus, the government's motion for clarification must be granted in part, and to the extent the discussion of the "official act" element herein conflicts

---

[8] In support of this argument, defendant relies on the statutory definition of "public official," which is limited to U.S. government officials. *See* 18 U.S.C. § 201(a)(1).

with the May 2008 Opinion, this Memorandum Opinion controls.[9] By contrast, defendant's motion to reconsider the *result* reached in the May 2008 Opinion must be denied, as it is clear that the Indictment's "official act" allegations fit well within the statutory definition of "official act" explained here. Similarly, defendant's motion to exclude evidence must also be denied, as the question of whether the government will prove that the conduct alleged falls within the scope of conduct proscribed by § 201(b)(2)(A) is an issue properly addressed in the context of the evidence adduced at trial.

First, analysis of what constitutes an "official act" must begin with—and indeed, must be anchored in—the plain language of the statute defining that term.[10] In this respect, 18 U.S.C. § 201(a)(3) defines an "official act" as

> any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit.

Importantly, § 201(a)(3) supplies the abstract definition of "official act" to be used in various provisions of § 201, including the bribery provision at issue here, § 201(b)(2)(A). That provision provides, in pertinent part, as follows:

> Whoever . . . being a public official or person selected to be a public official, directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for .

---

[9] Although the government's motion is granted in part, its request for a particular jury instruction and defendant's objection thereto are premature and will be addressed at trial.

[10] Focus on the plain language of the statute is, of course, consistent with *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 406, 412 (1999), in which the Supreme Court observed in *dicta* (i) that the term "official act" has been "carefully defined" by § 201(a)(3), and (ii) that statutes governing public officials' alleged self-enriching conduct "that can linguistically be interpreted to be either a meat axe or a scalpel should reasonably be taken to be the latter."

> . . being influenced in the performance of any official act . . . [shall be guilty of an offense].

§ 201(b)(2)(A). Thus, the plain language of § 201(b)(2)(A) and § 201(a)(3), taken together and applied to a specific case like this one, requires the government to adduce proof with respect to the "official act" element[11] that defendant solicited a thing of value in exchange for being influenced in his performance of (i) a decision or action (ii) on a question, matter, cause, suit, proceeding or controversy (iii) which could at any time have been pending, or which could by law have been brought before him, in his official capacity, or in his place of trust or profit.

The parties' briefs demonstrate that two points of clarification are warranted. First, the second prong of the May 2008 Opinion's test—that the "official act" must "involve or affect a government decision or action"—could be misinterpreted as suggesting that the "decision or action" required by the statute may be, or is required to be, a decision or action by someone *other* than the charged public official. This is neither correct, nor what was intended by the May 2008 Opinion. Rather, the statute clearly requires that in exchange for the alleged bribe, *defendant*—and not some third party, government or otherwise—be *influenced* in the *performance* of a decision or action.

Second, it is important to clarify the meaning of the phrase "any public official" in § 201(a)(3). Specifically, the May 2008 Opinion cited that phrase in a manner that may have led the parties to believe that the "question, matter," *etc.*, at issue could be one that may at any time be pending, or could by law be brought before "*any* public official," even if that public official is not the charged public official. See *Jefferson*, 562 F. Supp. 2d at 693 n. 14. This is incorrect; in context,

---

[11] As observed in the May 2008 Opinion, defendant concedes the Indictment's legal sufficiency on the other elements required by the bribery statute, and the parties instant motions do not require elucidation of those elements or terms at this stage. See *Jefferson*, 562 F. Supp. 2d at 690.

-9-

the reference to "any public official" means the charged official. Any contrary implication is inconsistent with the plain language, context, and legislative history of the bribery statute. Although it is true that § 201(a)(3) uses the word "any" immediately before the term "public official," a plain reading of the phrase "any public official" in the context of the bribery statute clearly means "any [charged] public official," and not "any public official, [whether charged or not]." This is so because § 201(a)(3) defines "official act" in the *abstract*, as evidenced by its use of the word "any" before "decision or action" and the word "any" before "question, matter, cause, suit, proceeding or controversy." Thus, when the abstract definition of § 201(a)(3) is applied to a particular case via a specific provision—here, § 201(b)(2)(A)—a plain reading of that definition makes clear that the phrase "any public official" must reasonably be read to refer to the charged public official, not any public official, whether charged or not. In other words, the statute's use of "any" before "public official" signifies that any public official can engage in an "official act" by acting on an issue pending before *him*, not that the charged public official can engage in an "official act" by acting on an issue pending before *another* public official.

