IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
F I L E D
AUG - 8 2009
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:07cr209 |
| | ) | |
| WILLIAM J. JEFFERSON | ) | |

## ORDER

This Order records and elucidates the ruling issued from the Bench in the course of trial excluding an exhibit offered by defendant. Among the many disputed issues in this multi-count bribery, RICO, money laundering, and honest services wire fraud prosecution of a now-former Member of Congress[1] is whether various trips taken by defendant to Africa for the purpose of lobbying foreign public officials were official in nature.[2] In this respect, the government contends that the trips to Africa were official in nature, and the government adduced substantial evidence in the course of a multi-week jury trial to that effect.[3] Defendant counters that the trips to Africa were

---

[1] Defendant represented Louisiana's 2nd Congressional District from 1991 until he left office following his defeat in a 2008 bid for reelection.

[2] A central dispute in this case is whether various of defendant's actions were "official acts" for purposes of 18 U.S.C. § 201(b)(2)(A), the federal bribery statute. *See United States v. Jefferson*, ___ F. Supp. 2d ___, No. 1:07cr209, 2009 WL 1491323 (E.D. Va. May 22, 2009).

[3] The government's evidence in this regard included, *inter alia*, (i) testimony that defendant's taxpayer-paid congressional staff accompanied him on the overseas trips and assisted him in planning the trips; (ii) testimony from individuals present on the trips that defendant represented himself during the trips as a Member of Congress acting in his official capacity; (iii) testimony by defendant's former congressional staffers that such trips are commonly taken by Members of Congress and their staffs; (iv) evidence that defendant used his official congressional passport in the course of the overseas travel; (v) evidence that defendant and his staff solicited U.S. State Department assistance in arranging the trips; (vi) official travel disclosure forms filed on defendant's behalf in connection with the trip, which forms stated that defendant's "travel was in connection with [his] duties as a Member . . . of the U.S. House of Representatives"; (vii) numerous letters relating

not official in nature, but rather were part of defendant's purely private business endeavors. In partial

support, defendant orally moved in the course of his case-in-chief to admit into evidence DEX 79,

an internal State Department email which uses the term "unofficial" in referring to one of

defendant's trips to Africa. The government objected to admission of DEX 79 on various grounds,

namely (i) that DEX 79 is inadmissible hearsay under Rules 801 and 802, Fed. R. Evid.; (ii) that

DEX 79 contains inadmissible hearsay within hearsay under Rule 805, Fed. R. Evid.; and (iii) that

even assuming DEX 79 does not constitute inadmissible hearsay, it must be excluded as unfairly

prejudicial, pursuant to Rule 403, Fed. R. Evid. Defendant countered that DEX 79 is excepted from

Rule 802's hearsay bar under Rule 803(8)(A), Fed. R. Evid., as a statement setting forth the activities

of a public agency. In the end, for the reasons stated from the Bench on July 28, 2009, the

government's objection to DEX 79 was sustained, and DEX 79 was excluded from evidence.[4] As

noted, this Order reflects that ruling and briefly states the bases for it.

The exhibit in question, DEX 79, is an internal email sent by State Department employee

Charles S. Faulkner to several other State Department employees on June 30, 2005. The email

forwards a separate email (not offered into evidence by defendant) from defendant's former staffer,

Angelle Kwemo. Notably, defendant served a witness subpoena on Faulkner but elected not to call

him as a witness at trial. Nor did either party question any witness (including Kwemo, whom the

---

to the trips and written by defendant on official congressional letterhead; and (viii) expert testimony
by a former congressman that Members of Congress routinely travel overseas as part of their official
work.

