IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

F I L E D
AUG - 8 2009
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL No. 1:07cr209 |
| ) | |
| WILLIAM J. JEFFERSON, ) | |
| Defendant. ) | |

## ORDER

On July 23, 2009, at the close of the government's case-in-chief, defendant moved for a judgment of acquittal pursuant to Rule 29(a), Fed. R. Crim. P., on fifteen of the sixteen counts in the Indictment. A ruling on this motion was reserved, and defendant presented his case-in-chief. *See* Rule 29(b). On July 27, 2009, after briefing and oral argument, defendant's motion was denied, except with respect to defendant's argument as to Count 15, which was taken under advisement. On July 29, 2009, defendant's motion as to Count 15 was also denied. Additionally, at the close of all the evidence in the case, defendant renewed his motion for a judgment of acquittal, which motion was also denied. This Order memorializes those rulings.

The principles guiding a Rule 29 determination are clear and undisputed. Rule 29(a) provides that

> [a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.

A Rule 29 motion must be denied if, viewing the evidence in the light most favorable to the government, a rational trier of fact could find the defendant's guilt beyond a reasonable doubt. *See United States v. Lentz*, 383 F.3d 191, 199 (4th Cir. 2004); *United States v. Tresvant*, 677

F.2d 1018, 1021 (4th Cir. 1982). Consideration must be given to both direct and circumstantial evidence, and the government must be given "the benefit of all reasonable inferences from the facts proven to those sought to be established." *Tresvant*, 677 F.2d at 1021. Indeed, "'circumstantial evidence . . . may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence.'" *United States v. Osborne*, 514 F.3d 377, 387 (4th Cir. 2008) (quoting *United States v. Jackson*, 863 F.2d 1168, 1173 (4th Cir. 1989)). The resolution of conflicts in the evidence and the assessment of witness credibility are matters reserved exclusively for the jury. *See Lentz*, 383 F.3d at 199.

Defendant's Rule 29 motion sought acquittal on all but one of the Indictment's counts[1] on the grounds (1) that defendant is entitled to be acquitted of the Indictment's bribery-related counts[2] because the government failed to present sufficient evidence that any of the acts that the government contends constitute "official acts" meet the statutory definition of that term; (2) that defendant must be acquitted of Count 2 because the government failed to present sufficient evidence that the conspiracy alleged in that count constitutes a single conspiracy; (3) that defendant must be acquitted of Counts 5–10 (a) because the government failed to establish defendant concealed a material fact and (b) because, with respect to Count 10, the government

---

[1] The only count on which defendant did not seek a judgment of acquittal was Count 11, which charged defendant with a substantive violation of the Foreign Corrupt Practices Act. Count 1, however, charged defendant with engaging in a conspiracy to commit, *inter alia*, a violation of the Foreign Corrupt Practices Act.

[2] The Indictment's bribery-related counts include (i) Counts 1 and 2, which allege defendant conspired, *inter alia*, to solicit bribes; (ii) Counts 3 and 4, which allege defendant solicited bribes; (iii) Counts 5–10, which allege defendant committed honest service wire fraud through bribery and by intentionally failing to disclose conflicts of interest in connection with his performance of official acts; and (iv) Count 16, a racketeering charge, which alleges approximately twelve racketeering acts predicated in part on bribery violations.

failed to establish venue; (4) that defendant must be acquitted of Counts 12–14 (a) because the government failed to prove a transaction in proceeds obtained from a criminal offense, and (b) because, with respect to Count 12, the government failed to prove defendant knowingly engaged in a monetary transaction; and (5) that defendant must be acquitted of Count 15 because the government failed to present sufficient evidence from which a jury could find any of the required elements of obstruction of justice. Each of these arguments will now be considered in turn.

First, defendant's "official act" argument broadly claims that the government failed to establish a single official act for which the defendant sought, received, or agreed to receive payment.[3] Defendant concedes there was testimony that it is clearly established by settled

---

[3] The meaning of "official act" within 18 U.S.C. § 201 has been throughly discussed in a prior opinion and will not, of course, be reconsidered here. *See United States v. Jefferson*, ___ F. Supp. 2d ___, No. 1:07cr209, 2009 WL 1491323 (E.D. Va. May 22, 2009). The May 22, 2009 Opinion noted that the plain language of § 201

> requires the government to adduce proof with respect to the "official act" element that defendant solicited a thing of value in exchange of being influenced in his performance of (i) a decision or action (ii) on a question, matter, cause, suit, proceeding, or controversy (iii) which could at any time have been pending, or which could by law have been brought before him, in his official capacity, or in his place of trust or profit.