This plain reading of the phrase "any public official" is also consistent with the legislative history of § 201. More specifically, the predecessor statute to § 201(b)(2)(A) and § 201(a)(3) prohibited, *inter alia*, a U.S. government official from accepting things of value in return for being influenced in "*his* decision or action on any question, matter, cause, or thing which may then be pending, or may by law be brought before *him* in *his* official capacity, or in *his* place of trust or profit[.]" Act of July 13, 1866, ch. 184, § 62, 14 Stat. 98, 168 (emphasis added).[12] Congress amended

---

[12] *See also Birdsall*, 233 U.S. at 230 (also quoting predecessor bribery statute containing "before him in his official capacity" language); *Wilson v. United States*, 230 F.2d 521, 524 (4th Cir. 1956) (quoting predecessor statute, then codified at 18 U.S.C. § 202, using "before him in his official

this provision in 1962, "consolidat[ing] the various prior criminal statutes dealing with bribery into [§] 201, with the stated purpose of making, in the words of the Senate Report, 'no significant changes of substance[.]' " *United States v. Carson*, 464 F.2d 424, 433 (2d Cir. 1972) (quoting S. Rep. 87-2213 (1962), *as reprinted in* 1962 U.S.C.C.A.N. 3852, 3853). Indeed, the Senate Report acknowledged that

> [t]he current bribery laws in [T]itle 18, United States Code, sections 201–213 consist of separate sections applicable to various categories of persons—Government employees, Members of Congress, judges, and others. Section 201 would bring all these categories within the purview of one section and make uniform the proscribed acts of bribery, as well as the intent or purpose making them unlawful.

S. Rep. 87-2213, *as reprinted in* 1962 U.S.C.C.A.N. at 3856. Thus, Congress's amendment of the phrase "before him" to "before any public official" was not a substantive change or expansion of the bribery laws; rather, it was the product of a *consolidation* of statutes that used that phrase in various specific contexts—as applied to a particular type of public official—to a single section that provides an *abstract* definition of "official act" to be used in a number of specific provisions.[13] Accordingly, both the plain language and the legislative history of § 201(a)(3) make clear that the phrase "any public official" should be read to mean "any [charged] public official," and not "any public official, [whether charged or not]." In sum, then, the "decision or action" required by § 201(a)(3) must be the charged public official's decision or action, and the phrase "any public official" in § 201(a)(3) applies to the charged public official.

Next, it is important to address what constitutes a "question, matter, cause, suit, proceeding capacity" language).

---

[13] *See also United States v. Biaggi*, 853 F.2d 89, 98 (2d Cir. 1988) (observing in *dicta* that § 201 "refers to . . . action[s] taken on a matter brought before the public official in his official capacity").

or controversy," and what must be shown for that "question, matter," *etc.*, to be one "which may at any time be pending, or which may by law be brought before any public official [*i.e.*, the charged official], in such official's official capacity, or in such official's place of trust or profit." § 201(a)(3). In this respect, it has long been settled that these phrases do not require proof that the alleged "official act" was taken pursuant to responsibilities explicitly assigned by law; rather, as the Supreme Court held long ago, these phrases are intended to describe those activities that have been "clearly established by settled practice" as part of a public official's position. *Birdsall*, 233 U.S. at 231. Courts since *Birdsall* have consistently applied this principle. *See, e.g., Carson*, 464 F.2d at 431–34; *United States v. Biaggi*, 853 F.2d 89, 96–99 (2d Cir. 1988). Thus, where, as here, the charged public official is a congressman, the universe of "official acts" described by § 201(a)(3) is not limited to so-called "legislative acts" such as voting on or introducing a piece of legislation; rather, § 201(a)(3) has been read "sufficiently broadly to encompass all of the acts normally thought to constitute a congressman's legitimate use of his office." *Biaggi*, 853 F.2d at 97 (relying on *Birdsall* as the "earliest pertinent interpretation"). Moreover, it is also settled that the charged public official need not have authority to make a final decision or take binding action on the "question, matter," *etc.*, at issue. Rather, § 201(a)(3) "cover[s] any situation in which the advice or recommendation of a [public official] would be influential, irrespective of the [official]'s specific authority (or lack of same) to make a binding decision." *United States v. Carson*, 464 F.2d at 433 (citations omitted).[14]