[4] In addition, in the course of oral argument regarding DEX 79, the government contended
that the email is cumulative. The Bench ruling did not reach or address this issue, in part because the
documentary record in this case is so voluminous that it would have been impractical to determine
whether DEX 79 is cumulative, particularly given that the government did not identify which
document arguably renders DEX 79 cumulative.

government called as a witness) regarding DEX 79. Rather, the sole foundation offered by defendant

in support of the email's admission is the language of the email itself, which states:

> All: Here is the latest info I have for Congressman Jefferson's (D-LA) unofficial trip
> to Ghana. Angelle Kwemo is obtaining further information for me. She informs me
> she passed on similar information to Richard Kaminski in AF and Chris Landberg
> at Post.

As a threshold matter, it is pellucidly clear that the last two sentences of the email, which

merely restate statements made by Kwemo, are hearsay within hearsay and hence must be excluded

under Rules 805 and 802. Indeed, defendant did not offer the email to prove the contents of the

email's last two sentences; rather, defendant sought to admit the email for the purpose of proving

the truth of the assertion in the first sentence that defendant's trip was "unofficial." Thus, the central

question presented is whether defendant satisfied his burden of demonstrating that Faulkner's use

of the term "unofficial" falls within Rule 803(8)(A), defendant's proffered hearsay exception.[5]

Rule 803(8)(A) provides, in pertinent part, that "[r]ecords, reports, statements, or data

compilations, in any form, of public offices or agencies, setting forth . . . the activities of the office

or agency" are excepted from Rule 802's bar against hearsay evidence.[6] Importantly, although this

---

[5] *See* 21A Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure*
§ 5053.6 (2d ed. 2005) (observing that proponent of hearsay evidence offered pursuant to hearsay
exception has "the burden of proving that [the statement comes] within [the] . . . exception"). Thus,
a party offering a purported public record under Rule 803(8)(A) bears the burden of proving that the
record in question falls within the exception. Of course, assuming the record's proponent
demonstrates that the record falls within Rule 803(8)(A)'s scope, the party opposing admission then
bears the "burden to establish unreliability" in the event circumstances indicate a lack of
trustworthiness. *Zeus Enters., Inc. v. Alphin Aircraft, Inc.*, 190 F.3d 238, 241 (4th Cir. 1999).

[6] In addition Rule 803(8) also excepts from hearsay

> [r]ecords, reports, statements, or data compilations, in any form, of public offices or
> agencies, setting forth . . . (B) matters observed pursuant to duty imposed by law as
> to which matters there was a duty to report, excluding, however, in criminal cases

exception's language is indeed broad, Rule 803(8)(A)'s scope does not extend to *all* documents or statements prepared by or within public offices or agencies. Indeed, reading Rule 803(8)(A) so broadly as to apply to all memoranda or statements authored by any public agency would render Rule 803(B) and (C)'s narrowly tailored exceptions virtually meaningless.[7] Rather, the statement at issue—here, a comment in an email—must "set forth . . . the activities *of the office or agency*" which authored the statement. Rule 803(8)(A) (emphasis added). In addition, the record or statement must "deal[] with official activities of the office or agency reasonably necessary for the performance of the duties of the office." 30B Michael H. Graham, *Federal Practice & Procedure* § 7049 (4th ed. 2006).[8] Thus, the plain language of Rule 803(8)(A) clearly does not provide a hearsay exception for statements or records, even if prepared by a public office or agency, which set forth the activities of a *separate, distinct* public office or agency. *See Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 556 F.3d 603, 616 (7th Cir. 2009) (affirming district court ruling that Rule

---

matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Defendant does not argue—nor could he—that DEX 79 falls within the scope of Rule 803(8)(B) or (C).

[7] *See Smith v. Isuzu Motors Ltd.*, 137 F.3d 859, 862 (5th Cir. 1998) (observing that application of Rule 803(8)(A) to federal agency "memoranda reflecting the preliminary opinions of agency staff members" would "swallow whole Rule 803(8)(C) and its limitations"); *see also Brown v. ASD Computing Ctr.*, 519 F. Supp. 1096, 1103 n.2 (S.D. Ohio 1981) (observing that Rule 803(8)(A) should "not serve as a general 'catch-all' exemption for all government records not covered under Rule 803(8)(B) and (C)").