*Id.* at 9. Relying on such authority as *United States v. Birdsall*, 233 U.S. 223, 230 (1914), *United States v. Biaggi*, 853 F.2d 89, 98 (2d Cir. 1988), and *United States v. Carson*, 464 F.2d 424, 433 (2d Cir. 1972), the Opinion further indicated that an act may be official even it was not taken pursuant to responsibilities explicitly assigned by law; rather, "official acts" include those activities that have been "'clearly established by settled practice'" to constitute part of a public official's position. *See id.* at 12 (quoting *Birdsall*, 233 U.S. at 231). Settled authority also dictates that an act on a particular question, matter, cause, suit, proceeding, or controversy may be official even if the public official did not have authority to make a final decision or take binding action. Accordingly, the Opinion concluded that the government could satisfy its burden with respect to the "official act" element by "adduc[ing] proof, including expert testimony or evidence of defendant's admissions and conduct, that it was customary, as a matter of clearly established settled practice, for members of Congress in defendant's position to exert influence—by advice, recommendation, or otherwise—on the issues in question." *Id.* at 13.

practice that Members of Congress facilitate interactions with U.S. government agencies on behalf of their own constituents, but contends that the government presented insufficient evidence to show either (i) that defendant's assistance to individuals and companies located outside his congressional district or (ii) that defendant's promotion of companies to foreign government officials qualify as "official acts." Given this, defendant argues the government failed to present sufficient evidence with respect to the "official act" element of all of the Indictment's bribery-related charges.

Defendant's argument fails for numerous reasons. First, defendant simply ignores the government's evidence that defendant himself interceded with U.S. government agencies on behalf of companies and persons within his congressional district. For example, Tom Harding, who served as an official at the United States Trade and Development Agency ("USTDA") during the pertinent time period, testified that defendant repeatedly expressed strong interest in the USTDA's consideration of a grant application filed by TDC Energy Overseas Limited ("TDC-OL"), a company with offices within defendant's district.

Additionally, despite defendant's argument to the contrary, the government presented more than ample evidence to establish beyond a reasonable doubt that it was customary, as a matter of clearly established settled practice, for members of Congress to use the power and influence of their office to assist persons who reside outside the member's congressional district. For example, Congressman McHugh, the government's expert witness, testified that although members of Congress spend more time and energy assisting individuals and businesses located in their district, "[t]here are people that will go to members of Congress who don't live in the same congressional district if, for example, they perceive that the particular member of Congress has

special expertise or influence in an area that they care about or are concerned about." Trial Tr., Test. of Matthew McHugh, 16–17, July 16, 2009. Congressman McHugh further testified that, in his opinion, it is a part of the customary and settled practice of members of Congress to intercede with government agencies on behalf of individuals and businesses that request their assistance. *See id.* at 18. From this, a reasonable jury could conclude beyond a reasonable doubt that defendant's intercessions with the United States Army, the U.S. Export-Import Bank, the USTDA, and the U.S. State Department on behalf of individuals and businesses located outside of his district constituted "official acts."

Moreover, the government also presented abundant evidence from which the jury could conclude beyond a reasonable doubt that it was customary, as a matter of clearly established settled practice, for members of Congress to promote U.S. businesses with foreign government officials. For example, James Maxstadt, a long-time State Department employee who served in embassies around the world, testified that "[i]t is fairly common that when members of Congress, both the House of Representatives and Senate, travel, they advocate on behalf of U.S. business interests, plus much broader business." Trial Tr., Test. of James Maxstadt, 50, June 26, 2009. And Melvin Spence, one of defendant's former staffers, testified that privately-sponsored foreign trips, like the one on which Spence accompanied defendant in February 2004 to West Africa, were common among members of Congress. Along these lines, the government also presented the testimony of Bill Oliver, a former BellSouth executive, to the effect that defendant used his influence as a congressman with the U.S. Ambassador in Brazil and the President of Brazil's chief of staff to help BellSouth resolve a problem with the government of Brazil, further bolstering the government's position that advocating for American businesses abroad represents

an "act[] normally thought to constitute a congressman's legitimate use of his office." *Biaggi*, 853 F.2d at 97. All this, among other evidence, amply supports the government's contention that defendant's actions using his position as a congressman to promote U.S. businesses with foreign government officials were "official acts." Accordingly, defendant's motion for a judgment of acquittal on all the bribery-related counts on the ground that there was no evidence of "official acts" must be denied.

Defendant's argument that he must be acquitted of Count 2 because the government failed to present more than sufficient evidence from which a jury could conclude beyond a reasonable doubt that the conspiracy alleged in that count was a single conspiracy also lacks merit. It is well established that "[a] single conspiracy exists when the conspiracy had the same objective, it had the same goal, the same nature, the same geographic spread, the same results, and the same product." *United States v. Johnson*, 54 F.3d 1150, 1154 (4th Cir. 1995) (internal quotation marks and citation omitted). It is equally plain "that one may be a member of a conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities or over the whole period of its existence." *United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993). In short, "[w]hether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals." *United States v. Squilacote*, 221 F.3d 542, 574 (4th Cir. 2000) (internal quotation marks and citation omitted).