---

[14] *But see Valdes v. United States*, 475 F.3d 1319, 1324 (D.C. Cir. 2007). Specifically, in *Valdes*, the D.C. Circuit observed that § 201(a)(3)'s scope is limited to "a class of questions or matters whose answer or disposition is determined by the government." *Id., quoted in Jefferson*, 562 F. Supp. 2d at 691 n. 3, 692. Yet, as explained here, no such limitation appears on the face of § 201(a)(3), nor does such a limitation square with the broad reading of § 201(a)(3) and its predecessor statutes in *Birdsall, Carson*, and *Biaggi*, where various "questions, matters," *etc.*, were pending before those defendants, as a matter of clearly established settled practice, for their advice or

These principles, applied here, compel the conclusion that the Indictment's "official act" allegations in this case are sufficient to withstand defendant's attempts to dismiss the bribery-related charges at this stage of the prosecution. Yet, the Indictment's legal sufficiency on the "official act" element does not relieve the government of its burden to prove at trial that the alleged "official acts" meet the statutory definition of that term. Accordingly, to satisfy its burden with respect to the "official act" element, the government must adduce proof at trial that each alleged "official act" at issue was, at the time of the relevant offense, (i) a decision or action by defendant (ii) on a question, matter, cause, suit, proceeding or controversy (iii) which could at any time have been pending, or which could by law have been brought before defendant in his official capacity, or in his place of trust or profit. Importantly, consistent with the principles of *Birdsall*, *Biaggi*, and *Carson*, the government, in adducing such proof, need not show that the "question, matter," *etc.*, at issue was or could have been pending before defendant pursuant to any responsibilities explicitly assigned by law, nor is the government required to prove that defendant had the authority to resolve the question, matter, cause, suit, proceeding or controversy at issue. Rather, it is sufficient for the government to adduce proof, including expert testimony or evidence of defendant's admissions and conduct, that it was customary, as a matter of clearly established settled practice, for members of Congress in defendant's position to exert influence—by advice, recommendation, or otherwise—on the issues in question.

Instructive in demonstrating how the government might meet this burden are *Carson* and

---

recommendation—notwithstanding those defendants' lack of authority to resolve the "questions, matters," *etc*. Moreover, *Valdes* is factually distinguishable, as that case involved a D.C. police officer's use of a computer database, not a congressman's exertion of influence on U.S. and foreign government officials. Insofar as language in *Valdes* addressing those vastly different circumstances is inconsistent with the result reached here, *Valdes* is unpersuasive.

-13-

*Biaggi*, two Second Circuit cases addressing exertion of influence by a congressman or his staff on resolution of questions, matters, causes, suits, proceedings or controversies not by law within a congressman's purview to resolve. First, in *Carson*, the Second Circuit rejected a senatorial administrative assistant's argument on appeal that his attempts to persuade a deputy attorney general to quash a federal criminal prosecution could not support a jury verdict for solicitation of bribes in exchange for "official acts." 464 F.2d at 431–35. As the Second Circuit put it, "[t]hat administrative assistants as part of their 'duties' exert the influence inherent in their employment relationship with members of Congress appears 'clearly established by settled practice.'" *Id.* at 434 (quoting *Birdsall*, 233 U.S. at 231). Moreover, it was immaterial in *Carson* that the congressional aide did not have the actual authority to halt the criminal prosecution at issue; indeed, the Second Circuit observed that

> [a]pparently [the assistant], and those bribing him, thought he had access to the Justice Department through his position that would enable him to alleviate, if not altogether quash, pending Justice Department action or bring about lenient post-conviction treatment.