[8] *See also, e.g., United States v. Loera*, 923 F.2d 725, 730 (9th Cir. 1991) (court docket entries fall within Rule 803(8)(A) because they "are *routine* documents setting forth the *official actions of the court*" (emphasis added)).

-4-

803(8)(A) did not apply to Environmental Protection Agency letter which "was only repeating the opinion of" a separate state agency). By contrast, Rule 803(8)(A) clearly does apply to those public agency records which set forth the agency's *own* customary activities. *See* Rule 803, Fed. R. Evid., advisory committee notes (observing with respect to Rule 803(8)(A) that "[c]ases illustrating the admissibility of records of the office's or agency's *own* activities are numerous" (emphasis added)).[9]

These principles, applied here, compel the conclusion that defendant did not satisfy his burden of demonstrating that DEX falls within the scope of Rule 803(8)(A)'s exception. In this regard, defendant offered no evidence that labeling a congressman's trip as "official" or "unofficial" in nature is an activity (much less a customary one) of Faulkner or his office. Without more, it is equally likely—if not more so—that Faulkner's reference to defendant's Ghana trip as "unofficial" was, like the other two sentences in the email, simply a restatement of something Kwemo *told* Faulkner. And in the event that Faulkner's use of the term "unofficial" came from Kwemo, Faulkner's statement would, at best, set forth an activity of *defendant's* congressional office, not of Faulkner's State Department office. Moreover, Kwemo's statement would be inadmissible as hearsay within hearsay under Rules 805 and 802. In any event, defendant offered no evidence to show that DEX 79 set forth Faulkner's (or his office's) customary activities. Had defendant done so, DEX 79 may have been admissible. Thus, given that defendant failed to meet his burden of demonstrating

---

[9] *See also Alexander v. Estepp*, 95 F.3d 312, 314 n.2 (4th Cir. 1996) (affirming district court application of Rule 803(8)(A) to fire department ranking of its own employment applicants); *United States v. Mena*, 863 F.2d 1522, 1531 (11th Cir. 1989) (applying Rule 803(8)(A) to Honduran vessel registry because "[r]egistration of Honduran vessels is a regular activity *of the Honduran government*" (emphasis added)).

that Rule 803(8)(A) applies,[10] the government's objection to DEX 79 must be sustained and the exhibit excluded from evidence.[11]

Accordingly, for the reasons stated from the Bench and elucidated herein, and for good cause,

It is hereby **ORDERED** that the government's objection to admission of DEX 79 is **SUSTAINED**, and DEX 79 is excluded from evidence.

The Clerk is directed to send a copy of this Order to all counsel of record.


Alexandria, Virginia
August 8, 2009

_____
T. S. Ellis, III
United States District Judge


---

[10] Importantly, the Fourth Circuit's decision in *United States v. Vidacak*, 553 F.3d 344 (4th Cir. 2009), does not, as defendant argued, stand for the proposition that any statement authored by a public official falls within Rule 803(8)(A) without further foundational testimony. Rather the Fourth Circuit's observation in *Vidacak* that "[n]o foundational testimony is required in order to admit evidence under Rule 803(8)" simply means that no additional foundational testimony is necessary where, unlike here, a document facially qualifies as a public record under one of Rule 803(8)'s exceptions. *Id.* at 351; *see also, e.g., Calhoon v. Shelton*, No. 07cv8, 2009 WL 1758738, at *5 (D.R.I. June 18, 2009) (holding that plaintiffs seeking admission of memoranda under Rule 803(8)(A) did not "carry their burden to demonstrate that . . . the public record exception to the hearsay rule appl[ied]" because, *inter alia*, "[t]he memoranda do not set forth sufficient information to make them admissible under the public records exception").

[11] Because DEX 79 is inadmissible hearsay, it is unnecessary to reach the government's alternative argument that the document must be excluded under Rule 403 as substantially more prejudicial than probative.

-6-