Here, the government presented sufficient evidence from which the jury could conclude beyond a reasonable doubt that the conspiracy charged in Count 2 represents a single conspiracy. Count 2 charges defendant with conspiring with others to commit bribery and honest services wire fraud, and the overt acts allege that the following persons and entities were involved in this

conspiracy: (i) Mose Jefferson and BEP; (ii) George Knost, Bradley Kimbrough, and Arkel; (iii) John Melton, Ramon Jarell, and TDC-OL; (iv) James Creaghan; (v) Noreen Wilson/Griffin, Procurer, and LETH; and (vi) Phillip Jones and Global Energy and Environmental Services. Defendant's argument, distilled to its essence, is that the charged conspiracy lacks an overall agreement to violate the law because it is comprised of separate, independent business ventures. Yet, "a finding of a master conspiracy with sub-schemes does not constitute a finding of multiple, unrelated conspiracies." *United States v. Smith*, 789 F.2d 196, 200 (3d Cir. 1986), *quoted in United States v. McCoy*, No. 89-5659, 1990 U.S. App. LEXIS 20897, at *18–19 (4th Cir. Dec. 4, 1990). The government presented an abundance of evidence from which the jury could find beyond a reasonable doubt that Count 2's alleged co-conspirators, although involved in separate business ventures, shared an overall agreement to violate the law by having defendant perform official acts in exchange for payment to shell companies formed in the name of his brother, Mose Jefferson, and son-in-law, Philip Jefferson. In sum, the government's evidence regarding the conspiracy charged in Count 2, viewed in the light most favorable to the government, shows considerable "overlap of key actors, methods, and goals" and defendant's motion on this Count must accordingly be denied. *Squilacote*, 221 F.3d at 574 (internal quotation marks omitted).

With respect to the honest services wire fraud charges in Counts 5–10, defendant argues the government failed to present sufficient evidence that defendant's alleged scheme or artifice to defraud involved the concealment of a material fact.[4] This argument, distilled to its essence, is

---

[4] Additionally, defendant argues that he must be acquitted of the honest services wire fraud charges because (i) the government presented insufficient evidence of "official acts"; (ii) the government failed to prove the defendant acted with the specific intent to defraud the public

that the government failed to establish that defendant had a duty to disclose his family's financial interest in various businesses and that, in the absence of such a duty, defendant's non-disclosure does not establish concealment of a material fact. Yet, the Fourth Circuit has held that

> a duty to disclose material information need not necessarily be based upon the existence of some statute or regulation prescribing such a duty. Rather, the duty to disclose may exist because of the relationship between the one possessing the material information and another, for example, employer-employee; public official-public body.

*United States v. Mandel*, 591 F.2d 1347, 1363 (4th Cir.), *rev'd on other grounds en banc*, 602 F.2d 653 (4th Cir. 1979); *see also United States v. Sawyer*, 85 F.3d 713, 724 (1st Cir. 1996) ("A public official has an affirmative duty to disclose material information to the public employer."). Thus, defendant's argument that he must be acquitted of Counts 5–10 because the government failed to establish that he had a duty to disclose his and his family's financial interests in various businesses must be rejected.

Defendant further argues that he must be acquitted of Count 10 because the government failed to establish venue, an element the parties agree only need be proved by a preponderance of the evidence. *See United States v. Bowens*, 224 F.3d 302, 308 (4th Cir. 2000). This argument also fails. Count 10 alleges that on July 6, 2005, defendant engaged in a wire communication—namely, a telephone call from defendant in Accra, Ghana to Vernon Jackson in

---

or the House of his honest services because the government has not established he sought, accepted, or agreed to accept things of value in exchange for being influenced in his performance of "official acts"; and (iii) the government failed to present sufficient evidence that defendant committed honest services fraud by intentionally failing to disclose a material conflict of interest in connection with his performance of "official acts," given that the government failed to prove defendant performed "official acts" for the various entities named in the Indictment. As all these arguments are predicated on defendant's argument regarding "official acts," they are unpersuasive for the reasons discussed above.

Louisville, Kentucky—in furtherance of a scheme to deprive U.S. citizens and the House of their right to defendant's honest services. An earlier Memorandum Opinion rejecting, *inter alia*, defendant's argument that Count 10 must be dismissed for lack of venue held that "orchestrating a wire transmission or performing other acts directly or causally connected to the wire transmission . . . give[s] rise to venue in the district where such acts are performed, even if the wire transmission does not originate, pass through, or terminate in that district." *United States v. Jefferson*, 562 F. Supp. 2d 695, 703–04 (E.D. Va. 2008). Viewing the evidence in the light most favorable to the government, the jury could certainly find the government has met this test by a preponderance of the evidence. For example, the government presented evidence of multiple meetings between defendant and Mody in the Eastern District of Virginia to discuss defendant's promotion of the iGate and Lori Mody's African ventures, meetings directly connected to the July 6, 2005 telephone call from defendant to Jackson to apprise him of the progress of the bribery scheme. Accordingly, defendant's motion for a judgment of acquittal on Count 10 on the ground that the government failed to present sufficient evidence of venue must be denied.