*Id.*[15] Similarly, in *Biaggi* the Second Circuit rejected a congressman's arguments that his actions in lobbying various municipal and federal entities on behalf individuals who made payments "were not 'official act[s]' within the meaning of § 201 because they were not legislative acts and because they were directed principally toward municipal, not federal, agencies." 853 F.2d at 97 (alteration in original).[16] Rather, the Second Circuit held that "[a] congressman's own invocation of his position and of congressional interest in his intercession with others on behalf of a constituent" constituted

---

[15] Notably, the assistant in *Carson* worked for a member of the Senate Judiciary Committee, which the Second Circuit observed is "the one most powerful congressional committee affecting [the Justice] Department's operations." 464 F.2d at 434.

[16] Although *Biaggi* addressed § 201's "official act" definition in the context of § 201's gratuities provision, that distinction is immaterial here.

-14-

an official act. *Id.* at 98. Accordingly, the congressman's conviction in *Biaggi* was affirmed, as "[t]he evidence was ample to permit the jury to conclude beyond a reasonable doubt that the acts performed ... were among those customarily associated with a congressman's job." *Id.* at 99.[17]

Thus, the government might meet its burden on the "official act" element in this case by showing that defendant's action (of exerting his influence in person or by written correspondence) was on a question, matter, cause, suit, proceeding or controversy (such as the question of how various federal agencies allocate funds, the question of how embassies handle visa requests, or the matter of how the Nigerian government pursues business development in Nigeria) that may at any time be pending before a member of Congress for advice or recommendation as a matter of custom and settled practice. Direct evidence in this respect may include, for example, defendant's underlying representations and actions during the alleged course of conduct, including representations that he was acting in his official capacity, as such representations may tend to show that his exertions of influence on the "questions, matters," *etc.*, at issue were—the payment of an alleged bribe aside—a customary use of a congressman's office, as clearly established by settled practice.[18] Similarly, relevant expert testimony might include, as the government has forecasted will be the case, testimony

---

[17] Similarly, in *Birdsall*, the Supreme Court found an indictment to be legally sufficient under a predecessor bribery statute where two subordinate executive branch officials were alleged to have accepted things of value in exchange for recommending sentence commutations where providing such recommendations was not prescribed by written rule and the defendant officials did not have actual authority to commute the sentences in question. 233 U.S. at 227–30.

[18] *See, e.g.*, Indictment ¶ 75 (allegation that defendant represented on one travel form that a trip to Nigeria was "in connection with [his] duties as a Member or Officer of the U.S. House of Representatives."). *Biaggi* is instructive in this regard, as the Second Circuit looked in part to "the manner in which [the congressman] went about" exerting influence—which included, *inter alia*, use of congressional letterhead, opening of an office file, and directing his administrative assistant to handle various tasks—as "suggest[ing] that his conduct was to be considered official." 853 F.2d at 98.

by a former congressman that a congressman's customary use of his office, as clearly established by settled practice, includes exertion of influence on U.S. and foreign government officials on behalf of individuals seeking to advance business interests in the United States and abroad.[19]

In sum, although the result reached by the May 2008 Opinion is reaffirmed for the reasons stated, the May 2008 Opinion's explanation of the "official act" element is superseded by the analysis contained herein. Further, the issue of an appropriate jury instruction on the "official act" element will be addressed after evidence is presented at trial.

An appropriate Order has issued.

Alexandria, Virginia  
May 22, 2009

/s/  
T. S. Ellis, III  
United States District Judge

---

[19] *Compare, e.g., Biaggi*, 853 F.2d at 98 ("Consistent with the judicial recognition of the realities of the scope of a congressman's job, defendants' attorneys, in cross-examining [a] [s]enator . . . at trial, brought out the fact that the duties of senators and representatives routinely include interceding with various agencies on behalf of their constituents.") *and Carson*, 464 F.2d at 434 ("[Defendant] testified that as part of his job and under the applicable 'procedure that goes on at Capitol Hill,' he as an administrative assistant to [a] [s]enator . . . would exert influence on various agencies and branches of the [g]overnment 'without any strings attached.' ") *with United States v. Muntain*, 610 F.2d 964, 968 (D.C. Cir. 1979) ("In the instant case there was no evidence that [defendant's] meetings with labor officials to discuss and promote group automobile insurance involved a subject which could be brought before [him] or, for that matter, anyone else at [defendant's federal agency] in an official capacity.").