Defendant's Rule 29 motion must also be denied with respect to Counts 12–14, the Indictment's money laundering charges. Defendant contends that he must be acquitted of all of the money laundering charges because the government failed to prove a transaction in "proceeds" obtained from a criminal offense. This argument rests on defendant's assertion that *United States v. Santos*, ___ U.S. ___, 128 S. Ct. 2020, 2025 (2008), stands for the proposition that the term "proceeds" in 18 U.S.C. § 1957(f)(2), which defines "criminally derived property" as "any property constituting, or derived from, proceeds obtained from a criminal offense," means the "net profits" derived from a crime. Yet, the Fourth Circuit, albeit it in an unpublished decision,

has explicitly rejected that assertion, noting that "[b]ecause *Santos* does not establish a binding precedent that the term 'proceeds' means 'profits,' except regarding an illegal gambling charge, we are bound by this Court's precedent establishing that 'proceeds' means 'receipts.'" *United States v. Howard*, 309 F. App'x 760, 771 (4th Cir. 2009). Thus, under the Fourth Circuit's binding precedent, the government was not obligated to present evidence that the property involved in the charged monetary transactions were "net profits."[5]

Additionally, with respect to Count 12, defendant claims that the government's evidence is insufficient to prove that the defendant knowingly engaged in the transfer of funds by check from ANJ to the Jefferson Committee because the evidence actually shows that Jack Swetland, defendant's accountant, wired the money through the Jefferson Committee without defendant's knowledge. This argument also fails to persuade, as settled authority makes plain that an individual who directs others to conduct a monetary transaction is guilty as a principal even if he

---

[5] Defendant also argues that the government failed to present sufficient evidence of venue as to the money laundering charges, but this argument rests entirely on defendant's already-rejected claim that the government's evidence is insufficient to establish that the funds involved were "proceeds."

Additionally, with respect to Count 14, which involves a July 26, 2005 check of $25,000 from ANJ to Andrea Jefferson, defendant also argues that the property at issue was not criminally derived because the source of these funds was a $200,000 investment in ANJ by Norbert Simmons on June 29, 2005. This argument clearly fails, as the Fourth Circuit has held that

> where the funds used in the particular transaction originated from a single source of commingled illegally-acquired and legally-acquired funds . . . the government is not required to prove that no "untainted" funds were involved . . . . As a consequence, it may be presumed in such circumstances, as the language of section 1957 permits, that the transacted funds, at least up to the full amount originally derived from crime, were the proceeds of the criminal activity or derived from that activity.

*United States v. Moore*, 27 F.3d 969, 976–77 (4th Cir. 1994).

does not know the details of how the transaction is carried out. *See United States v. Jackson*, 72 F.3d 1370, 1385 (9th Cir. 1995) (noting that evidence was sufficient to convict defendant of money laundering "even if [he] did not know the specific identity of the middle man" because "the evidence is clear that he was instrumental in arranging the transaction"); *United States v. Delgado*, 256 F.3d 264, 276–77 (5th Cir. 2001) ("The lack of knowledge regarding the specific amount of money and the specific date of the transaction does not alter the fact that [defendant's] affirmative instructions facilitated the money laundering and caused the transaction to occur.").

Finally, defendant moves for a judgment of acquittal on Count 15, which charges him with attempting to obstruct justice by concealing two facsimiles from the FBI during the August 3, 2005 search of his New Orleans home. Although the jury acquitted defendant of this charge, the evidence was nonetheless sufficient to submit this count to the jury, especially given the testimony Special Agent Kent that defendant knowingly took the faxes from the kitchen, a room that had not been searched, to the living room, the search of which had already been completed. This evidence thus belies defendant's contention that he did not know that the bag in which he placed the faxes would not subsequently be searched or seized. Thus, viewing this and the other evidence relating to the obstruction charge in the light most favorable to the government, the jury could have rationally found beyond a reasonable doubt that defendant was guilty of Count 15.

Accordingly, for these reasons and the reasons stated from the Bench on July 27 and July 29, 2009,

It is hereby **ORDERED** that defendant's motion for judgment of acquittal (Dkt. No. 526)

is **DENIED**.

It is further **ORDERED** that defendant's oral renewed motion for judgment of acquittal, made at the close of all the evidence, is **DENIED**.

The Clerk is directed to send a copy of this Order to all counsel of record.

Alexandria, Virginia
August 8, 2009

/s/
T. S. Ellis, III
United States District Judge